BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
proach@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
ERICH P. SCHORK
1 North LaSalle Street, Suite 4600
Chicago, IL  60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

MILLIGAN LAW OFFICES
PHILIP J. MILLIGAN
500 South 16th Street
Fort Smith, Arkansas  72901
Tel: 479/783-2213
milliganlaw@sbcglobal.net

ROBERTS LAW FIRM, P.A.
MICHAEL L. ROBERTS
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas  72223
Tel: 501/821-5575
501/821-4474 (fax)
mikeroberts@robertslawfirm.us

[Additional Counsel Appear on Signature Page]

Attorneys for Plaintiffs and the putative Class

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIAN WARNER, KENNETH MAC LEOD; MICHAEL MEADE, MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,<br><br>Defendant. | Case No. 2:15-cv-02171-FMO-(FFMx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT TOYOTA MOTOR SALES, U.S.A, INC.'S MOTION TO DISMISS**<br><br>Date:     June 11, 2015<br>Time:    10:00 a.m.<br><br>USDJ:   Fernando M. Olguin<br>Ctrm:   22, 5th Floor – Spring<br>JURY TRIAL DEMANDED<br><br>Complaint Filed: March 24, 2015 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   FACTS ........................................................................................ 3

    A.    The Defective Tacoma Vehicles ......................................... 3

    B.    Toyota's Deficient Limited Service Campaigns ................. 4

III.  STANDARDS ON A MOTION TO DISMISS ............................ 5

IV.  TOYOTA'S MOTION SHOULD BE DENIED ........................ 6

    A.    Plaintiffs Sufficiently Allege Consumer Protection Claims ............. 6

        1.    Under the Correct Choice-of-Law Analysis, Plaintiffs' UCL and CLRA Claims Stand .................. 6

        2.    Plaintiffs' Alternative Non-California Consumer Protection Claims Are Sufficiently Pled ................ 10

            a.    Plaintiffs Adequately Allege the Non-California Consumer Protection Claims .................... 10

            b.    Plaintiffs Do Not Allege Misrepresentation Claims .................... 10

            c.    Watson's and Warner's Claims Are Not Time Barred .................... 11

            d.    Warner Pleads an Omission Claim Under the OCSPA .................... 12

            e.    Franquet Pleads a Section 349 Claim .................... 13

    B.    Breach of Implied Warranty of Merchantability .................... 13

        1.    Statute of Limitations .................... 13

        2.    Privity Is Not Required for Implied Warranty Claims .......... 15

    C.    Breach of Express Warranty .................... 16

        1.    Statutes of Limitations .................... 16

        2.    Presentment of Plaintiffs' Vehicles Was Not Required ........ 17

        3.    Plaintiffs Plead Breach of Express Warranty Based on Toyota's Statements in the Owner's Manual ........ 17

    D.    Magnuson-Moss Claim .................... 19

BLOOD HURST & O'REARDON, LLP

i    Case No. 2:15-cv-02171 FMO (FFMx)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

1

E.    Plaintiffs Plead a Declaratory Relief Claim.................................... 20

V.    CONCLUSION ........................................................................... 21

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

000824402

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Felker Mfg. Co.*,
230 Cal. App. 2d 987 (1964) ............................................................. 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................... 5, 6

*Badella v. Deniro Mktg. LLC*,
No. C 10-03908, 2011 U.S. Dist. LEXIS 128145
(N.D. Cal. Nov. 4, 2011) .................................................................. 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 10

*Bobb Forest Prods. v. Morbark Indus.*,
783 N.E.2d 560 (Ct. App. Ohio 2002) .............................................. 15

*Bruno v. Eckhart Corp.*,
280 F.R.D. 540 (C.D. Cal. 2012) ............................................... 6, 7, 8

*Bruno v. Quten Research Inst., LLC*,
280 F.R.D. 524 (C.D. Cal. 2011) ....................................................... 7

*Burns v. Toyota Motors Sales, U.S.A., Inc.*,
No. 2:14-CV-02208 (W.D. Ark. Apr. 23, 2015) .................................. 2

*Coastal Leasing Corp. v. O'Neal*,
405 S.E.2d 208 (Ct. App. N.C. 1991) .............................................. 15

*Czuchaj v. Conair Corp.*,
No. 13-CV-1901, 2014 U.S. Dist. LEXIS 54410
(S.D. Cal. Apr. 17, 2014) ................................................................. 6

*Daugherty v. American Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2006) .......................................................... 19

*E.H. Boly & Son, Inc. v. Schneider*,
525 F.2d 20 (9th Cir. 1975) ............................................................ 20

*Ehrlich v. BMW of N. Am., LLC*,
801 F. Supp. 2d 908 (C.D. Cal. 2010) ........................................ 14, 16

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

BLOOD HURST & O'REARDON, LLP

00084402

*Falco v. Nissan N. Am. Inc.*,
  No. 13-cv-0686, 2013 U.S. Dist. LEXIS 147060
  (C.D. Cal. Oct. 10, 2013) ................................................................. 14

*Gilbert Fin. Corp. v. Steelform Contracting Co.*,
  82 Cal. App. 3d 65 (1978) ............................................................... 15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................... 7

*Hill v. Roll Int'l Corp.*,
  195 Cal. App. 4th 1295 (2011) ......................................................... 18

*Hubbard v. Gen. Motors Corp.*,
  No. 95 Civ. 4362, 1996 U.S. Dist. LEXIS 6974
  (S.D.N.Y. May 22, 1996) ................................................................. 16

*Hurtado v. Sup. Ct.*,
  11 Cal. 3d 574 (1974) ....................................................................... 7

*Iolab Corp. v. Seaboard Sur. Co.*,
  15 F.3d 1500 (9th Cir. 1994) ............................................................. 6

*Keilholtz v. Lennox Hearth Prods.*,
  268 F.R.D. 330 (N.D. Cal. 2010) .................................................. 7, 9

*Khorrami v. Lexmark Int'l*,
  No. CV 07-01671, 2007 U.S. Dist. LEXIS 98807
  (C.D. Cal. Sept. 13, 2007) ................................................................. 6

*Marilley v. McCamman*,
  No. C-11-02418, 2011 U.S. Dist. LEXIS 129294
  (N.D. Cal. Nov. 8, 2011) ................................................................. 20

*Marshall v. James B. Nutter & Co.*,
  816 F. Supp. 2d 259 (D. Md. 2011) ................................................ 11

*Matthews v. Lawnlite Co.*,
  88 So. 2d 299 (Fla. 1956) ................................................................ 16

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ..................................................... 7, 8, 9

*McBurnette v. Playground Equipment Corp.*,
  137 So. 2d 563 (Fla. 1962) .............................................................. 15

BLOOD HURST & O'REARDON, LLP

iv

Case No. 2:15-cv-02171 FMO (FFMx)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

000824402

*McCalden v. Cal. Library Ass'n*,
    955 F.2d 1214 (9th Cir. 1990) ........................................................................ 20

*McCann v. Foster Wheeler*,
    48 Cal. 4th 68 (2010) ...................................................................................... 9

*Milicevic v. Mercedes-Benz USA, LLC*,
    256 F. Supp. 2d 1168 (D. Nev. 2003) ............................................................ 19

*Mills v. Forestex Co.*,
    108 Cal. App. 4th 625 (2003) ........................................................................ 16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (N.Y. Ct. App. 1995) ............................................................... 11

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008) ................................................................. 6, 7

*PNR, Inc. v. Beacon Prop. Mgmt.*,
    842 So. 2d 773 (Fla. 2003) ............................................................................ 11

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ........................................................................... 7

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
    No. ML 10-02199, 2012 U.S. Dist. LEXIS 141150
    (C.D. Cal. Sept. 28, 2012) ............................................................................... 8

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ...................................................... 11, 12

*Radford v. Daimler Chrysler Corp.*,
    168 F. Supp. 2d 751 (N.D. Ohio 2001) .......................................................... 12

*Regents of Univ. of Cal. v. Sup. Ct.*,
    20 Cal. 4th 509 (1999) ................................................................................... 14

*River's Edge Pharms., LLC v. Gorbec Pharm. Servs.*,
    No. 1:10CV991, 2012 U.S. Dist. LEXIS 57969
    (M.D. N.C. Apr. 25, 2012) ............................................................................. 11

*Roberts v. Electrolux Homes Prods.*,
    No. 12-1644, 2013 U.S. Dist. LEXIS 185488
    (C.D. Cal. Mar. 4, 2013) .......................................................................... 13, 14

BLOOD HURST & O'REARDON, LLP

v          Case No. 2:15-cv-02171 FMO (FFMx)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

000824402

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir 1997) ................................................................ 18

*State Farm Mut. Auto Ins. Co. v. Kugler*,
  No. 11-80051, 2011 U.S. Dist. LEXIS 107005
  (S.D. Fla. Sept. 21, 2011) ........................................................... 11, 12

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................ 8

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales
  Practices & Prods. Liab. Litig.*,
  890 F. Supp. 2d 1210 (C.D. Cal. 2011) ............................................. 15

*Vitolo v. Dow Corning Corp.*,
  634 N.Y.S.2d 362 (N.Y. Sup. Ct. 1995) ............................................ 13

*Washington Mut. Bank v. Sup. Court*,
  24 Cal. 4th 906 (2001) ........................................................... 6, 7, 8, 9

*Weinstat v. Denstply Int'l, Inc.*,
  180 Cal. App. 4th 1213 (2010) ......................................................... 18

*Werwinski v. Ford Motor Co.*,
  No. 00-943, 2000 U.S. Dist. LEXIS 11977
  (E.D. Pa. Aug. 15, 2000) ................................................................... 17

*Williams v. Gerber*,
  552 F.3d 934 (9th Cir. 2008) ............................................................ 18

*Won Kyung Hwang v. Ohso Clean, Inc.*,
  No. C-12-06355, 2013 U.S. Dist. LEXIS 54002
  (N.D. Cal. Apr. 16, 2013) ................................................................... 6

**Statutes**

15 U.S.C. § 2310(a) .......................................................................... 19

28 U.S.C. § 2201 ...................................................................... 2, 3, 20

28 U.S.C. § 2201(a) .......................................................................... 20

Cal. Civ. Code § 1780(a) ................................................................... 8

Cal. Civ. Code § 17200, *et seq.* .................................................. *passim*

BLOOD HURST & O'REARDON, LLP

Case No. 2:15-cv-02171 FMO (FFMx)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

000824402

Cal. Comm. Code § 2725(1) ........................................................................ 13

Cal. Civ. Code § 1750, *et seq* ................................................................ *passim*

Magnuson-Moss Warranty Act ............................................................ 2, 19, 20

N.C. Gen. Stat. § 75-1.1 .......................................................................... 11

N.Y. Gen. Bus. Law § 349 ................................................................... 11, 13

**Federal Rules**

Fed. R. Civ. P. 8(a) ................................................................................. 10

Fed. R. Civ. P. 8(a)(2) ......................................................................... 5, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................ 5

BLOOD HURST & O'REARDON, LLP

Case No. 2:15-cv-02171 FMO (FFMx)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

000824402

BLOOD HURST & O'REARDON, LLP

Plaintiffs Brian Warner, Kenneth MacLeod, Michael Meade, Michael Watson, James Fuller, and Dale Franquet respectfully submit this memorandum in opposition to Defendant Toyota Motor Sales, U.S.A., Inc.'s ("Toyota") Motion to Dismiss Plaintiffs' Complaint ("Motion" or "Mot").

## I.    INTRODUCTION

The integrity of the frame of a motor vehicle is critical to the safe operation of that vehicle.  A vehicle with weaken or compromised frame is flatly unsafe to drive.  Plaintiffs and other consumers who purchased a model year 2005-2009 Toyota Tacoma ("Tacoma Vehicles") expected those vehicles to be reasonably protected from premature and excessive rust corrosion.  Contrary to this expectation, the Tacoma Vehicles' frames lack adequate rust protection, which can result in premature rust corrosion that compromises the structural integrity, safety, stability, and crash-worthiness of the vehicles.  Toyota has long been aware that Tacoma Vehicles do not have adequate rust corrosion protection.  However, instead of informing consumers of this latent defect, Toyota concealed it, knowing that owners would not notice excessive rust corrosion on the undercarriage of their vehicles.  It was not until 2014, that Toyota issued its deficient Limited Service Campaign offering repairs for only a fraction of the Tacoma Vehicles registered in limited states; a campaign that was not adequately publicized, does not reimburse for repairs previously paid for by the consumer, and does nothing to prevent excessive rust corrosion in the future.  Even then, Toyota misled the public about the defect, saying the problem only occurred in cold weather states.  Just last month, Toyota expanded the limited campaign to non-cold weather states, because the frames prematurely rust out in warm weather states as well, but continues to mislead by stating that there is only a problem if the vehicle previously was driven in a cold weather state.

Based on these same facts, the United States District Court for the Western District of Arkansas recently denied Toyota's motion to dismiss claims for

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

00084402

violations of the Arkansas Deceptive Trade Practices Act and for unjust enrichment and declaratory relief.  *See Burns v. Toyota Motors Sales, U.S.A., Inc.*, No. 2:14-CV-02208 (W.D. Ark. Apr. 23, 2015).

Here, Plaintiffs allege Toyota's conduct violates California's Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"), the Magnuson-Moss Warranty Act, breaches implied and express warranties, and entitles Plaintiffs to declaratory relief under 28 U.S.C. § 2201.  Toyota's Motion to Dismiss Plaintiffs' claims fails on all points.

Plaintiffs properly allege consumer protection claims under the CLRA and UCL against Toyota, a California citizen, because application of California law is constitutional, and Toyota does not meet its burden of demonstrating an actual material conflict with California consumer protection laws and the laws of the states Toyota wishes to apply, or that the other states have a greater interest in the claims that would be impaired by application of California law.  Even so, Plaintiffs also sufficiently plead alternative state consumer protection claims.

Further, Plaintiffs' implied and express warranty claims are not time-barred, privity is not required for Plaintiffs' implied warranty claims because Plaintiffs are third party beneficiaries of the implied warranty and Toyota knew that the Tacoma Vehicles contained a dangerous latent defect, Plaintiffs were not required to present their vehicles during the express warranty period, and Plaintiffs can rely on statements in the Owner's Manual as the basis for their breach of express warranty claim.

Plaintiffs also sufficiently plead claims under the Magnuson-Moss Act because they also state common law warranty claims and not all Plaintiffs are required to participate in an alternative dispute resolution process because as demonstrated by Plaintiffs' experiences, such a process would be futile.

Finally, Plaintiffs' claims for declaratory relief under 22 U.S.C. § 2201 are not duplicative of their other claims.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

BLOOD HURST & O'REARDON, LLP

000824402

## II.    FACTS

### A.    The Defective Tacoma Vehicles

Tacoma Vehicles' frames lack adequate rust corrosion protection.   ¶14.[1] This latent defect leads to severe rust corrosion in the vehicles' frames compromising the vehicles' safety, stability, and crash-worthiness.  ¶16.  Toyota has long known that the frames on its Tacoma Vehicles were defective.  ¶19. Despite this knowledge, Toyota failed to disclose the existence of the defect to Plaintiffs when they purchased their vehicles, has not issued a recall to inspect and repair Tacoma Vehicles, and has not offered to reimburse Tacoma Vehicle owners for costs incurred to identify and repair such defects.

Rust corrosion has a significant negative effect on the structural integrity of metal items, such as Tacoma Vehicles' frames, weakening the frames by replacing strong iron or steal with flaky powder.  ¶15.  Excessive rust corrosion on Tacoma Vehicles compromises the safety, stability, and crash worthiness of such vehicles, because important suspension components, engine mounts, transmission mounts, and body mounts anchor to the frames of the vehicles.  ¶16. Tacoma Vehicles with frames exhibiting severe rust corrosion are unstable and unsafe to drive.   ¶14.   Absent time consuming and expensive repair and replacement, the Tacoma Vehicles that experience excessive rust corrosion are essentially worthless.  ¶2.

Toyota has long known that the frames on Tacoma Vehicles lack adequate rust corrosion protection.   ¶19.   In March 2008, in response to numerous complaints, Toyota extended warranty coverage on approximately 813,000 model years 1995 through 2000 Tacoma vehicles to 15 years with no mileage restrictions.   ¶20.   Under that program, Toyota, at its option, would repair or repurchase vehicles with perforated frames stemming from severe rust corrosion. *Id.*  At the time, Toyota acknowledged that the rust corrosion was "unrelated to

---

[1]    All "¶" cites are to the Class Action Complaint ("CAC"), Dkt. 1.

BLOOD HURST & O'REARDON, LLP

1   and separate from surface rust which is commonly found on metallic surfaces

2   after some years of usage."   ¶21.   Toyota sought to limit the costs of the

3   campaign by conducting vehicle inspections only when the customer had noticed

4   the rust, knowing that many owners would not notice excessive rust corrosion in

5   the undercarriage of the vehicle.   ¶22.   Toyota later expanded the program to

6   include model years 2001 through 2004 Tacoma vehicles, with the exception that

7   there is no buy-back option for such vehicles.   ¶23.

8   **B.   Toyota's Deficient Limited Service Campaigns**

9   In June 2014, Toyota initiated a "Limited Service Campaign" ("LSC") to

10   address rusted frames on certain model year 2005–2008 Tacoma Vehicles.   ¶28.

11   The campaign was not widely publicized and is limited to certain 2005–2008

12   Tacoma vehicles registered in "salt-belt-states."[2]   *Id.*   Under the LSC, customers

13   must bring their Tacoma Vehicles in to a Toyota dealer for an inspection.   If the

14   Toyota dealer does not find "significant rust perforation" on the frame, the dealer

15   will apply rust corrosion-resistant compounds to the frames.   Dkt. 17-2, Exhibit

16   1.   If "significant rust perforation" is found on the frame pursuant to the

17   inspection, Toyota "will provide an appropriate remedy" at no charge.   *Id.*   No

18   criteria are provided for how a Toyota dealer determines whether "significant

19   rust perforation" exists or what the "appropriate remedy" is.   In order to obtain

20   any relief under the LSC, consumers must bring their Tacoma Vehicles in for

21   inspection by March 31, 2016.   *Id.*   That means if the "significant rust

22   perforation" happens any time after that date, Toyota will not repair it.

23   Last month, after the filing of the CAC, Toyota expanded its LSC for

24   certain model year 2005-2008 Tacoma Vehicles in all states, including warm

25   weather states.   Dkt. 17-2, Exhibit 2.   However, as it was in 2014, the LSC

26

27   _____

28   [2]      The campaign applies only to certain Tacoma vehicles registered in the following states: Connecticut, Delaware, Illinois, Indiana, Massachusetts, Maryland, Maine, Michigan, Minnesota, New Hampshire, New Jersey, Ohio, Pennsylvania, Rhode Island, Virginia, Vermont, Wisconsin, and West Virginia.

BLOOD HURST & O'REARDON, LLP

1    remains deficient and Toyota continues to mislead consumers about the defect.

2    The recent notices instruct only those persons who "believe [his/her] vehicle has

3    been operated in cold climate regions of the United States where high road salt is

4    frequently used" to go to a Toyota dealer for inspection.  *Id.*  This misleads

5    consumers into believing that if their Tacoma Vehicle suffers from "significant

6    rust corrosion" but was not driven in a "cold climate region[]" then the vehicle is

7    not defective and Toyota will not repair it.

8        Additionally, the 2015 LSC appear to only apply to vehicles currently

9    exhibiting excessive rust corrosion as the 2015 LSC notice states that "remedy

10   cost for perforation of the vehicle's frame caused by rust corrosion" will be

11   provided.  *Id.*  It is unclear how Toyota determines this.  Additionally, Toyota

12   will not apply rust corrosion-resistant compounds to the frames of vehicles that

13   are not suffering from excessive rust corrosion and will not make any repairs to if

14   the rust corrosion occurs after March 31, 2016.  Moreover, even for those

15   vehicles that receive a replaced frame, the repairs are so extensive that the

16   vehicles often become salvage titles, greatly reducing their value.

17   **III.   STANDARDS ON A MOTION TO DISMISS**

18       The Federal Rules of Civil Procedure require that a complaint include "a

19   short and plain statement of the claim showing that the pleader is entitled to

20   relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required.

21   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

22       To survive a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), "a

23   complaint must contain sufficient factual matter, accepted as true, to 'state a

24   claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell*

25   *Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial

26   plausibility when the plaintiff pleads factual content that allows the court to draw

27   the reasonable inference that the defendant is liable for the misconduct alleged."

28

BLOOD HURST & O'REARDON, LLP

---

[3]    Internal quotations and citations omitted unless otherwise specified.

1    *Iqbal,* 556 U.S. at 678.   When reviewing a motion to dismiss, all factual

2    allegations are taken as true and construed in the light most favorable to the non-

3    moving party.  *See Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th

4    Cir. 1994).

5    **IV.   TOYOTA'S MOTION SHOULD BE DENIED**

6       **A.   Plaintiffs Sufficiently Allege Consumer Protection Claims**

7          **1.   Under the Correct Choice-of-Law Analysis, Plaintiffs'
          UCL and CLRA Claims Stand**

8

9    Toyota argues that the CLRA and UCL cannot apply to non-California

10   residents and instead the laws of the states in which Plaintiffs reside should

11   apply.  Toyota's analysis is deficient and wrong.

12   As the proponent of another state's laws, it is Toyota's burden to

13   demonstrate that under California's choice-of-law governmental interest test,

14   application of the other state's laws is appropriate.  *See Washington Mut.*, 24 Cal.

15   4th at 919; *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 545-46 (C.D. Cal. 2012).

16   This is a fact intensive analysis that must be supported by evidence.  *Parkinson*

17   *v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008); *Badella v. Deniro*

18   *Mktg. LLC*, No. C 10-03908, 2011 U.S. Dist. LEXIS 128145, at *33 (N.D. Cal.

19   Nov. 4, 2011).  Toyota fails to meet its burden.[4]

20   Application of California law to non-residents is constitutional so long as

21   California has "significant contact or significant aggregation of contacts" to the

22   _____

23   [4]       Toyota has the evidence in its possession but fails to meet its burden.
     Because the analysis is fact intensive, when it is a plaintiff's burden of
24   demonstrating another state's law applies, courts routinely find that doing such
     an analysis at the pleading stage is inappropriate.  *See Czuchaj v. Conair Corp.*,
25   No. 13-CV-1901, 2014 U.S. Dist. LEXIS 54410, at *25 (S.D. Cal. Apr. 17, 2014)
     (finding choice-of-law analysis inappropriate at motion to dismiss stage).
     Instead, when its plaintiff's burden, the "inquiry is most appropriate at the class
26   certification stage of the case, after the parties have engaged in discovery."  *Won*
     *Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355, 2013 U.S. Dist. LEXIS
27   54002, at *59 (N.D. Cal. Apr. 16, 2013).   If necessary, the court can then
     determine whether a nationwide class or subclasses are appropriate.   *See*
28   *Khorrami v. Lexmark Int'l*, No. CV 07-01671, 2007 U.S. Dist. LEXIS 98807,
     *10-*11 (C.D. Cal. Sept. 13, 2007).

BLOOD HURST & O'REARDON, LLP

claims. *Washington Mut. Bank v. Sup. Court*, 24 Cal. 4th 906, 919 (2001) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985)); *Hurtado v. Sup. Ct.*, 11 Cal. 3d 574, 581 (1974); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).   When a defendant, like Toyota, is headquartered in California, has its operations there, and a significant portion of the Class members reside in California, application of California law to a nationwide class is appropriate. *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 538-39 (C.D. Cal. 2011) (applying California law to nationwide class where defendant's headquarters were in California and 30% of sales occurred in California); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) (applying California to nationwide class where 19% of class sales were in California); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008) (certifying nationwide California-law class where defendant had California operations and a significant number of class members resided in California).

To apply another state's consumer protection laws, Toyota must first demonstrate that there are "material difference[s] between the California and other states' laws on the facts of this case." *Bruno*, 280 F.R.D. at 549; *see also Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010); *Washington Mut.*, 24 Cal. 4th at 919. Even if the elements for the particular causes of action differ, it may not present a material conflict because the differing elements may not be at issue in the litigation. *Pokorny*, 601 F.3d at 995; *Keilholtz*, 268 F.R.D. at 341. Indeed, courts have found there are no material differences among states' consumer protection laws. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998) ("[T]he idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims"); *Keilholtz*, 268 F.R.D. at 341 (finding that defendants did not meet their burden of demonstrating material differences in states' consumer protection laws

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

BLOOD HURST & O'REARDON, LLP

000824402

1   where they showed differences involving reliance, scienter, damages, and other

2   elements).

3       Although Toyota attempts to point out differences in the states' laws by

4   pointing to the opinions of other courts under the facts in those cases, Toyota

5   fails to show how those differences are material to this case.  A mere citation to

6   another court's analysis is not sufficient to meet Toyota's burden.  *Bruno*, 280

7   F.R.D. at 549; *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, No.

8   ML 10-02199, 2012 U.S. Dist. LEXIS 141150, *13 (C.D. Cal. Sept. 28, 2012).

9       The fact that the unlawful prong of the UCL creates a cause of action by

10   borrowing violations of other laws does not create a material conflict with the

11   consumer protection statutes of other states it simply makes it a unique cause of

12   action to provide relief to consumers.  *See* Mot. at 7.  Additionally, reliance is not

13   at issue because to the extent it is even required under the UCL and CLRA, it is

14   presumed since Toyota's omissions are material.  *See In re Tobacco II Cases*, 46

15   Cal. 4th 298, 330 (2009) (reliance only required under fraudulent prong); Cal.

16   Civ. Code § 1780(a) (reliance not an element of the CLRA).  This is unlike

17   *Mazza*, 666 F.3d at 591, relied on by Toyota (Mot. at 7), where plaintiffs' claims

18   were premised on advertising messages.  Here, Plaintiffs' claims are based on

19   Toyota's sale of vehicles that contain a safety defect, not on advertising

20   messages.  Similarly, as demonstrated below, the statute of limitations and

21   whether a claim can be brought against a remote manufacturer are not at issue.

22   *See infra* §IV.A.2.

23       If Toyota can meet its burden of showing a material difference in the laws

24   exists under the facts of this case such that there is a conflict (which it has not

25   done), Toyota must then demonstrate that the other states have an interest in

26   applying their laws to the case.  *Washington Mut.*, 24 Cal. 4th at 920.  "Despite

27   materially different laws, 'there is still no problem in choosing the applicable

28

BLOOD HURST & O'REARDON, LLP

rule of law where only one of the states has an interest in having its law applied.'" *Id.* (quoting *Hurtado*, 11 Cal. 3d at 580).

Finally, and only if Toyota satisfies the first two steps, should the Court determine which states' interests "would be more impaired" under the governmental interest test if its laws were not applied. *Washington Mut.*, 24 Cal. 4th at 920; *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012). "If California law can be applied without violating the policy of the foreign state, there is a false conflict, and California law should be applied." *Keilholtz*, 268 F.R.D. at 341.

Toyota relies solely on the fact that the vehicles were purchased in differing states to argue that those states have a greater interest.  Mot. at 8. However, this is not a case about misleading advertising or sales materials at the point of sale.  Rather, this case is premised on Toyota's manufacture and sale of the Tacoma Vehicles with a safety defect, Toyota's refusal to properly inform purchasers of the defect, and Toyota's refusal to adequately remedy that defect.

As this conduct occurred in California, California has a greater interest in applying its consumer protection laws to Toyota.   In addition to being headquartered here, all conduct relevant to this case (other than some sales) occurred in California, such as Toyota's development of sales materials, Toyota's decision to not inform consumers of the rust defect, Toyota's issuance of the LSC, Toyota's development of standards for determining whether there is "significant rust perforation," and whether to reimburse consumers for previous repairs.  *See* Dkt. 17-2 at Exhibit 2 (referring consumers to defendant's Toyota Customer Experience in Torrance, California).  As the California Supreme Court has recognized, states have an interest "in regulating conduct that occurs within its borders" and applying its laws to corporations operating within its borders. *McCann v. Foster Wheeler*, 48 Cal. 4th 68, 98 (2010).  California law applies to Toyota and Toyota fails to meet its burden of proving otherwise.

BLOOD HURST & O'REARDON, LLP

000824402

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

**2. Plaintiffs' Alternative Non-California Consumer Protection Claims Are Sufficiently Pled**

Although Toyota has not met its burden of demonstrating that another state's consumer protection laws apply, Plaintiffs address Toyota's argument with regard to those alternative claims.

**a. Plaintiffs Adequately Allege the Non-California Consumer Protection Claims**

Toyota first argues that Plaintiffs' alternative state consumer protection claims are inadequately pled because Plaintiffs do not allege facts to support these claims. All that is required is that Plaintiffs allege enough facts to put Toyota on notice of the claim so that it may defend itself. *See* Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (the purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the … claim is and the grounds upon which it rests.").

Plaintiffs plead all facts supporting these claims throughout the CAC and in the specific UCL and CLRA counts sufficiently to put Toyota on notice of the conduct at issue that is alleged to violate these causes of action. Nonetheless, if the Court is inclined to dismiss the UCL and CLRA claims under a choice-of-law analysis and for lack of particularity, Plaintiffs request leave to amend.

**b. Plaintiffs Do Not Allege Misrepresentation Claims**

Next, Toyota argues that Plaintiffs' alternative state consumer protection claims should be dismissed because Plaintiffs do not allege that they relied on Toyota's representation in the Owner's Manual and even so, the statements are non-actionable puffery. Mot. at 10. Plaintiffs do not allege reliance on the Owner's Manual because this is not a representations case.

Rather, Plaintiffs' claims are based on Toyota's omissions. Plaintiffs allege that they reasonably expected their Tacoma Vehicles to be protected from excessive rust protection and contrary to this expectation, Tacoma Vehicles are

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

BLOOD HURST & O'REARDON, LLP

000824402

1  lacking adequate rust protection, rendering the vehicles unstable and unsafe.

2  ¶¶2, 14, 16.  Rust corrosion on the frame of a Tacoma Vehicles makes them

3  unstable and unsafe.  ¶¶14-16.  Plaintiffs allege Toyota knew of the inadequate

4  rust protection leading to excessive rust corrosion but did not inform Plaintiffs

5  about the latent defect.  ¶19.

6         Under each of the alternative state consumer protection theories cited by

7  Toyota, Toyota had a duty to inform Plaintiffs of the inadequate rust protection

8  on their Tacoma Vehicles and Toyota's failure to do so constitutes a violation of

9  the laws.  *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003)

10 ("deception occurs if there is a representation, omission, or practice that is likely

11 to mislead the consumer acting reasonably in the circumstances, to the consumer

12 detriment"); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab.*

13 *Litig.*, 880 F. Supp. 2d 801, 871 (S.D. Ohio 2012) ("Omissions are actionable

14 under the OCSPA if they concern a matter that is or is likely to be material to a

15 consumer's decision to purchase the product or service involved."); *Marshall v.*

16 *James B. Nutter & Co.*, 816 F. Supp. 2d 259, 264 (D. Md. 2011) (finding

17 Maryland Consumer Protection Act prohibits omission of material facts);

18 *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85

19 N.Y.2d 20, 26 (N.Y. Ct. App. 1995) (omissions claims permitted under N.Y.

20 Gen. Bus. Law § 349); *River's Edge Pharms., LLC v. Gorbec Pharm. Servs.*, No.

21 1:10CV991, 2012 U.S. Dist. LEXIS 57969, *80-*81 (M.D. N.C. Apr. 25, 2012)

22 (omissions claims permitted under N.C. Gen. Stat. § 75-1.1).

23              **c.    Watson's and Warner's Claims Are Not Time**

24                      **Barred**

25       Toyota argues that Watson's and Warner's alternative claims under

26 Florida and Ohio consumer protection laws are time barred.  Mot. at 11-12.

27       However, both equitable tolling is permitted where defendant has engaged

28 in concealment of the deceptive conduct.  *See State Farm Mut. Auto Ins. Co. v.*

BLOOD HURST & O'REARDON, LLP

*Kugler*, No. 11-80051, 2011 U.S. Dist. LEXIS 107005, *43 (S.D. Fla. Sept. 21, 2011) (tolling FDUTPA claims based on equitable tolling).  Nonetheless, whether equitable tolling is appropriate is a fact intensive question not appropriate on a motion to dismiss.  *See id.*

Plaintiffs allege that Toyota has been aware that Tacoma Vehicles exhibit excessive rust corrosion due to inadequate corrosion-resistant protection and knew this at the time of sale but did not informed purchasers of this safety related defect.  ¶¶19-22, 29, 88.  Plaintiffs learned of the excessive rust defect only recently and Toyota continued to conceal the problem by denying Plaintiffs any remedies.  ¶¶32, 41.  Accordingly, Watson's and Warner's alternative Florida and Ohio consumer protection claims should be tolled.

### d.    Warner Pleads an Omission Claim Under the OCSPA

As with the CLRA and UCL, "[o]missions are actionable under the OCSPA if they concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved."  *In re Porsche Cars*, 880 F. Supp. 2d at 871.  Warner alleges that Toyota's omissions regarding the excessive rust corrosion were material.  ¶¶59, 67.

Toyota cites *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751 (N.D. Ohio 2001), for the proposition that a manufacturer does not owe any duty to disclose to a consumer.  *See* Mot. at 12.  That is not what *Radford* says. Rather, the court in *Radford* expressly declined to decide that issue because the court dismissed the plaintiff's OCSPA claim for other reasons.  168 F. Supp. 2d at 754 n.2 ("I do not address this issue.").  Toyota had a duty to disclose that Tacoma Vehicles did not have adequate rust corrosion protection that could lead to premature and excessive rust corrosion, making the vehicle unsafe to drive.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

BLOOD HURST & O'REARDON, LLP

000824402

BLOOD HURST & O'REARDON, LLP

### e.     Franquet Pleads a Section 349 Claim

Finally, Toyota contends that it is not liable to Franquet under New York section 349 because neither Toyota nor its dealers sold Franquet his Tacoma. Mot. at 12.  However, "[t]here is no requirement of privity [under Section 349], and victims of indirect injuries are permitted to sue under the Act."  *Vitolo v. Dow Corning Corp.*, 634 N.Y.S.2d 362, 366-67 (N.Y. Sup. Ct. 1995).  New York Section 349 declares unlawful "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service…."  N.Y. Gen. Bus. Law § 349(a).  "[A]*ny person* who has been injured due to a violation [of Section 349 has] the right to bring an action."  *Vitolo,* 634 N.Y.S.2d at 366.   Toyota does not cite any New York law to the contrary. Franquet sufficiently pleads a Section 349 claim.

### B.     Breach of Implied Warranty of Merchantability

#### 1.     Statute of Limitations

Toyota argues that Plaintiffs' implied warranty claims are barred by the applicable four year statute of limitations because the implied warranty claims began accruing when Plaintiffs' received their vehicles.  Mot. at 13.

A breach of implied warranty claim must be brought within four years of the date of accrual, which is ordinarily "when tender is made."  Cal. Comm. Code § 2725(1).[5]  "An exception to the accrual at tender rule applies, however, when a warranty 'explicitly extends to future performance of the goods.'"  *Roberts v. Electrolux Homes Prods.*, No. 12-1644, 2013 U.S. Dist. LEXIS 185488, *20 (C.D. Cal. Mar. 4, 2013) (quoting Cal. Comm. Code § 2725(2)).  "In that case, courts apply the discovery rule, with the result that the breach of warranty claim 'accrues when the breach is or should have been discovered.'"

---

[5]  Although Toyota cites the laws of other states in addition to California, Toyota fails to meet its burden of demonstrating that another state's laws apply because it conducts no choice of law analysis.  *See supra* §IV.A.1.   Indeed, Toyota's arguments suggest that there is no conflict among the states' implied warranty laws.  California law applies.

000824402

1   *Id.* (quoting Cal. Comm. Code § 2725(2)).  When a defendant knows of a defect

2   and conceals it, the implied warranty is tolled to the date the defect is discovered.

3   *Id.* at *25 (plaintiffs' implied warranty claims not time barred where "defendant

4   failed to disclose material facts about the dryer's defect that were within its

5   exclusive knowledge . . . .").  Tolling is intended "to disarm a defendant who, by

6   his own deception, has caused a claim to become stale and a plaintiff dilatory."

7   *Regents of Univ. of Cal. v. Sup. Ct.*, 20 Cal. 4th 509, 533 (1999).

8        Here, Plaintiffs only recently became aware of the rust corrosion defect.

9   ¶¶32, 34, 37, 39, 40, 44, 47.  That is because, although Toyota was uniquely

10  aware of the defect, Plaintiffs allege that Toyota failed to inform them and others

11  of it.  ¶¶19, 83.  Instead, as Plaintiffs allege, Toyota continued to conceal the

12  defect.  ¶¶19-22.  Without notification from Toyota, Plaintiffs could only learn of

13  the defect once their vehicles began to rust.  Thus, Plaintiffs' implied warranty

14  claims are tolled and timely.

15       Additionally, implied warranty claims are tolled during the duration of an

16  express warranty.  *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908,

17  924-2 (C.D. Cal. 2010) (tolling implied warranty claims for duration of four-year

18  express warranty); *Falco v. Nissan N. Am. Inc.*, No. 13-cv-0686, 2013 U.S. Dist.

19  LEXIS 147060, *28 (C.D. Cal. Oct. 10, 2013) ("Following the holding in

20  Ehrlich, Plaintiffs' claims are not time barred because [defendant's] five-year

21  warranty tolled the running of the implied warranty's statute of limitations.").

22  Plaintiff MacLeod purchased his 2009 Tacoma in 2009.  Toyota's three-year

23  express warranty tolled MacLeod's implied warranty claims until 2012 when

24  they began to run.  Accordingly, at the very least MacLeod's implied warranty

25  claim is timely.

26

27

28

BLOOD HURST & O'REARDON, LLP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

000824402

### 2.    Privity Is Not Required for Implied Warranty Claims

Toyota also argues that the implied warranty claims of Fuller, Franquet, Warner, and Watson fail because privity is required.[6] Mot. at 15.

Privity is not required "where the plaintiff consumer is an intended third-party beneficiary of the contract for sale of a good" between a manufacturer and a seller. *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1222 (C.D. Cal. 2011); *see also Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69-70 (1978); *McBurnette v. Playground Equipment Corp.*, 137 So. 2d 563, 566-67 (Fla. 1962) (recognizing exception to privity requirement for third party beneficiaries); *Bobb Forest Prods. v. Morbark Indus.*, 783 N.E.2d 560, 576 (Ct. App. Ohio 2002) ("A consumer may also have privity of contract with the manufacturer if that consumer is an intended third-party beneficiary . . . ."); *Coastal Leasing Corp. v. O'Neal*, 405 S.E.2d 208, 212 (Ct. App. N.C. 1991) (holding that the law implied privity where the third party is an intended beneficiary).

Here, Plaintiffs were the intended beneficiaries of an implied warranty between Toyota and its dealers because Toyota intended for the dealers to sell the Tacoma Vehicles to consumers. Therefore, the implied warranty that the Tacoma Vehicles would be safe and operate as intended was for the consumers not the dealers.

Additionally, there is also an exception to privity for "dangerous instrumentalities" or products that although not ordinarily dangerous are designed in a way that would make them unknowingly dangerous. *See Alvarez v. Felker Mfg. Co.*, 230 Cal. App. 2d 987, 997 (1964) ("[W]here the instrumentality is dangerous [because] it contains latent defects . . . the implied warranties of

---

[6]    Toyota does not make these arguments with regard to Meade and MacLeod.

BLOOD HURST & O'REARDON, LLP

1  fitness and merchantability run from the manufacturer to the consumer even
2  though the latter is not in contractual privity with the former."); *Matthews v.*
3  *Lawnlite Co.*, 88 So. 2d 299, 301 (Fla. 1956) (privity not required where chair
4  was designed in a dangerous manner); *Hubbard v. Gen. Motors Corp.*, No. 95
5  Civ. 4362, 1996 U.S. Dist. LEXIS 6974, *16-*17 (S.D.N.Y. May 22, 1996)
6  (exception exists for "thing of danger," which includes vehicles with defective
7  braking system).

8      Here, the Tacoma Vehicles were dangerous because they contained a
9  latent defect in the excessive rust corrosion that made the Tacoma Vehicles
10  unsafe for their intended purpose, driving.  ¶¶78-80.  Accordingly, the implied
11  warranties ran from Toyota as the manufacturer to Plaintiffs as the consumers.

12  **C.    Breach of Express Warranty**

13      **1.    Statutes of Limitations**

14      When Plaintiffs purchased their Tacoma Vehicles, they received basic
15  general warranties covering defects in material and workmanship for 3 years or
16  36,000 miles, whichever came first.  Although the breach of warranty claims
17  were filed outside the four (or five) year statute of limitations, Toyota's warranty
18  by its terms extended to future performance.  The applicable general warranty
19  provisions provide "[t]he performance of necessary repairs and adjustments is the
20  exclusive remedy under these warranties or any implied warranties."  Dkt. 17-2,
21  Exhibit 5 at 71.  This warranty "covers repairs and adjustments needed to correct
22  defects in materials or workmanship or any part supplied by Toyota . . . ."  *Id.*at
23  72.  Accordingly, by its terms, the warranty extends to future performance.  *See*
24  *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 642 (2003) ("A cause of action for
25  breach of warranty of future performance, such as [defendant]'s 25-year
26  warranty on the siding, accrues upon discovery of the breach."); *see also Ehrlich*,

27
28

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

801 F. Supp. 2d at 924-25 (a 4-year/50,000 mile express warranty extends to future performance of goods).[7]  Plaintiffs' express warranty claims are timely.

### 2.   Presentment of Plaintiffs' Vehicles Was Not Required

Toyota contends that because Plaintiffs did not discover the latent rust defect that was known to Toyota until after the express warranty expired, they did not present their vehicles to Toyota within the warranty period.  Mot. at 17.  Toyota is wrong for two reasons.

First, the express warranty between Plaintiffs and Toyota did not require Plaintiffs to present their Tacoma Vehicles for service as a precondition of receiving the benefits of the warranty.   The only language in the warranty regarding presentment simply stated: "You are responsible for presenting your vehicle to a Toyota dealership as soon as a problem exists."  *See* Dkt. 17-2, Exhibit 6 at 21.  Plaintiffs complied with this provision, as they were not aware that the frame on their Tacoma Vehicles lacked adequate rust corrosion protection until recently, and contacted Toyota immediately.  Second, the quoted language does not expressly require that an individual present their defective car within the warranty period.  *See Werwinski v. Ford Motor Co.*, No. 00-943, 2000 U.S. Dist. LEXIS 11977, at *5 (E.D. Pa. Aug. 15, 2000). Toyota's presentment argument fails.

### 3.   Plaintiffs Plead Breach of Express Warranty Based on Toyota's Statements in the Owner's Manual

Toyota argues that Plaintiffs' express warranty claims based on Toyota's promise in the Owner's Manual fail because Plaintiffs do not allege that they relied on those statements in making their purchase and the statements are mere puffery.  Mot. at 18-20.  Toyota is wrong on both points.

---

[7]   Like with the implied warranty claims,  Toyota does not meet its burden of demonstrating that another state's express warranty laws apply because it conducts no choice of law analysis.  *See supra* §IV.A.1.

000824402

Any affirmations by a seller whether or not relied on by the plaintiffs become a part of their agreement. *Weinstat v. Denstply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1228-30 (2010). In *Weinstat*, the court rejected the same argument Toyota makes here that statements in a directions booklet sealed to the product when delivered could not form the "basis of the bargain" without reliance on the statements. *Id.* at 1228. The *Weinstat* court found that "breach of express warranty arises in the context of contract formation in which reliance plays no role." *Id.* at 1227. The court explained, "'[t]o accept the manufacturer's argument that in order to be part of the basis of the bargain the warranty must actually be handed over during the negotiation process so as to be said to be an actual procuring cause of the contract, is to ignore the practical realities of consumer transactions where in the warranty card generally comes with the goods . . . .'" *Id.* at 1230 (quoting *Murphy v. Mallard Coach Co.*, 582 N.Y.2d 528, 531 (1992)).

Similarly here, Plaintiffs received the Owner's Manual with the purchase of their Toyota Vehicles. The statements made by Toyota in that Owner's Manual formed the basis of the parties' bargain and properly support Plaintiffs' breach of express warranty claims.

Additionally, Toyota's statement in the Owner's Manual is not puffery. "Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely . . . ." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir 1997). "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, misdescriptions of specific or absolute characteristics of a product are actionable." *Id.* Additionally, "[t]he context of the [representation] is vitally important . . . ." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011); *see also Williams v. Gerber*, 552 F.3d 934, 939 (9th Cir. 2008).

BLOOD HURST & O'REARDON, LLP

000824402

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

1    Toyota makes concrete statements regarding the fact that is provides rust

2    protection.  It states, "Toyota, through its diligent research, design and use of the

3    most advanced technology available, helps prevent corrosion and provides you

4    with the finest quality vehicle construction."   ¶26.   Although when taken in

5    isolation, Toyota's statements such as "most advanced" and "finest" may be

6    puffery, when read together in the context of the message as a whole, Toyota's

7    message conveys that it has supplied at least reasonable rust protection on the

8    Tacoma Vehicles.  That is an affirmation of fact sufficient to convey an express

9    warranty.

10   **D.    Magnuson-Moss Claim**

11   Since Plaintiffs have stated statutory warranty claims, Toyota's argument

12   that Plaintiffs did not state a claim under the Magnuson-Moss Act fails.  *See*

13   *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 832-33

14   (2006) (Magnuson-Moss provide a federal cause of action for state warranty

15   claims).

16   Toyota also contends that MacLeod cannot state a Magnuson-Moss claim

17   because he did not participate in an informal dispute resolution procedure.  Mot.

18   at 20.  But not every plaintiff must engage in informal dispute resolution to bring

19   this claim.  Magnuson-Moss encourages information dispute resolution to have

20   disputes "fairly and expeditiously settled."   15 U.S.C. § 2310(a).   However,

21   courts have found that where informal dispute resolution would be futile, it is not

22   required.  For example, in *Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp.

23   2d 1168, 1179 (D. Nev. 2003), the court found that "[p]laintiff was not obligated

24   to follow the informal dispute resolution procedures found in Mercedes-Benz'

25   written warranty, because it would have been futile to do so . . . ."  *Aff'd*, 402

26   F.3d 912 (9th Cir. 2005).

27   As demonstrated from Watson's, Meade's, Warner's, Franquet's, and

28   Fuller's experiences, participating in dispute resolution with Toyota would be

19    Case No. 2:15-cv-02171 FMO (FFMx)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

1   futile.  *See* ¶93.  Toyota has consistently refused to remedy the rust corrosion

2   defect in Plaintiffs' Tacoma Vehicles.   ¶¶32, 37, 41, 44, 48.   Accordingly,

3   MacLeod states a claim under the Magnuson-Moss Act.

### E.   Plaintiffs Plead a Declaratory Relief Claim

5       Toyota argues that Plaintiffs' declaratory relief claim is duplicative of

6   Plaintiffs' other claims and the requested relief was provided under Toyota's

7   LSC. Mot. at 21.  Toyota is wrong on both points.

8       It is well-settled that a request for declaratory relief may be considered

9   independently of whether other forms of relief are appropriate.   28 U.S.C.

10   § 2201(a).  Dismissal of a declaratory relief claim is only appropriate where it is

11   apparent from the complaint that the claim is "unnecessary" because the relief is

12   sought through other claims.  *See Marilley v. McCamman*, No. C-11-02418, 2011

13   U.S. Dist. LEXIS 129294, *25-*26 (N.D. Cal. Nov. 8, 2011) (declining to

14   dismiss claim where factual issues remained).  Plaintiffs' declaratory relief claim

15   under 28 U.S.C. § 2201 seeks relief distinct from their other claims because they

16   independently seek a declaration that the Tacoma Vehicles are defective because

17   they lack adequate rust protection.  ¶109.

18       Additionally, Plaintiffs are free to pursue alternative forms of relief

19   through alternative claims.  *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214,

20   1219 (9th Cir. 1990); *E.H. Boly & Son, Inc. v. Schneider*, 525 F.2d 20, 23 n.3 (9th

21   Cir. 1975).

22       Finally, it is in dispute whether Toyota's LSCs provided sufficient relief

23   (Plaintiffs allege that they do not) and the LSCs do not provide the relief

24   requested through Plaintiffs' declaratory relief claim.  For example, Plaintiffs

25   request it be declared that "model years 2005-2009 Toyota Tacoma vehicles lack

26   adequate rust corrosion protection and are defective . . . ."  ¶109.  Neither of the

27   LSCs make this admission.  Both LSCs simply states that "certain 2005 through

28   2008 model year Tacoma vehicles operated in specific cold climate areas with

BLOOD HURST & O'REARDON, LLP

1  high road salt may exhibit more-than-normal corrosion to the vehicle's frame."

2  Dkt. 17-2, Exhibit 1 at 1, Exhibit 2 at 1.  It remains a contested issue whether the

3  Tacoma Vehicles are defective because they lack adequate rust corrosion

4  protection.

## V.    CONCLUSION

For the foregoing reasons, Toyota's Motion to Dismiss should be denied in

its entirety.

Dated: May 21, 2015

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA M. ROACH (254142)

By:        *s/ Timothy G. Blood*
           TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
proach@bholaw.com
*Attorneys for Plaintiffs*

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
ERICH P. SCHORK
1 North LaSalle Street, Suite 4600
Chicago, IL  60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

MILLIGAN LAW OFFICES
PHILIP J. MILLIGAN
500 South 16th Street
Fort Smith, Arkansas  72901
Tel: 479/783-2213
milliganlaw@sbcglobal.net

ROBERTS LAW FIRM, P.A.
MICHAEL L. ROBERTS
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas  72223
Tel: 501/821-5575
501/821-4474 (fax)
mikeroberts@robertslawfirm.us
*Of Counsel*

BLOOD HURST & O'REARDON, LLP

000824402

21        Case No. 2:15-cv-02171 FMO (FFMx)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 21, 2015.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

000824402