1
2
3
4
5
6
7  **UNITED STATES DISTRICT COURT**

8  **CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| 10 BRIAN WARNER, KENNETH MACLEOD, MICHAEL MEADE, 11 MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET, individually and 12 on behalf of all others similarly situated, | ) Case No. CV 15-2171 FMO (FFMx) ) ) ) ) ) |
| 13  Plaintiffs, | **ORDER RE: MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| 14  v. | ) ) |
| 15 TOYOTA MOTOR SALES, U.S.A., INC., a California Corporation, | ) ) |
| 16  Defendant. | ) ) |
| 17 ———————————————— | ) |

18      Having reviewed and considered all the briefing filed with respect to Toyota Motor Sales,

19  U.S.A., Inc.'s ("defendant" or "TMS") Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt.

20  46, "Motion"), the court concludes that oral argument is not necessary to resolve the Motion, see

21  Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir.

22  2001), and rules as follows.

23                    **INTRODUCTION**

24      Brian Warner ("Warner"), Kenneth MacLeod ("MacLeod"), Michael Meade ("Meade"),

25  Michael Watson ("Watson"), Dale Franquet ("Franquet"), and James Fuller ("Fuller") (collectively,

26  "plaintiffs") filed this action, on behalf of themselves and all others similarly situated, against

27  defendant on March 24, 2015. Plaintiffs' original Complaint sought declaratory relief and asserted

28  violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et

seq., and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; breach of implied and express warranties; and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. (See Dkt. 1, Complaint at ¶¶ 58-109). Additionally, in the alternative and on behalf of state-specific subclasses, each plaintiff alleged violations of the consumer protection statutes of Florida, Louisiana, Maryland, New York, North Carolina, Ohio, Pennsylvania, South Carolina, and Texas. (See id. at ¶ 110).

Defendant filed a motion to dismiss on May 1, 2015 (see Dkt. 17), which the court granted with leave to amend on June 5, 2015. (See Dkt. 38). Plaintiffs subsequently filed a First Amended Complaint (Dkt. 45, "FAC"), which raises the same claims for violations of California law (i.e., the CLRA and the UCL) on behalf of all plaintiffs and the class as a whole. (See Dkt. 45, FAC at ¶¶ 75-94 ("classwide claims")). In the alternative and on behalf of state-specific subclasses, plaintiffs assert the following claims for violations of the following state laws: Watson for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq. (see id. at ¶¶ 95-99); MacLeod for violation of the Maryland Consumer Protection Act, Md. Code. Com. Law §§ 13-101, et seq. (see id. at ¶¶100-04); Warner for violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code §§ 1345.01, et seq. (see id. at ¶¶ 105-11); Franquet for violation of the New York Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, et seq. (see id. at ¶¶ 112-20); Fuller for violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, et seq. (see id. at ¶¶ 121-24); and Meade for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. §§ 51:1401, et seq. (See id. at ¶¶ 125-30). Plaintiffs seek declaratory and injunctive relief, actual and punitive damages, restitution and disgorgement, interest, and attorney's fees and costs. (See id. at 29-30, Prayer for Relief).

## PLAINTIFFS' ALLEGATIONS

Plaintiffs are six individuals, each of whom purchased new or used model year 2005, 2006, or 2009 Toyota Tacoma vehicles between 2005 and 2014. They "reasonably expected and were promised vehicles that were protected from premature and excessive rust corrosion." (Dkt. 45, FAC at ¶ 1). Plaintiffs allege that "[c]ontrary to that expectation and Defendant's promise, the

Tacoma Vehicles were designed, manufactured, and sold with frames lacking adequate rust corrosion protection." (Id. at ¶ 2).  Plaintiffs further allege that although defendant has long known about the Tacoma corrosion problems, it "failed to disclose the existence of the defect . . . ; has not issued a recall; and has not offered to compensate owners . . . for the materially defective nature of such vehicles."  (See id. at ¶¶ 3-4).  Instead, defendant allegedly "represented and promised [in its 2005-2008 Owners' Manuals] that it used the 'most advanced technology available' to ensure the Tacoma Vehicles were, at the least, equipped with reasonably corrosion-resistant parts."  (Id. at ¶ 28).

Plaintiffs further allege that in 2014 and 2015, "attempting to sweep the issue under the rug, Toyota USA opted to initiate two non-publicized Limited Service Campaigns [("LSC")] that are not only inadequate in relief, but also continue to mislead Tacoma Vehicle owners concerning the cause of the excessive and premature rust corrosion." (Dkt. 45, FAC at ¶ 5).  The first LSC was in 2014 ("2014 LSC"), which applied only to certain 2005 – 2008 Tacomas registered in certain cold-weather states (those relevant to this litigation include Maryland, New York, and Ohio).  (See id. at ¶ 32).  According to plaintiffs, in notifying dealerships of the 2014 LSC, defendant stated that it had received reports that Tacomas that had been operated in certain cold areas "with high road salt usage may exhibit more-than-normal corrosion to the vehicle's frame[,]" and that some frames "may not have corrosion-resistant protection sufficient for use in [those] areas."  (Id.).

Plaintiffs allege that the 2014 LSC was "not widely publicized[,]" and consisted of sending letters to certain owners based on address information obtained from a third party "and instructing dealerships to forward notice of the [LSC] to non-original purchasers" they were aware of.  (See Dkt. 45, FAC at ¶ 33).  Further, the relief provided by the 2014 LSC was "inadequate and unnecessarily limited."  (See id. at ¶ 34).  Under the 2014 LSC, if an individual brought a Tacoma to a dealership and "rust perforation of 10 mm or larger was not identified or such perforation was identified on a non-designated portion of the vehicle's frame," the dealership was instructed to "apply corrosion resistant treatment to certain areas of the vehicle's frame and to return the vehicle to the customer[.]"  (Id. at ¶ 34).  Under the 2014 LSC, a new frame was installed only if the inspection revealed a perforation 10mm or larger on a designated portion of the frame.  (See id.

at ¶ 36).  According to plaintiffs, this created a number of problems: first, "[c]lass members that have a Tacoma Vehicle with the actual significant rust in a non-designated area of the vehicle will be left with an unrepaired vehicle with rust corrosion that will get worse[,]" (id. at 35); and second, by not requiring that a new frame be installed within a defined time period, the 2014 LSC "force[ed] owners to unwittingly drive unsafe vehicles." (See id. at ¶ 36).  Plaintiffs also allege that the 2014 LSC, which only provides relief for vehicles brought in before March 31, 2016, imposed an "arbitrary deadline" and that by not providing relief for Tacoma owners that exhibit excessive rust corrosion after that date, defendant has "disregarded its responsibility to correct latent defects in its products[.]" (See id. at ¶ 37).

In April 2015, defendant issued a second LSC ("2015 LSC") for model years 2005 - 2008 Tacomas in the 30 states not covered by the 2014 LSC.  (See Dkt. 45, FAC at ¶ 38).  The letters defendant sent to certain Tacoma owners were allegedly "misleading on the cause of the rust corrosion" because they described the corrosion as occurring on "vehicles operated in specific cold climate areas with high road salt" and encouraged owners of Tacomas that had been "operated in cold climate regions" to take their vehicles to dealerships for inspection.  (See id. at ¶¶ 40-41).  Plaintiffs, however, maintain that "the premature and excessive rust corrosion exhibited by Toyota Tacoma vehicles in states throughout the country has little or nothing to do with road salt."  (Id. at ¶ 42).  And, unlike the 2014 LSC, which provides for the application of corrosion resistant treatment on vehicles that have rust perforations smaller than 10 mm in diameter (see id. at ¶ 34), the 2015 LSC "does not provide any application of rust protection on vehicles that do not have large diameter rust perforation" or that have excessive rust in non-designated areas.  (See id. at ¶ 43).  Instead, the 2015 LSC only provides frame replacement for vehicles already exhibiting excessive corrosion to certain portions of the frame.  (See id.).  According to plaintiffs, the 2015 LSC also imposes an "arbitrary deadline" of March 31, 2016, such that Tacomas that "suffer from excessive rust corrosion after [that date] will not receive any repair."  (Id. at ¶ 44).

Plaintiffs allege that "[r]eplacing the rusted-through frames on Tacoma Vehicles pursuant to the 2014 and 2015 [LSCs] is a lengthy and highly complex process[,]" as the vehicles are "not made to be taken apart and put back together, especially after years of use." (Dkt. 45, FAC at ¶

45).  Accordingly, plaintiffs assert, "[e]ven with replacement frames installed, the vehicles are far less valuable than they would have been had frame replacement not been necessary on account of Toyota initially building such vehicles with frames possessing adequate rust corrosion protection." (Id.).

## **LEGAL STANDARD**

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 550 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010).  Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted).  "Specific facts are not necessary; the [complaint] need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); see Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 267, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005).  Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory.  See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint may be dismissed also for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

## **DISCUSSION**

In its Motion, defendant asserts that the classwide claims should be dismissed because California's choice of law rules prohibit nationwide application of the state's consumer protection law in this case, and because the declaratory relief count is duplicative of other claims.  (See Dkt. 46, Motion at 7-10 & 21-22).  Second, defendant argues that all of plaintiffs' claims based on defendant's alleged misrepresentations – classwide and state-specific – should be dismissed because there are no allegations that plaintiffs read the documents containing the alleged misrepresentations.  (See id. at 10-12).  In a slight variation on that argument, defendant also asserts that the New York claim should be dismissed because defendant did not make any representation at all to the applicable plaintiff.  (See id. at 16-17).  Third, defendant asserts that the state-specific claims based on Florida, Ohio, and Louisiana Law are barred by the applicable statutes of limitations.  (See id. at 12-16).  Finally, it contends that the Louisiana and Ohio counts should be dismissed because laws in those states that apply to the instant matter bar representative actions.  (See id. at 17-20).  The court proceeds below in the order defendant raises its arguments in the Motion: the California claims first, the claims asserted by individual plaintiffs on behalf of state-specific subclasses second, and declaratory relief last.

I.      COUNTS I AND II: CHOICE OF LAW.

In the FAC, plaintiffs assert one count for violation of the CLRA on the basis that defendant "misrepresent[ed] that it used state-of-the art methods and materials to prevent rust corrosion on the Tacoma Vehicles, . . . omitt[ed] the fact that it failed to use adequate and reasonable rust preventative measures[,] and manufactured the Tacoma Vehicles with a uniform defect that caused excessive, premature, and significant rust corrosion to the frames of the vehicles[.]"  (Dkt.

45, FAC at ¶ 76).  The UCL claim is predicated on the same substantive allegations, with plaintiffs alleging that defendant's "actions, claims, omissions, and misleading statements" constituted unlawful, unfair, and fraudulent activity under California law.  (See id. at ¶¶ 83-87).

In its Motion, defendant argues that "no Plaintiff is a resident of California, and all Plaintiffs reside and purchased their vehicles outside of California."  (See Dkt. 46, Motion at 7).  Defendant also asserts that even though its headquarters and principal place of business are in California (see Dkt. 45, FAC at ¶ 15), "the Court should apply the law of the state in which the purchase was made" because there are "material differences between California law" and the laws of the various states of purchase.  (Dkt. 46, Motion at 7).

Defendant relies primarily on Mazza v. Am. Honda Motor Co., 666 F.3d 581 (9th Cir. 2012), (see Dkt. 46, Motion at 7-10), which arose in circumstances factually similar to those in this case.  In Mazza, Florida and Maryland purchasers of Acura vehicles equipped with a Collision Mitigation Breaking System ("CMBS") sued Honda on behalf of a nationwide class on the basis that certain advertisements misrepresented the characteristics of the CMBS and omitted material information regarding its limitations.  See 666 F.3d at 585.  Plaintiffs asserted claims under California's UCL, CLRA, and False Advertising Law ("FAL").  See id. at 587.  After the district court certified a nationwide class and determined that it could apply California law to the claims of the class, Honda appealed, arguing that "common issues of law [did] not predominate because California's consumer protection statutes may not be applied to a nationwide class with members in 44 jurisdictions."  Id. at 589.  The Mazza court agreed with Honda and applied California's choice of law principles and found that there were material differences between California law and the laws of other states in question, and that the foreign states' interests would be impaired if their laws were not applied.  See id. at 591-94; see also Keegan v. American Honda Motor Co., Inc., 284 F.R.D. 504, 540 (C.D. Cal. 2012) (describing holding of Mazza as the Ninth Circuit having "noted its disapproval of applying California consumer protection law such as the UCL and CLRA to residents of other states who conducted transactions in other states.").

A.     Choice of Law Principles.

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1187, amended 273 F.3d 1266 (9th Cir. 2001).  "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." Mazza, 666 F.3d at 589, quoting Wash. Mut. Bank v. Superior Court, 24 Cal.4th 906, 921 (2001).  "Such a showing is necessary to ensure that application of California law is constitutional."  Id. at 589-90, citing Allstate Ins. Co. v. Hague, 449 U.S. 302, 210-11, 101 S.Ct. 633, 639 (1981).  If the proponent makes that showing, "the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims."  Mazza, 666 F.3d at 590 (internal quotation marks omitted).

"California law may only be used on a classwide basis if the interests of the other states are not found to outweigh California's interest in having its law applied."  Mazza, 666 F.3d at 590 (internal quotation marks omitted).  The California Supreme Court has set forth a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state[,] and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

McCann v. Foster Wheeler LLC, 48 Cal.4th 68, 81-82 (2010) (internal quotation marks omitted).

B.   <u>Analysis</u>.

Defendant is incorporated in the state of California and has its headquarters in the state. (<u>See</u> Dkt. 45, FAC at ¶ 15).   As a result, TMS "transacts a substantial amount of business throughout [California], including but not limited to, the promotion, marketing, distribution, and sale of Tacoma vehicles."   (<u>Id.</u> at ¶ 7).   Thus, "California has a constitutionally sufficient aggregation of contacts to the claims of each putative class member[.]" <u>Mazza</u>, 666 F.3d at 590 (finding contacts sufficient because "Honda's corporate headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members are located in California."); <u>see also</u> <u>Wolph v. Acer America Corp.</u>, 272 F.R.D. 477, 485 (N.D. Cal. 2011) ("By contrast, where Acer is incorporated in California and has its principal place of business and headquarters in San Jose, California, consumers who purchase an Acer notebook would have some expectation that California law would apply to any claims arising from alleged defects such that the application of California law would not be arbitrary or unfair.").   Having determined that application of California law would be constitutional in this case, the burden shifts to defendant to show that application of California law is not appropriate due to conflicts with the laws of other states.   See <u>Mazza</u>, 666 F.3d at 590.

1.   **Conflict of Laws.**

Defendant argues that "[t]here are many conflicts between the CLRA, UCL, and the alternative consumer protection act claims alleged in the FAC."  (<u>See</u> Dkt. 46, Motion at 7).   The court agrees.[1]

---

[1] Plaintiffs argue that "[t]his is a fact intensive analysis that must be supported by evidence." (<u>See</u> Dkt.48, Opposition to Motion to Dismiss First Amended Complaint ("Opp.") at 7).   Plaintiffs cite cases that have been decided at later stages of litigation, but "the principle articulated in <u>Mazza</u> applies generally and is instructive even when addressing a motion to dismiss." <u>Frezza v. Google Inc.</u>, 2013 WL 1736788, *6 (N.D. Cal. 2013).   Indeed, many courts in California have applied <u>Mazza</u> at the motion to dismiss stage.   <u>See</u>, <u>e.g.</u>, <u>Granfield v. NVIDIA Corp.</u>, 2012 WL 2847575, *3 (N.D. Cal. 2012) (dismissing California state law claims because the transactions at issue took place in Massachusetts); <u>Waller v. Hewlett-Packard Co.</u>, 2012 WL 1987397, *1 (S.D. Cal. 2012) (denying motion for leave to amend complaint to allege a nationwide class because "under <u>Mazza</u> . . ., non-California residents can't avail themselves of California's consumer protection laws."); <u>Horvath v. LG Electronics Mobilecomm U.S.A., Inc.</u>, 2012 WL 2861160, *3 (S.D. Cal. 2012) (upon a motion to dismiss, finding that the  court would apply California consumer

1   Plaintiffs contend that "[w]hen a defendant, like Toyota, is headquartered in California, has

2   its operations there, and frequently imposes a California choice of law provision on consumers in

3   all fifty states, and a significant portion of the Class members reside in California, application of

4   California law to a nationwide class is appropriate." (Dkt. 48, Opp. at 6-7) (footnote omitted).  But

5   this is what the Mazza court found not to be the case.  See Mazza, 666 F.3d at 590 (finding the

6   application of California law inappropriate despite the fact that "Honda's corporate headquarters,

7   the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth

8   of the proposed class members are located in California.").  Plaintiffs cite a number of district court

9   cases in support of their position (see Dkt. 48, Opp. at 7), but they all predate Mazza.[2]  Thus, the

10  _____

11  protection law only to the California plaintiff).  The issues raised by the Mazza analysis are legal
    in nature, and the court deems it appropriate to resolve them now.  Plaintiffs' suggestion that the
12  court can entertain this question later and create sub-classes if appropriate, (see Dkt. 48, Opp.
    at 7 n. 4), ignores the fact that there is no named plaintiff who purchased a Tacoma in California.
13  (See, generally, Dkt. 45, FAC).  If California law cannot be applied to any of the named plaintiffs,
    then they cannot adequately represent a class – or subclass – pursuing California claims.
14

15  [2] Plaintiffs cite Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 589 (C.D. Cal. 2008),
    which certified a nationwide California-law class where defendant had California operations and
16  a significant number of class members resided in California.  (See Dkt. 48, Opp. at 7).  In
    Parkinson, however, the court applied California law because plaintiffs alleged "that the wrongful
17  acts underlying [the] claims emanated from defendant's California headquarters" and because the
    court found no conflict of laws because California's consumer protection laws are "among the
18  strongest in the country."  258 F.R.D. at 598.  Both reasons appear to conflict with the court's
    holdings in Mazza.  See 666 F.3d at 593 (finding that conduct emanating from headquarters was
19  insufficient, and stating explicitly that "if California law were applied to the entire class, foreign
    states would be impaired in their ability to calibrate liability to foster commerce.").  Plaintiffs also
20  cite Keilholtz v. Lennox Hearth Prods., Inc., 268 F.R.D. 330, 341 (N.D. Cal. 2011), which applied
    California law to a nationwide class where 19% of sales were in California.  (See Dkt. 48, Opp. at
21  7).  Yet the Keilholtz court stated that unnamed class members may "opt out" if they did not want
    to sue under California law, and in its choice of law analysis, it found many conflicts, including
22  those relating to remedies, to be "not material."  268 F.R.D. at 341.  Again, this finding appears
    to be inconsistent with Mazza, which found that "there are also material differences in the
23  remedies given by state laws[,]" 666 F.3d at 591, and if opting out were a solution to this issue,
    then the Ninth Circuit would not have overturned the district court's class certification order.
24  Finally, plaintiffs point to Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 538-39 (C.D. Cal.
    2011), which applied California law to a nationwide class where defendant's headquarters were
25  in California and 30% of the sales occurred in California.  (See Dkt. 48, Opp. at 7).  However, in
    Bruno, the court found that defendants had not met their burden, at least in part, because they
26  provided "no law from any jurisdiction for the Court to consider[.]"  Id. at 539-40.  Thus, even if
    Bruno is still good law after Mazza, it is inapposite, as defendant here has provided specific

court turns to whether defendant has met its burden to demonstrate that there are material differences between California law and the other states' laws at issue in this case.

First, defendant asserts that "California is unique in allowing the UCL to borrow violations of other laws in order to state a claim under the statute's unlawful prong." (Dkt. 46, Motion at 7). In their FAC, plaintiffs allege that their claim under the UCL unlawful prong is based upon a number of violations of the California Civil and Business and Professions Codes, as well as the common law. (See Dkt. 45, FAC at ¶ 83). Yet "[t]he consumer protection acts in the states in which the vehicles were purchased," defendant argues, "do not provide for borrowing California law." (See Dkt. 46, Motion at 7-8).

While it is true that Florida, Maryland, Ohio, New York, North Carolina, and Louisiana consumer protection laws do not provide for borrowing California statutory or common law, they may provide for borrowing their own laws, and the underlying provisions of California law at issue may not conflict with the underlying provisions of the other states. Neither defendant nor plaintiffs address this possibility (see, generally, Dkt. 46, Motion & Dkt. 48, Opp.), and the court declines to sort through all of the laws that could serve as predicates for consumer "unlawful" conduct claims to ascertain whether such laws conflict with their California analogs.[3] Thus, defendant has not met its burden in showing that a conflict exists with respect to California's borrowing from its statutory and common law.

Next, defendant asserts that there is a conflict with respect to "the requirement of reliance for a CLRA and UCL claim, which the Mazza court recognized is not required by New York or Florida law." (Dkt. 46, Motion at 8). Plaintiffs argue that "reliance is not at issue since it is presumed when Toyota's omissions are material." (See Dkt. 48, Opp. at 8). While plaintiffs may

_____

examples of conflicts from specific out-of-state statutes at issue in this case.

[3] For example, Maryland law prohibits "unfair or deceptive trade practices," and defines such practices as including, inter alia, fraud and a violation of 30 other Maryland statutes. See Md. Code Ann. Comm. Law § 13-301(9) & (14)(I-xxx). Florida, on the other hand, prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices[.]" See Fla. Stat. Ann. § 501.204. Rather than defining "unfair" or "unconscionable," the law provides that the state Department of Legal Affairs "may adopt rules which set forth with specificity acts or practices that violate this part[.]" Id. at § 501.205.

be correct that in some class actions, reliance is presumed upon a showing of materiality, see, e.g., Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1022 (9th Cir. 2011) (if "material misrepresentations have been made to the entire class, an inference of reliance arises as to the class"), such a presumption does not apply in UCL causes of action premised on fraudulent conduct – as opposed to those based on unfair or unlawful conduct.  See, e.g., In re Tobacco II Cases, 46 Cal.4th 298, 327 (2009) (holding that in a UCL fraud action, "a plaintiff must plead and prove actual reliance to satisfy the standing requirement").  Here, plaintiffs have raised a fraud-based UCL claim.  (See Dkt. 45, FAC at ¶ 86).  When California requires "named class plaintiffs to demonstrate reliance, while some other states' consumer protection statutes do not[,]" the Ninth Circuit has determined that such differences "are not trivial or wholly immaterial differences."  See Mazza, 666 F.3d at 591.[4]

Finally, even if plaintiffs abandoned their fraud-based UCL claim and pursued only unfair and unlawful claims, and if circumstances permitted the presumption of reliance upon a showing of materiality, there would still be a conflict related to reliance with respect to the Maryland purchasers, as Maryland does require reliance in cases seeking damages.  See, e.g., Philip Morris Inc. V. Angeletti, 358 Md. 689, 753 (2000) (noting that elements of misrepresentation claims "incorporate reliance as an element of proof" and concluding that reliance is a "necessary precondition" to awarding damages).[5]  As the Mazza court described, "[i]n cases where a plaintiff

_____

[4] Plaintiffs' attempt to distinguish the reliance discussion in Mazza on the basis that Mazza concerned misrepresentations, whereas this case concerns omissions, (see Dkt. 48, Opp. at 9), is unpersuasive. First, Mazza concerned both omissions and misrepresentations. See 666 F.3d at 585 & 596. Second, the materiality-reliance presumption applies in cases of omissions as well. See Stearns, 655 F.3d at 1022 ("[t]his rule applies to cases regarding omissions or 'failures to disclose' as well.").

[5] Another material difference between California and Maryland is that the California laws at issue do not have a scienter requirement, see Mazza, 666 F.3d at 591, but Maryland's Consumer Protection Act requires scienter – while § 13-301(1) and (3) do not require scienter, § 13-301(9) does.  See Luskin's, Inc. v. Consumer Protection Div., 353 Md. 335, 367 (1999). Although MacLeod does not specifically invoke any one sub-section of the law, his allegation that defendant failed to disclose material facts "with the intent that Plaintiffs MacLeod and the other Maryland class members rely upon these misrepresentations and omissions" makes clear that he seeks relief under § 13-301(9), which prohibits "deception, . . . misrepresentation, . . . or omission

did not rely on an alleged misrepresentation, the reliance requirement will spell the difference between the success and failure of the claim." Mazza, 666 F.3d at 591.  This is a material difference, see id., and the court therefore finds that there is a material difference relevant to the claims and issues in this case between California law and the laws of Florida, New York, and Maryland.

Additionally, as discussed in more detail below, see infra at § III., there are outcome-determinative differences between California law and the laws of Florida, Ohio, and Louisiana regarding statutes of limitations.  In a choice of law analysis, where "the statute of limitations poses a complete bar to liability, the difference is a significant one." Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 544 (C.D. Cal. 2012).  In Keegan, the court noted that if it were to "certify a single UCL/CLRA class to which California law – including the statutes of limitations for UCL and CLRA claims – applies would undoubtedly include New York and Florida plaintiffs whose claims are time-barred under their own states' laws." Id. at 545.  Again, these differences are material, and, as described below, they are directly relevant to the claims and issues in this case.

Mazza also held that "differences in the remedies given by state laws" may be material, see 666 F.3d at 591, and there are significant differences with respect to those at issue in this case. For example, in Frezza, the court found "the difference in available remedy under California law and North Carolina law to be a 'material' difference for the purpose of choice-of-law analysis." 2013 WL 1736788, *6.  "Unlike the UCL, where a plaintiff can only recover restitution and injunctive relief . . ., North Carolina provides mandatory treble damages and permits attorneys' fees upon a finding of willfulness[.]" Id.; see N.C. Gen. Stat. §§ 75-16 (treble damages) & 75-16.1 (attorney's fees).  The CLRA makes damages available, see Cal. Civ. Code § 1780, but explicitly states that "[n]o award of damages may be given . . . if the [defendant] (a) proves that such violation was not intentional and resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error and (b) makes an appropriate correction,

---

of any material fact with the intent that a consumer rely on the same[.]"  Md. Code. Com. Law § 13-101(9).

repair or replacement or other remedy[.]"  Id. at § 1784.  Application of the UCL and CLRA to North Carolina consumers would mean that a liability finding would entitle them to mandatory treble damages under North Carolina law but only compensatory damages – or none at all – if defendant raises a damages defense under the CLRA.  These differences are material.

In short, the court concludes that defendant has met its burden to show that there are material differences between the consumer protection laws of California and those of Florida, Maryland, Ohio, New York, North Carolina, and Louisiana.  "We now move on to the test's second step."  Mazza, 666 F.3d at 591.

### 2.   **Interests of Foreign Jurisdictions.**

If there is a difference in the law of various jurisdictions with regard to the particular issue in question, the next step involves "determining whether a 'true conflict' exists by determining whether both states have a legitimate interest in applying their own law to the case at hand." McCann, 48 Cal.4th at 81-82. Defendant concedes that "California has an interest because TMS's headquarters is located here[.]"  (See Dkt. 46, Motion at 9).  The Mazza court also recognized that "California has an interest in regulating those who do business within its state boundaries, and foreign companies located there[.]"  666 F.3d at 594.  Nonetheless, defendant argues that here, as in Mazza, "California's interest in applying its law to residents of foreign states is attenuated." (See Dkt. 46, Motion at 9), quoting Mazza, 666 F.3d at 594.  And, it asserts, the court must consider the paramount interests of the states of purchase to "calibrate liability to foster commerce" as they see fit.  (Id.), quoting Mazza, 666 F.3d at 593.

There is no question that each of the states of purchase (here, Florida, Maryland, Ohio, New York, North Carolina, and Louisiana) "may make its own reasoned judgment about what conduct is permitted or proscribed within its borders."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422, 123 S.Ct. 1513, 1523 (2003).  Because the facts of Mazza are so analogous, it establishes that here, too, each of the states of purchase has an important interest "in setting the appropriate level of liability for companies conducting business within its territory."  666 F.3d 592.  Thus, "[g]etting the optimal balance between protecting consumers and attracting foreign businesses, with resulting increase in commerce and jobs, is not so much a policy decision

committed to [federal courts] as it is a decision properly to be made by the legislatures and courts of each state." Id. Just as these interests were "squarely implicated" in Mazza, they are squarely implicated here.

### 3. **Which State Interest is Most Impaired.**

Finally, the third step of the choice of law test "recognizes the importance of our most basic concepts of federalism, emphasizing the [] 'appropriate scope of conflicting state policies,' not evaluating their underlying wisdom." Mazza, 666 F.3d at 593, quoting McCann, 48 Cal.4th at 97. In Mazza, the Ninth Circuit found that in certifying a nationwide class pursuing California claims, the district court "did not adequately recognize that each foreign state has an interest in applying its law to transactions within its borders," and in so doing, it "elevated all states' interests in consumer protection to a superordinate level, while ignoring or giving too little attention to each state's interest in promoting business." Id. The Ninth Circuit then balanced California's interests in the case at hand with those of the different states of purchase and, finding that "California's interest in applying its law to residents of foreign states attenuated," ultimately concluded that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." Id. at 593-94. While the California choice of law analysis must be tailored to the specific facts and circumstances of each case, Mazza is applicable here because it is so similar, i.e., it involves claims of misrepresentations and omissions allegedly made by a California defendant regarding vehicles purchased nationwide. The court therefore finds that applying California consumer protection law to the claims of purchasers in different states would be inappropriate in this case. And, because there is no California plaintiff, the CLRA and UCL claims are dismissed. See Frezza, 2013 WL 1736788, *7 ("Applying California's choice-of-law rules to the facts of this case, the court concludes that the North Carolina plaintiffs' consumer protection claims should be governed by North Carolina consumer protection laws. The court therefore dismisses plaintiffs' UCL claims").

II.   COUNTS IV-IX: MISREPRESENTATION CLAIMS.

Defendant argues that the court should dismiss plaintiffs' claims that are based upon

allegations of misrepresentation.[6]  (See Dkt. 46, Motion at 10-12).  Specifically, defendant asserts the following:

> In their initial Complaint, Plaintiffs alleged that TMS misrepresented in the Tacoma's Owner's Manual that state-of-the-art methods and materials were used to prevent rust corrosion.  TMS moved to dismiss the claims based on a misrepresentation because no Plaintiff alleged that he had read this statement before purchasing his Tacoma and the statements were non-actionable puffing.  In their opposition brief, Plaintiffs contended that they did not premise their consumer protection claims on an alleged misrepresentation.  Yet in the FAC, Plaintiffs again allege that TMS violated consumer protection acts by making the identical misrepresentation alleged in the initial Complaint.

(Id. at 10) (internal citations omitted).  Confronted with the instant Motion, plaintiffs again argue that their claims are not premised on TMS's misrepresentations, and that they "do not allege reliance on the Owner's Manual because this is not a representations case." (Dkt. 48, Opp. at 11). Instead, plaintiffs assert that their "claims are based on Toyota's omissions." (Id.).  They state that their allegations are that Tacomas "lack adequate rust protection, rendering the vehicles unstable and unsafe[,]" and that TMS knew of the "inadequate rust protection leading to excessive rust corrosion but did not inform Plaintiffs about the latent defect."  (See id.).

Since plaintiffs concede that "this is not a representations case" and have not pled reliance on any of defendant's manuals or marketing materials (see, generally, Dkt. 45, FAC), the court strikes all allegations relating to defendant's misrepresentations.[7]  Within Counts IV-IX, those

_____

[6]  Defendant also argues that the misrepresentation claims in Counts I (CLRA) and II (UCL) should be dismissed on the same basis (see Dkt. 46, Motion at 10), but because the court has dismissed those claims, see supra at § I., the court analyzes only counts IV-IX.

[7]  Because plaintiffs' claims are not pled separately by theory (i.e., omission or misrepresentation), the court will not dismiss entire claims on this basis but will instead construe this portion of defendant's Motion as a motion to strike.  See Fed. R. Civ. P. 12(f) (a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter"); see also

allegations include the following:

- Count IV, Florida: "Defendant engaged in unfair methods of competition . . . under Florida law by . . . misrepresenting the quality, reliability, and safety of Subject Tacoma Vehicles" (see Dkt. 45, FAC at ¶ 97);

- Count V, Maryland: "The prohibition on unfair and deceptive trade practices under Maryland law extends to any misrepresentation that consumer goods are of a particular quality" (id. at ¶ 101);

- Count VI, Ohio: "The Act enumerates an inclusive list of unfair and deceptive acts and includes the following: representing that the subject of the consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." (Id. at 106); and

- Count VI, Ohio: "Defendant made false misrepresentations that Subject Tacoma Vehicles were free from defects and safe to operate on the roadways." (Id. at ¶ 107).

Defendant states that some plaintiffs, in their state-specific claims, "do not refer to a misrepresentation[,]" but since they "incorporate the earlier allegations, including the allegation alleging a misrepresentation[,]" the court should also dismiss the misrepresentation claims in those counts.  (See Dkt. 46, Motion at 10 n. 8).  The court agrees, and therefore strikes the following allegations, which appear earlier in the FAC:

- "Instead of properly informing customers that the Tacoma Vehicles did not have adequate rust protection, Toyota USA represented and promised that it used 'the most advanced technology available' to ensure the Tacoma Vehicles were, at the least, equipped with reasonably corrosion-resistant parts." (Dkt. 45, FAC at ¶ 28);[8]

- "That statement is untrue and the promise is unfulfilled." (Id. at ¶ 29); and

---

Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010) ("Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question") (citation omitted).

[8]   The court also strikes the remainder of that paragraph in the FAC, which quotes the Tacoma manual.  (See Dkt. 45, FAC at ¶ 28).

• Common questions include "whether Toyota USA misrepresented the standard, quality, and characteristics of the Tacoma Vehicles; [and] whether Toyota USA's misrepresentations regarding the standard, quality, and characteristics of the Tacoma Vehicles were likely to mislead a reasonable consumers. [sic]" (Id. at ¶ 70).

Finally, plaintiffs also allege that defendant has made misrepresentations in the notices related to both LSCs, but considering the FAC as a whole, it is clear that plaintiffs' description of the LSCs is not to support a misrepresentations claim. (See, generally, Dkt. 45, FAC). Instead, the LSC-related allegations go to plaintiffs' claims that despite TMS's admissions that some Tacomas experience rust corrosion and despite its making some repairs, TMS "has failed to adequately inform consumers of the true nature of the defect and continues to offer inadequate remedies." (Id. at ¶ 31). This is the essence of plaintiffs' omissions claim; alleging and ultimately proving the claim does not require allegations of any misrepresentations, particularly when plaintiffs insist that this is not a misrepresentations case. (See Dkt. 48, Opp. at 11). The court therefore strikes the allegations relating to misrepresentations in the letters sent to certain Tacoma owners (which, in any event, no plaintiff is alleged to have received). (See Dkt. 45, FAC at ¶ 42) (With respect to a 2015 letter, alleging that "[a] reasonable person would interpret [the quoted] language to mean that the 2015 [LSC] only applied to vehicles that had been operated in certain areas of cold climate regions. . . . However, the premature and excessive rust corrosion exhibited by Toyota Tacoma vehicles in states throughout the country has little or nothing to do with road salt.").

Under California law, "to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact that defendant was obliged to disclose." Daugherty v. American Honda Motor Co., Inc., 144 Cal.App.4th 824, 835 (2006). Because plaintiffs repeatedly assert that their claims "are not premised on Toyota's misrepresentations" (see Dkt. 48, Opp. at 11; id. ("this is not a representations case")), they may proceed only on the theory that defendant was obligated to disclose the alleged defects. See Daugherty, 144 Cal.App.4th at 835 (If not contrary to a representation, an omission is only actionable if defendant was obligated to disclose it). While the California claims have been dismissed, see supra at § I.,

plaintiffs assert that under each of the alternative state consumer protection theories, the rules are the same: "Toyota had a duty to inform Plaintiffs of the inadequate rust protection on their Tacoma Vehicles and Toyota's failure to do so constitutes a violation of the laws."  (See Dkt. 48, Opp. at 11).  Plaintiffs may proceed on that theory (i.e., a theory of omission), but given that they have repeatedly asserted that they are not asserting claims based upon defendant's representations, allegations related to any alleged misrepresentation are stricken.[9]

III.     COUNTS IV, VI, AND IX: FLORIDA, OHIO, AND LOUISIANA STATUTES OF LIMITATIONS.

Defendant argues that the court should dismiss the claims of plaintiffs Watson, Warner, and Meade because their claims are time-barred under the laws of Florida, Ohio, and Louisiana, respectively.  (See Dkt. 46, Motion at 12-16).  The court considers the laws of each state below.

A.     Florida Statute of Limitations.

In Count IV, Watson alleges that defendant violated FDUTPA.  (See Dkt. 45, FAC at ¶¶ 95-99).  The statute of limitations for this claim is four years.  See Fla. Stat. Ann. § 95.11(3)(f); see also Brown v. Nationscredit Fin. Servs. Corp., 32 So.3d 661, 662 n. 1 (Fla. Dist. Ct. App. 2010) ("The statute of limitations for a FDUTPA claim is four years pursuant to section 95.11(3)(f), Florida Statutes, as it is based upon a statutory liability").

Watson purchased his Tacoma in September 2005 (see Dkt. 45, FAC at ¶ 12), which means that his claim expired in September 2009.  Watson filed the instant action March 24, 2015.  (See Dkt. 1, Complaint).  Watson argues, however, that "[e]quitable tolling is permitted in Florida where defendant has engaged in concealment of the deceptive conduct."  (See Dkt. 48, Opp. at 12).  Watson's statement of Florida law is overbroad and not entirely accurate.  The only tolling exceptions under Florida law are those listed in Fla. Stat. Ann. § 95.051(1), and concealment of

---

[9] Thus, plaintiffs cannot make arguments such as "to the extent Toyota represented anything regarding rust corrosion, which it did, it also has a duty to fully inform consumers."  (See Dkt. 48, Opp. at 11).  Either defendant omitted information from representations to which plaintiffs were exposed, or it did not.  And if it did not, (see id.) ("[p]laintiffs do not allege reliance on the Owner's Manual because this is not a representations case"), plaintiffs cannot use defendant's statements as a basis for their claims.

1  deceptive conduct is not one of them.  See, generally, Fla. Stat. Ann. § 95.051(1).  While state law

2  permits application of the delayed discovery rule for fraud actions, the rule does not apply to

3  FDUTPA claims – even if premised on fraud.[10]  See Marlborough Holdings Grp., Ltd. v. Azimut-

4  Benetti, Spa, Platinum Yacht Collection No. Two, Inc., 505 Fed. App'x 899, 906 (11th Cir. 2013),

5  cert. denied sub nom. Marlborough Holdings Grp., Ltd. V. Azimut-Benetti, SpA, 134 S.Ct. 152

6  (2013), ("The delayed discovery rule, however, was inapplicable to [plaintiff's] FDUTPA claims,

7  as the FDUTPA is a statute and actions under it are 'founded on a statutory liability.'") (citation

8  omitted); see also Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Center, Inc.,

9  2012 WL 630010, *5 (E.D. La. 2012) ("Defendants' allegation that they only discovered Smoothie

10  King's allegedly deceptive behavior after the termination of their franchises would not save their

11  claim, because the Florida Supreme Court has held that the 'delayed discovery' doctrine does not

12  apply to FDUTPA claims"), citing Davis v. Monahan, 832 So.2d 708, 709-10 (Fla. 2002); McKissic

13  v. Country Coach, Inc., 2008 WL 2782678, *8 (M.D. Fla. 2008) ("Because the delayed discovery

14  rule does not apply to the FDUTPA, Plaintiffs were required to make their claim within four years

15  of the purchase date.").  For these reasons, Watson's claim under Florida's consumer protection

16  statute is dismissed.

17      B.    Ohio Statute of Limitations.

18      In Count VI, Warner alleges that defendant violated OCSPA.  (See Dkt. 45, FAC at ¶¶ 105-

19  111).  Under OCSPA, the applicable statute of limitations is "two years after the occurrence of the

20  violation which is the subject of the suit."  See Ohio Rev. Code Ann. § 1345.10.    Warner

21  purchased his Tacoma in March 2010, (see Dkt. 45, FAC at ¶ 55), and the statute of limitations

22  expired on or about March 2012.  See, e.g., In re Whirlpool Corp. Front-Loading Washer Prods.

23  _____

24  [10] Watson cites one case purportedly holding that the delayed discovery action applies to
FDUTPA claims.  (See Dkt. 48, Opp. at 12, citing State Farm Mut. Auto. Ins. Co. v. Kugler, 2011
25  WL 4389915, *13).  That case, however, did not specifically address the distinction between the
statute of limitations for statutory and other causes of action under Florida law.  See, generally,
26  id. at *13.  Further, State Farm relied on Hearndon v. Graham, 767 So.2d 1179 (Fla. 2000), which
applied the delayed discovery rule but only did so in the case of childhood sexual abuse; the
27  Florida Supreme Court emphasized that its holding was "limited to the specific facts in that case[.]"
28  Davis, 832 So.2d at 712.

Liab. Litig., 45 F.Supp.3d 706, 711 (N.D. Ohio 2014) (holding that statute of limitations began to run at the time of sale).  As noted earlier, Warner filed in the instant action on March 24, 2015. (See Dkt. 1, Complaint).

Warner argues that his claim should be tolled, but he provides no support for tolling under relevant Ohio law.  (See, generally, Dkt. 48, Opp.).  Further, the law is clear that no tolling doctrine is available under the circumstances here.  See, e.g., In re Whirlpool Corp.., 45 F.Supp.3d at 711 (statute of limitations began to run at the time of sale where the OCSPA allegations were predicated on the sale of a defective product and allegations that defendant misrepresented or omitted material information); Sproles v. Simpson Fence Co., 99 Ohio App.3d 72, 81 (1994) ("While the provisions of the OCSPA covering actions for rescission of consumer contracts are governed by the discovery exception to the two-year statute of limitations, claims for damages, such as appellant's claim in this case, asserted under the OCSPA, do not fall within the discovery exception; [the law] sets forth an absolute two-year statute of limitations for such damage actions.").

Warner next argues that to the extent his "Ohio consumer protection claim is not tolled, the statute of limitations only applies to claims for damages[,]" and he "can still pursue injunctive relief." (See Dkt. 48, Opp. at 13, citing Sproles, 99 Ohio App. at 81).  However, the statute of limitations applies to all actions for violations of OCSPA except those for rescission, in which "revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it[.]" Ohio Rev. Code Ann. §1345.09(C)(1). The provisions that permit a damages action (§1345.09(B)) and an action for declaratory or injunctive relief (§1345.09(D)) do not contain their own time limitations and instead are subject to the more general limitation provision, which provides that an action under § 1345.09 "may not be brought more than two years after the occurrence of the violation[.]" Id. at § 1345.09(C).  Given the statutory framework, it is clear that the Sproles court did not distinguish between actions for damages (subject to the two-year limitation) and actions for rescission (subject to the discovery exception), see Sproles, 99 Ohio App.3d at 81, because only actions for damages are subject to the two-year limit.  Instead, the converse is true; only actions for rescission are governed by the

discovery exception.  See Ohio Rev. Code Ann. §1345.09(C)(1); see also Quetot v. M&M Homes, Inc., 2013 WL 793219, *3 (Ohio App. 2013) (finding that §1345.09(C)(1) "limits the discovery rule to claims for rescission or revocation of the consumer transaction.").  Since Warner is not seeking rescission, (see, generally, Dkt. 45, FAC), the delayed discovery rule does not apply, and his claims are time-barred.[11]

     C.    Louisiana Statute of Limitations.

In Count IX, Meade alleges a violation of LUTPA (see Dkt. 45, FAC at ¶¶ 125-30), which contains a one-year statue of limitations for private rights of action that "run[s] from the time of the transaction or act which gave rise to this right of action."  La. Rev. Stat. Ann. § 51:1409(E)).  Meade acquired his Tacoma in July 2010, (see Dkt. 45, FAC at ¶ 53), and thus his statute of limitations ran on or about July 2011.  The instant lawsuit was filed on March 24, 2015.  (See Dkt. 1, Complaint).

Defendant argues that Meade's claim is time-barred.  (See Dkt. 46, Motion at 15-16).  Meade offered no argument in opposition, and defendant argues that dismissal on that basis alone is appropriate.  (See Dkt. 50, Defendant's Reply Memorandum in Support of Motion to Dismiss ("Reply") at 10), citing, inter alia, Silva v. U.S. Bancorp, 2011 WL 7096576, *3 (C.D. Cal. 2011) ("the Court finds that Plaintiff concedes his . . . claim should be dismissed by failing to address Defendants' arguments in his Opposition") (citations omitted)).

Even if Meade did oppose defendant's argument, the court would dismiss the claim, as Louisiana law does not recognize any tolling doctrine that would save it.  In Louisiana, tolling arguments such as fraudulent concealment or delayed discovery are made by asserting the equitable doctrine of contra non valentem.  See Wimberly v. Gatch, 635 So.2d 206, 211-12 (La. 1994) (describing the doctrine and the four categories of cases that fall within it).  It is well-settled that "since LUTPA claims are subject to a [peremptive] period, the equitable doctrine of contra non valentem simply does not apply to those claims."  Reese v. ICF Emergency Management

_____

[11] Because this claim is dismissed, the court does not reach defendant's argument that the OCSPA claim is also barred on the ground that the statute prohibits class actions where defendant did not receive prior notice that the conduct was deceptive.  (See Dkt. 46, Motion at 18-20).

Services, Inc., L.L.C., 684 F.Supp.3d 793, 801 (M.D. La. 2010) (emphasis in original); see also Canal Marine Supply, Inc. v. Outboard Marine Corp. of Waukegan, Ill., 522 So.2d 1201, 1203 (La. App. 198) ("the time period set forth in [LUTPA] must be viewed as peremptive.  The special nature of the private right of action under the LUTPA and the serious consequences of a successful action both militate in favor of an absolute, uninterruptible time period.").  Accordingly, the court finds that Meade's LUTPA claim is barred by the applicable statute of limitations.[12]

IV.     COUNT VII: NEW YORK CLAIM BASED ON PRIVATE TRANSACTION.

In Count VII, Franquet claims that defendant violated New York General Business Law § 349 (see Dkt. 45, FAC at ¶¶ 112-20), which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York.  See N.Y. Gen. Bus. Law ("NYGBL") § 349.  Defendant argues that Franquet's claim fails for two reasons: first, because he "does not allege that he saw any TMS representation prior to purchasing his vehicle[;]" and second, because he purchased his Tacoma in a private sale.  (See Dkt. 46, Motion at 16).  While "privity is not required under New York law for a claim under . . . § 349," defendant asserts that the connection between any allegedly misleading acts by TMS and Franquet's vehicle purchase is "too attenuated to meet the causation requirement."  (See id.).

To state a claim under NYGBL § 349, a plaintiff must allege that (1) defendant's deceptive acts were directed at consumers; (2) the acts were misleading in a material way; and (3) the plaintiff has been injured as a result.  See Woods v. Maytag Co., 807 F.Supp.2d 112, 128 (E.D.N.Y. 2011); Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d. Cir. 2000) (per curiam).  "[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) . . . but need only meet the bare-bones notice-pleading requirements of Rule 8(a)."  Woods, 807 F.Supp. 2d at 128, quoting Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).

Defendant does not challenge Franquet's allegations under the first element, that

---

[12] Thus the court does not reach defendant's argument that the LUTPA claim should also be dismissed on the ground that LUTPA bars class actions.  (See Dkt. 46, Motion at 17-18).

defendant's allegedly deceptive acts were directed at consumers.  (See, generally, Dkt. 46, Motion).  In any event, the court is persuaded that plaintiff's allegations satisfy the first prong of the statute by alleging that defendant's nondisclosure of the Tacomas' inadequate rust protection "misle[]d the consuming public[.]"  (See Dkt. 45, FAC at ¶¶ 115-16); see also Tomassini v. FCA U.S. LLC, 2015 WL 3868343, *5 (N.D.N.Y 2015) (In a case alleging that defendant concealed automobile defects, finding that "Plaintiff's allegations clearly satisfy the first prong of the statute by alleging conduct that potentially affected a wide range of consumers."); N. State Autobahn, Inc. v. Progressive Ins. Group Co., 102 A.D.3d 5, 12 (N.Y. App. 2012) ("[C]onduct has been held to be sufficiently consumer-oriented to satisfy the statute where . . . it constituted a standard or routine practice that was consumer-oriented in the sense that it potentially affected similarly situated consumers.") (internal quotation and alteration marks and citations omitted).

        As described above, the second element of an NYGBL § 349 claim is that plaintiff allege that the acts (or omissions) of defendant were misleading in a material way.  See Woods, 807 F.Supp.2d at 128; see also Tomassini, 2015 WL 3868343 at *5 ("[w]hether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances.") (internal quotation marks and citation omitted).  In the case of an omission, "the statute surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation.  The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information."  Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995); see Woods v. Maytag Co., 2010 WL 4314313, *15 (E.D.N.Y. 2010) ("[W]hen a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice.") (citation omitted).  With regard to this element, Franquet alleges that defendant's omissions caused purchasers to "reasonably believ[e]" that the Tacomas "have adequate rust protection when they do not."  (See Dkt. 45, FAC at 116 & 118).  Under the circumstances, the court finds these allegations are sufficient.  Defendant's argument that Franquet's claim fails because he "does not allege that he saw any TMS

representation prior to purchasing his vehicle[,]" (see Dkt. 46, Motion at 16; see also Dkt. 50, Reply at 12 ("he has not alleged exposure to anything from TMS from which information was omitted")) runs counter to New York case law and is unpersuasive.  See, e.g., Tomassini, 2015 WL 3868343 at *8 ("Plaintiff's claim here does not require exposure to a specific affirmative misrepresentation, [thus] the Court finds Defendant's argument unconvincing.").

The third element of a claim under NYGBL is that the plaintiff allege injury as a result of defendant's conduct.  See Woods, 807 F.Supp.2d at 128.  Defendant asserts that Franquet's injury could not have been caused by defendant because he purchased his vehicle in a private sale.  (See Dkt. 46, Motion at 16; see also Dkt. 50, Reply at 12 ("any 'connection' between TMS and Franquet is too attenuated to meet Section 349's causation requirement.")).  In Tomassini, the defendant made the same argument, asserting that plaintiff's claim failed because the plaintiff "purchased the Minivan used from a wholesale dealer and has not identified 'how or where [Defendant] was supposed to disclose the information to him.'"  2015 WL 3868343 at *8.  The court noted, however, that "there is no requirement of privity in N.Y.G.B.L. § 349, and victims of indirect injuries are permitted to sue under the Act."  Id. (Internal quotation and alteration marks omitted), citing In re methyl Tertiary Butyl Ether Prods. Liab. Litig., 175 F.Supp.2d 593, 631 (S.D.N.Y. 2001).  Defendant may argue that the connection is too attenuated to ultimately prove causation, but this is not a question the court can decide upon a motion to dismiss.  Thus, Franquet's allegations that he was injured by defendant's conduct are sufficient, and he need not be a direct purchaser to make such allegations.

V.   COUNT III: DECLARATORY RELIEF.

In Count III of the FAC, plaintiffs seek entry of the following declarations on behalf of the declaratory relief class[13]:

(1) model years 2005-2009 Toyota Tacoma vehicles lack adequate rust corrosion protection and are defective; (2) all persons who purchased model

---

[13]  Plaintiffs define the "declaratory relief class" as "[a]ll persons and entities in the United States who purchased a model year 2005-2009 Toyota Tacoma for personal use and not for resale."  (See Dkt. 45, FAC at ¶ 67).

years 2005-2009 Toyota Tacoma vehicles are to be provided the best practicable notice of the defect, which cost shall be borne by Defendant; and (3) Defendant must establish an inspection, repair, and replacement program and protocol and notify Class members of such program, pursuant to which Defendant, including its authorized representatives, and at no cost to Class members, will inspect, upon request, Class members' Tacoma Vehicles for frame rust corrosion, treat the Tacoma Vehicles that have not exhibited rust corrosion with adequate rust corrosion protection, and to repair or replace the frames on the Tacoma Vehicles that have experienced frame rust corrosion.

(See Dkt. 45, FAC at ¶ 94).  Defendant argues that the court should dismiss the claim "because it is a requested remedy for alleged violations of the state law consumer protection act claims and thus merely duplicates the substantive claims in the case." (Dkt. 46, Motion at 21).  Plaintiffs counter that dismissal is "only appropriate where it is apparent from the complaint that the claim is 'unnecessary' because the relief is sought through other claims." (Dkt. 48, Opp. at 16).  And, they argue, the declaratory relief request is different than the rest of the claims in the case because it seeks a declaration that the Tacomas are defective because they lack adequate rust protection.  (See id. at 16-17).

The Declaratory Judgment Act authorizes district courts to "declare the rights and other legal relations of any interested party seeking such a declaration[.]"  28 U.S.C. § 2201(a). However, the award of declaratory relief under 28 U.S.C. § 2201 is discretionary, see Solenoid Devices, Inc. v. Ledex, Inc., 375 F.2d 444, 445 (9th Cir. 1967), and the court therefore looks to the purpose of the Declaratory Judgment Act when determining whether to entertain a declaratory judgment claim.  See, e.g., Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1555 (9th Cir. 1989) ("The purpose of the Declaratory Judgment Act is to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure – or never.") (internal quotation marks and citation omitted); Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1238, at 411 (3d ed. 2004) ("In adopting the Declaratory Judgment Act, it was Congress' intent to prevent avoidable damages from being

incurred by a person who is not certain of his rights, and to afford that party an early adjudication of his rights without waiting until his adversary sees fit to begin suit, which will usually be after damages have accrued.").  When a declaratory judgment "fail[s] to serve a useful purpose in clarifying the legal relations at issue[,]" courts are within their discretion to dismiss such claims. See Cota v. U.S., 2015 WL 9584400, *2 (9th Cir. 2015), quoting Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1107 (9th Cir. 2011); see also Lenhoff Enterprises, Inc. v. United Talent Agency, Inc., 2015 WL 7008185, *7 ("Here, Plaintiff's request for declaratory relief is duplicative because it seeks to determine the same issues as its other claims, specifically whether Defendants have committed violations of . . . the Sherman Act, and whether Defendants violated the UCL. The Court will necessarily decide those issues if and/or when it addresses Plaintiff's Sherman Act and UCL causes of action and need not also declare that Defendants have violated those laws.").

Here, as stated above, plaintiffs seek a declaration that the Tacomas lack adequate rust corrosion protection and are defective, and they also seek what is essentially an injunctive relief program involving inspection, repair, and replacement of Tacoma frames.  (See Dkt. 45, FAC at ¶ 94).  However, considering the claims that remain in this case (i.e., those under Maryland, New York, and North Carolina law), it is evident that the court will need to decide whether the rust corrosion protection on the Tacomas is adequate.  Under the Maryland cause of action, for example, plaintiff alleges that "Defendant committed unfair and deceptive trade practices in violation of the Maryland Consumer Protection Act by marketing, distributing, and selling Subject Tacoma Vehicles with frames that lacked adequate rust corrosion protection and failing to disclose the material fact that [they] were equipped with defective frames[.]"  (Dkt. 45, FAC at ¶ 102).  The New York cause of action alleges that defendant violated NYGBL by "mislead[ing] the consuming public into believing that their Tacoma Vehicles had adequate rust protection when in fact Defendant knew that was not true."  (Id. at ¶ 115).  Similarly, the North Carolina cause of action alleges that defendant violated North Carolina law "by failing to inform Plaintiff and Class members that the Tacoma Vehicles did not have adequate rust corrosion protection[.]" (Id. at ¶ 123).  Because each of the claims will require the court to evaluate the adequacy of the rust protection on the Tacoma frames, the declaratory relief claim is unnecessary.  See, e.g., Kho v. Wells Fargo

Co., 2012 WL 3240041, *9 (C.D. Cal. 2012) ("In support of his claim for declaratory relief, Plaintiff once again alleges [the substance of his claims].  The Court has already addressed these issues within its discussion of Plaintiff's other claims.  There are no reasons to believe declaratory judgment will resolve any issues aside from those already addressed by the substantive claims. Therefore, the court fails to see how declaratory relief would be necessary or useful."); Akhavein v. Argent Mortg. Co., 2009 WL 2157522 (N.D. Cal. 2009) (where the "relief a plaintiff seeks is entirely commensurate with the relief sought through his other causes of action the declaratory relief claim is duplicative and unnecessary.").[14]  Further, if plaintiffs prevail on their remaining claims, the court will fashion appropriate relief, and plaintiffs may seek the inspection, repair, and replacement program they seek as part of the declaratory relief claim.[15]

Accordingly, plaintiffs' declaratory relief claim is dismissed.  See Brady v. Conseco, Inc., 2009 WL 2356201, at *7 (N.D. Cal. 2009) ("[A] court may decline to hear a claim for declaratory relief if adjudication of these issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties.").

---

[14]  In addition, a claim for declaratory relief fails when it is duplicative of other invalid claims. See Kimball v. Flagstar Bank FSB, 881 F.Supp.2d 1209, 1220 ("because the other causes of action fail to state a claim, Plaintiffs have not demonstrated the requisite 'substantial controversy' for declaratory judgment.") (citation omitted); Karimi v. GMAC Mortgage, 2011 WL 3360017, *5 (N.D. Cal. 2011) ("dismissing for lack of actual controversy a declaratory relief claim that was duplicative of meritless substantive claims).  Thus, the court need not consider declaratory relief in connection with California, Florida, Ohio, and Louisiana causes of action.  See supra at §§ I. & III.

[15] Even if the injunctive portion of plaintiffs' request were not duplicative, the court questions whether seeking notification and replacement/repair program is appropriate in a declaratory judgment claim, given that the statute says the court "may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  In other words, the second and third portions of plaintiffs' declaratory relief request would impose coercive relief (by imposing obligations on defendant), and courts regularly distinguish between suits for declaratory and coercive relief.  See, e.g., Seattle Audubon Soc. v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases . . . involving an actual controversy that has not yet reached a stage at which either party may seek a coercive remedy and in cases where a party who cold sue for coercive relief has not yet done so."); Merced Irr. Dist. v. County of Mariposa, 941 F.Supp.2d 1231, 1264 (E.D. Cal. 2013) (referring to a non-declaratory suit as a "suit for coercive relief").

V.      DISMISSAL WITHOUT LEAVE TO AMEND.

Rule 15 of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (The policy favoring amendment must "be applied with extreme liberality."). However, "[i]t is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802 (1971). This decision is guided by an examination of several factors, including: (1) whether the amendment causes the opposing party undue prejudice; (2) whether the amendment is sought in bad faith; (3) whether the amendment causes undue delay; (4) whether the amendment constitutes an exercise in futility; and (5) whether the plaintiff has previously amended his or her complaint. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 & n.3 (9th Cir. 1987).

Having liberally construed and assumed the truth of the allegations in the FAC, the court is persuaded that plaintiff's claims under the CLRA, UCL, FDUTPA, OCSPA, and LUTPA cannot be saved through amendment. See Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely."). Given that the subject claims fail for purely legal reasons (i.e., conflicts between California laws and the laws of other states, and the inapplicability of tolling doctrines to the statutes of limitations under Florida, Ohio, and Louisiana law), the court believes it would be futile to afford plaintiffs a third opportunity to state a claim under those theories. See Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (internal quotation marks omitted). It would also be futile to permit plaintiffs another opportunity to state claims with respect to any misrepresentation claims; plaintiffs repeatedly assert that "this is not a representations case[,]" (see Dkt. 48, Opp. at 11), and to the extent that they wanted to make it one, they had the opportunity to do so after defendant's first motion to dismiss. (See Dkt. 17, Motion to Dismiss Plaintiff's [Original] Complaint).

**This Order is not intended for publication.  Nor is it intended to be included in or**

submitted to any online service such as Westlaw or Lexis.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint **(Document No. 45)** is **granted in part** and **denied in part**, as follows:

1.      Counts I and II, for violation of the California Consumers Legal Remedies Act and California's Unfair Competition law, are **dismissed with prejudice**.

2.      Count III, for declaratory relief, is **dismissed with prejudice.**

3.      Count IV, for violation of the Florida Deceptive and Unfair Trade Practice Act, is **dismissed with prejudice**.

4.      Count VI, for violation of the Ohio Consumer Sales Practices Act, is **dismissed with prejudice.**

5.      Count IX, for violation of Louisiana's Unfair Trade Practices and Consumer Protection Law, is **dismissed with prejudice.**

6.      To the extent that the remaining counts (Count V, Maryland Consumer Protection Act; Count VII, New York Deceptive Practices Act; and Count VII, North Carolina Unfair Deceptive Trade Practices Act) contain allegations based upon defendant's alleged misrepresentations, such allegations are **stricken**.  Plaintiffs MacLeod, Franquet, and Fuller may pursue their claims on the basis of defendant's omissions.

7.  Defendant shall file an Answer to the First Amended Complaint no later than **March 22, 2016**.  The Answer shall respond only to the remaining allegations set forth in the counts listed in paragraph no. 6 above.

Dated this 8th day of March, 2016.


                                                                            /s/
                                                                 Fernando M. Olguin
                                                                 United States District Judge