1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  THOMAS J. O'REARDON, II (247952)
   PAULA R. BROWN (254142)
3  701 B Street, Suite 1700
   San Diego, CA  92101
4  Tel: 619/338-1100
   619/338-1101 (fax)
5  tblood@bholaw.com
   toreardon@bholaw.com
6  pbrown@bholaw.com

7  BARNOW AND ASSOCIATES, P.C.
   BEN BARNOW (*pro hac vice*)
8  ERICH P. SCHORK (*pro hac vice*)
   1 North LaSalle Street, Suite 4600
9  Chicago, IL  60602
   Tel: 312/621-2000
10 312/641-5504 (fax)
   b.barnow@barnowlaw.com
11 e.schork@barnowlaw.com

12 Class Counsel

13 [Additional Counsel Appear on Signature Page]

14              **UNITED STATES DISTRICT COURT**

15         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17 BRIAN WARNER, KENNETH MACLEOD, MICHAEL MEADE, 18 MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET, 19 individually and on behalf of all others similarly situated, 20                Plaintiffs, 21          v. 22 TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, 23                Defendant. 24 | Case No. 2:15-cv-02171-FMO-(FFMx) **CLASS ACTION** **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS** Date:        April 27, 2017 Time:        10:00 a.m. USDJ:      Fernando M. Olguin Ctrm:      6D, 6th Floor – 1st Street USMJ:     Frederick F. Mumm Ctrm:      E, 9th Floor – Spring JURY TRIAL DEMANDED Complaint Filed: March 24, 2015 |

25
26
27
28

*(left margin, vertical)* BLOOD HURST & O'REARDON, LLP

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................... 1

II.    HISTORY OF THE LITIGATION ........................................................ 1

     A.     The Action ................................................................................. 2

     B.     Settlement Negotiations ......................................................... 4

III.    TERMS OF THE SETTLEMENT ......................................................... 5

IV.    THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES ........................................................................... 7

     A.     Plaintiffs' Counsel Are Entitled to Fees .............................. 7

     B.     The Fee Amount Sought Is Reasonable ............................... 8

           1.    The Requested Fee Is Reasonable Under the Percentage of Fund Approach .................................. 9

           2.    Plaintiffs' Counsel Achieved an Excellent Result for the Class ................................................... 10

           3.    Plaintiffs' Counsel Assumed Significant Risks in This Very Complex Litigation .............................. 11

           4.    Counsel Provided High-Quality Work ................. 13

           5.    Plaintiffs' Counsel Took the Case on a Contingency Basis ............................................... 13

           6.    No Class Members Have Objected to the Requested Fees ................................................... 14

     C.     The Requested Fee Is Reasonable Under a Lodestar/Multiplier Crosscheck ........................................ 14

           1.    The Hourly Rates Are Reasonable ....................... 15

           2.    The Hours Expended Are Reasonable .................. 18

           3.    The Modest Multiplier Confirms the Reasonableness of the Requested Fee ................ 19

V.     PLAINTIFFS' COUNSEL ARE ENTITLED TO REIMBURSEMENT OF LITIGATION EXPENSEs .............................. 20

VI.    THE PLAINTIFF SERVICE AWARDS SHOULD BE APPROVED ......................................................................................... 22

VII.   CONCLUSION .................................................................................... 24

BLOOD HURST & O'REARDON, LLP

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Altamirano v. Shaw Indus.*,
5
  No. 13-cv-00939, 2016 U.S. Dist. LEXIS 44056
6
  (N.D. Cal. Mar. 31, 2016) ................................................................... 8

7

*Am. Honda Motor Co., Inc. v. Super. Ct.*,
  199 Cal. App. 4th 1367 (2011) ......................................................... 12

8

*In re Animation Workers Antitrust Litig.*,
9
  No. 14-cv-04062, 2016 U.S. Dist. LEXIS 156720
10
  (N.D. Cal. Nov. 11, 2016) ................................................................ 16

11

*Bell v. Farmers Ins. Exch.*,
12
  115 Cal. App. 4th 715 (2004) ........................................................... 10

13

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................... 14, 15

14

*Boeing Co. v. Van Gemert*,
15
  444 U.S. 472 (1980) ......................................................................... 10

16

*Buccellato v. AT&T Operations, Inc.*,
17
  No. 10-cv-00463, 2011 U.S. Dist. LEXIS 85699
18
  (N.D. Cal. June 30, 2011) ................................................................. 20

19

*Cellphone Termination Fee Cases*,
  186 Cal. App. 4th 1380 (2010) ......................................................... 22

20

*Chambers v. Whirlpool Corp.*,
21
  No. 11-cv-01733, 2016 U.S. Dist. LEXIS 140839
22
  (C.D. Cal. Oct. 11, 2016) ........................................................... 17, 20

23

*Cholakyan v. Mercedes-Benz USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ..................................................... 12

24

*Corder v. Ford Motor Co.*,
25
  283 F.R.D. 337 (W.D. Ky. 2012) ..................................................... 12

26

*Cotchett, Pitre & McCarthy v. Siller*,
27
  520 B.R. 796 (E.D. Cal. 2014) ......................................................... 13

28

BLOOD HURST & O'REARDON, LLP

ii      Case No. 2:15-cv-02171 FMO (FFMx)

MEMO ISO PLTFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

*Daigle v. Ford Motor Co.*,
No. 09-cv-03214, 2012 U.S. Dist. LEXIS 106172
(D. Minn. July 31, 2012) ...................................................................... 12

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ............................................................................ 12

*Dennis v. Kellogg Co.*,
No. 09-cv-01786, 2013 U.S. Dist. LEXIS 163118
(S.D. Cal. Nov. 14, 2013) .............................................................. 17, 23

*Edwards v. Ford Motor Co.*,
No. 11-cv-01058, 2012 U.S. Dist. LEXIS 81330
(C.D. Cal. June 12, 2012) .................................................................... 12

*Feminist Women's Health Ctr. v. Blythe*,
32 Cal. App. 4th 1641 (1995) ............................................................. 11

*Ferland v. Conrad Credit Corp.*,
244 F.3d 1145 (9th Cir. 2001) ............................................................ 15

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
No. 03-cv-04558, 2012 U.S. Dist. LEXIS 13887
(D.N.J. Feb. 6, 2012) .......................................................................... 12

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. 08-cv-01365, 2010 U.S. Dist. LEXIS 49477
(N.D. Cal. Apr. 22, 2010) .................................................................... 23

*Graciano v. Robinson Ford Sales, Inc.*,
144 Cal. App. 4th 140 (2006) ........................................................... 7, 8

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .............................................................. 9

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011) ............................................ 7, 17, 21

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................ 10

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555
(C.D. Cal. June 10, 2005) .................................................................... 14

BLOOD HURST & O'REARDON, LLP

iii

Case No. 2:15-cv-02171 FMO (FFMx)

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

00117455

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Heritage Pac. Fin., LLC v. Monroy*,
215 Cal. App. 4th 972 (2013) ........................................................................... 11

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................ 21

*in Whitehead v. Colvin*,
No. 15-cv-05143, 2016 U.S. Dist. LEXIS 51085
(W.D. Wash. Apr. 14, 2016) ............................................................................ 11

*Johnson v. Gen. Mills, Inc.*,
No. 10-cv-00061, 2013 U.S. Dist. LEXIS 90338
(C.D. Cal. June 17, 2013) ................................................................................. 17

*Johnston v. Comerica Mortg. Corp.*,
83 F.3d 241 (8th Cir. 1996) ................................................................................ 8

*Keith v. Volpe*,
501 F. Supp. 403 (C.D. Cal. 1980) .................................................................. 20

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ....................................................................... 15, 19

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ...................................................................... 13, 14, 15

*Laffitte v. Robert Half Int'l, Inc.*,
1 Cal. 5th 480 (2016) ........................................................................ 9, 10, 14, 19

*Lealao v. Beneficial Cal., Inc.*,
82 Cal. App. 4th 19 (2000) ....................................................................... 15, 19

*Makaeff v. Trump Univ., LLC*,
No. 10-cv-00940, 2015 U.S. Dist. LEXIS 46749
(S.D. Cal. Apr. 9, 2015) ................................................................................... 17

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ............................................................................ 12

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ............................................................................ 10

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................ 21

Case No. 2:15-cv-02171 FMO (FFMx)
MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

00117455

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................... 23

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ................................................... 14, 15, 19

*In re Nucoa Real Margarine Litig.*,
   No. 10-cv-00927, 2012 U.S. Dist. LEXIS 189901
   (C.D. Cal. June 12, 2012) .............................................................. 7, 8

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................... 21

*Parker v. Los Angeles*,
   44 Cal. App. 3d 556 (1974) ............................................................. 10

*Pelletz v. Weyerhaeuser Co.*,
   592 F. Supp. 2d 1322 (W.D. Wash. 2009) ....................................... 23

*People Who Care v. Rockford Bd. of Educ.*,
   90 F.3d 1307 (7th Cir. 1996) .......................................................... 16

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ........................................................ 10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................... 22

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) .................................................................... 8, 21

*Serrano v. Unruh*,
   32 Cal. 3d 621 (1982) .............................................................. 15, 18

*Shames v. Hertz Corp.*,
   No. 07-cv-02174, 2012 U.S. Dist. LEXIS 158577
   (S.D. Cal. Nov. 5, 2012) ................................................................. 17

*Shirrod v. Dir., OWCP*,
   809 F.3d 1082 (9th Cir. 2015) ........................................................ 15

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (1990) ................................................................. 9, 10

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
   MDL No. 11-2258, No. 11-cv-02119 (S.D. Cal. May 4, 2015) ...................... 17

BLOOD HURST & O'REARDON, LLP

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ............................................................................. 9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................ 21

*Steiner v. Am. Broad. Co., Inc.*,
   248 Fed. Appx. 780 (9th Cir. 2007) ................................................................. 20

*Sternwest Corp. v. Ash*,
   183 Cal. App. 3d 74 (1986) ............................................................................... 20

*Syers Props. III v. Rankin*,
   226 Cal. App. 4th 691 (2014) ............................................................................ 15

*In re Toys "R" Us-Del., Inc. Fair & Accurate
   Credit Transactions Act Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ..................................................................... 23

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ............................................................................ 16

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) .................................................................. 22

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ..................................................................... 10

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................ 10, 19, 20

*Webb v. Bd. of Educ.*,
   471 U.S. 234 (1985) .......................................................................................... 18

*Wershba v. Apple Comput., Inc.*,
   91 Cal. App. 4th 224 (2001) ................................................................. 9, 16, 20

*Williams v. Costco Wholesale Corp.*,
   No. 02-cv-02003, 2010 U.S. Dist. LEXIS 19674
   (S.D. Cal. Mar. 4, 2010) .................................................................................. 23

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) .......................................................................... 10

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 2:15-cv-02171 FMO (FFMx)
MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

00117455

*Wilson v. Airborne, Inc.*,
No. 07-cv-00770, 2008 U.S. Dist. LEXIS 110411
(C.D. Cal. Aug. 13, 2008) ...................................................................22

**Statutes**

Cal. Civ. Code §1780(e) ...........................................................................7

**Other Sources**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
§14:6 (4th ed. 2002) .........................................................................20

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
§11:38 (4th ed. 2008) .......................................................................22

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

00117455

Case No. 2:15-cv-02171 FMO (FFMx)
MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

1   Plaintiffs Brian Warner, Ryan Burns, Kenneth Macleod, Michael Meade,
2   Michael Watson, James Fuller, James Good, and Dale Franquet ("Plaintiffs" or
3   "Class Representatives"), by and through Class Counsel, respectfully submit this
4   memorandum in support of their motion for an award of attorneys' fees and
5   expenses and plaintiff service awards.[1]

6   **I.      INTRODUCTION**

7   Plaintiffs' Counsel obtained an outstanding result for Class Members. The
8   Class includes approximately 1.5 million vehicles and provides about $3.4
9   billion-worth of benefits to the Class, including frame inspections and free frame
10  replacements, application of corrosion-resistant compounds to the frames, free
11  loaner vehicles, and 100% reimbursements to Class members who already paid
12  to have their frames replaced.

13  Plaintiffs seek an award of attorneys' fees in the amount of $9.75 million,
14  out-of-pocket expenses of $117,500, and a $2,500 service award for each Class
15  Representative. The requested fee is very modest relative to the Settlement,
16  representing less than 0.3% of the value of the Settlement and a multiplier of
17  2.92 on just Class Counsel's lodestar. The $9.75 million fee award is extremely
18  reasonable given the tremendous result obtained for the Class and the efforts
19  taken by Counsel to obtain that result. Likewise, a service award of $2,500 to
20  each Class Representative is reasonable given the time and effort they put into
21  the Action.

22  **II.     HISTORY OF THE LITIGATION**

23  The Parties' negotiations regarding fees, expenses and service awards
24  were conducted only after agreement was reached on all of the other material
25  terms of the Settlement. The Settlement itself was reached after over two years of
26  litigation in two district courts, extensive investigation, discovery and

27
28  ---
    [1]  All capitalized terms shall have the same meanings set forth in the November 8, 2016 Settlement Agreement, filed November 9, 2016. ECF No. 87.

BLOOD HURST & O'REARDON, LLP

1          Case No. 2:15-cv-02171 FMO (FFMx)

MEMO ISO PLTFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

consultation with experts, and over seven months of negotiations and with the assistance of Special Master Patrick A. Juneau.[2]

### A.    The Action

This Action and the Related Action, *Burns v. Toyota Motor Sales, U.S.A., Inc.*, No. 14-cv-02208 (W.D. Ark.) (together, the "Litigation"), are both class actions against Toyota, one of the largest car companies in the world with a history of vigorously defending class action cases brought against it. Blood Prelim. Decl., ¶3. The Litigation concerns the structural integrity of the frames of model year 2005 to 2010 Tacomas, 2007 to 2008 Tundras and 2005 to 2008 Sequoias (the "Subject Vehicles"). A vehicle's frame is critical to its safe and stable operation. A vehicle with a compromised frame is unsafe to drive. Plaintiffs and Class Members who purchased Subject Vehicles expected them to be reasonably protected from premature and excessive rust corrosion, and Toyota represented the Subject Vehicles were of "the finest quality vehicle construction" and were made with the "most advanced technology available [to] prevent corrosion." Second Amended Complaint, ECF No. 86 ("SAC"), ¶¶27, 177.

Plaintiffs allege that, contrary to this promise, the frames on the Subject Vehicles were not properly treated during manufacture, resulting in the possibility that a Subject Vehicle's frame would suffer premature and extensive rust corrosion that would compromise its structural integrity, safety, stability, and crash-worthiness. *Id.* at ¶¶1-3, 17-26; Blood Prelim. Decl., ¶10. Toyota was aware the Subject Vehicles lacked adequate rust protection as evidenced by, among other things, the Limited Service Campaigns ("LSC") it implemented over the years. However, Toyota's LSCs were flawed and far too limited. SAC, at ¶¶4-5, 27-62; Blood Prelim. Decl., ¶¶12, 14-15, 28.

---

[2]    These efforts are detailed in the Declaration of Timothy G. Blood in Support of Joint Motion for Preliminary Approval of Class Action Settlement, ECF No. 88-2 ("Blood Prelim. Decl.").

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    On October 3, 2014, Plaintiff Ryan Burns filed a class action lawsuit

2 against Toyota after the frame on his 2005 Tacoma rusted through, resulting in

3 the engine dropping 2 to 3 inches and rendering the vehicle unstable and unsafe

4 to drive. *Burns* ECF No. 1; Blood Prelim. Decl., ¶11. Burns alleged claims

5 against Toyota under the Arkansas Deceptive Trade Practice Act, for breach of

6 express and implied warranty, unjust enrichment and declaratory relief. *Burns*

7 ECF No. 1. Toyota moved to dismiss Burns's complaint and, after full briefing

8 and consideration, the Arkansas Court upheld the majority of Burns's claims,

9 dismissing only the warranty claims. *Burns* ECF Nos. 11-12, 21; Blood Prelim.

10 Decl., ¶¶16-18.

11    Meanwhile, on March 24, 2015, Plaintiffs who purchased or leased

12 Toyotas and experienced rust corrosion issues on their Subject Vehicles' frames

13 filed a class action against Toyota on behalf of a nationwide class for violations

14 of California consumer protection laws, declaratory relief, and breaches of

15 express and implied warranties, and alternatively, on behalf of state classes for

16 violations of consumer protection laws in Florida, Louisiana, Maryland, New

17 York, North Carolina, Ohio, Pennsylvania, South Carolina, and Texas. ECF

18 No. 1. On June 5, 2015, the Court entered an Order granting Toyota's motion to

19 dismiss with leave to amend, and on June 19, 2015, Plaintiffs filed an Amended

20 Class Action Complaint, asserting consumer protection claims under California,

21 Florida, Maryland, Ohio, New York, North Carolina, and Louisiana law and for

22 declaratory relief. ECF Nos. 38, 45. Toyota again moved to dismiss the

23 complaint. ECF No. 46. On March 8, 2016, the Court entered an Order granting

24 in part and denying in part Toyota's motion to dismiss, upholding the Maryland,

25 New York, and North Carolina consumer protection act claims based on

26 Toyota's alleged omissions. ECF No. 61; Blood Prelim. Decl., ¶¶19-27.

27 ///

28 ///

Toyota aggressively defended these lawsuits. It moved for summary judgment and preemptively moved to deny class certification in the *Burns* case. While these motions were pending, Toyota actively resisted producing discovery. The Arkansas Court denied Toyota's motion for summary judgment, except to the extent Burns's claims sought injunctive relief and denied Toyota's preemptive motion to deny class certification. *Burns* ECF No. 51; Blood Prelim. Decl., ¶¶28-33.

In the meantime, Plaintiffs' Counsel continued to push for more discovery from Toyota and third parties and vigorously conducted an independent investigation. It retained and consulted with three experts (two with expertise in structural vehicle integrity and safety) to evaluate and supplement the discovery produced. Plaintiffs' Counsel spoke with dozens of individuals asserting that the frame on their Toyota vehicle exhibited significant rust corrosion and analyzed evidence of the corrosion. Counsel analyzed the photographs provided by these individuals and obtained and reviewed articles, discussion board threads and government website postings relating to Toyota's frame rust issues and the scope, prevalence and potential causes of those issues. Blood Prelim. Decl., ¶¶3, 13, 26. Although Toyota initially resisted producing discovery, as a result of Plaintiffs' Counsel's efforts, Toyota ultimately produced over 2,500,000 pages of discovery, including over 4,000 pages of documents relating to the root cause of the alleged defect. All of the materials produced were reviewed and analyzed by a dedicated team of lawyers, including a bilingual attorney to review Japanese language documents. Blood Prelim. Decl., ¶¶3, 34-46.

**B.    Settlement Negotiations**

The Settlement was reached after seven months of extensive arm's-length negotiations, which were assisted by Special Master Juneau. Class Counsel participated in nine face-to-face meetings with Toyota's counsel during that period. In between those meetings, Class Counsel negotiated through group

BLOOD HURST & O'REARDON, LLP

00117455

MEMO ISO PLTFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

1  conference calls, individual telephone calls and innumerable emails. *Id*. at ¶¶4,

2  47-56. Negotiations proceeded without regard to weekends, holidays, or time

3  zones. The result of all these mediation sessions, meetings and phone calls is a

4  remarkable Settlement that provides inspections of the frames for every Subject

5  Vehicle and new frames for all found to be sufficiently corroded.

6  **III.  TERMS OF THE SETTLEMENT**

7  This Settlement delivers comprehensive relief to the Settlement Class,

8  which consists of all persons, entities or organizations who, at any time as of the

9  entry of the Preliminary Approval Order, own(ed), purchase(d), or lease(d)

10  Subject Vehicles distributed for sale or lease in any of the fifty States, the

11  District of Columbia, Puerto Rico, and all other United States territories and/or

12  possessions. Settlement Agreement ("SA"), §II.A., ¶8. The Settlement benefits

13  include free frame inspections (unlimited during the period running from 12

14  years from the date the vehicle was first purchased or leased) and free frame

15  replacements, corrosion-resistant compound ("CRC") application in certain

16  states,[3] free loaner vehicles and if the Class member already paid to have their

17  frame replaced, reimbursements of their frame replacement costs. SA, §III.

18  To participate in the Frame Inspection and Replacement Program, a Class

19  Member need only take his or her Subject Vehicle to an authorized Toyota

20  Dealer for a frame inspection. *Id*., §III.A. Toyota will inspect all Subject

21  Vehicles for rust (a cost of about $60 per vehicle) and replace the frame on all

22  Subject Vehicles found to have a 10 mm or larger perforation (a cost of about

23  $15,000 per vehicle). *Id*.; Blood Prelim. Decl., ¶5. Class Members will have the

24

25  _____

[3]  The CRC States have high road salt use and environmental permits to

26  apply CRC are obtainable. The CRC States are Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Kentucky, Massachusetts, Maryland,

27  Maine, Michigan, Minnesota, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Virginia, Vermont, Wisconsin, and West Virginia.

28  SA, §III.A., ¶3 n.1.

MEMO ISO PLTFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

BLOOD HURST & O'REARDON, LLP

later of 12 years from the date the vehicle was first sold or leased, or one year from entry of the Final Order and Final Judgment, to have their frame inspected and replaced. SA, §III.A., ¶1.

If a Class Member disagrees with the results of an inspection, they may take the Subject Vehicle to a second Toyota Dealer for another frame inspection, all subject to Class Counsel's and the Court's oversight. *Id.* at ¶4; Blood Prelim. Decl., ¶7. And if a frame inspection or replacement requires the Subject Vehicle to be kept at the Toyota Dealer, Class Members will receive a free loaner vehicle. SA, §III.A., ¶2; Blood Prelim. Decl., ¶6. The Toyota dealers, who are independent from Toyota, are well-suited and incentivized to aggressively conduct frame inspections and replacements because they receive full payment for the work they perform.

Class Members whose Subject Vehicles are registered in a CRC State may bring their vehicles to a Toyota Dealer to be evaluated for CRC application for a two-year period and Toyota will mail reminders to such Class Members when there are six months left in the CRC application period. SA, §III.A., ¶3; Blood Prelim. Decl., ¶5.

To receive a full reimbursement for frame replacements already paid for by a Class Member, the Class Member need only submit a simple claim form and documents showing the frame was replaced because of rust and the replacement costs he or she paid. SA, §III.B; Blood Prelim. Decl., ¶6.

Class Members may obtain all the benefits of the Settlement without releasing their claims for personal injury, wrongful death, or actual physical property damage arising from an accident involving a Subject Vehicle. *Id.*, §VII.B. Moreover, Class Members' benefits will not be diminished by an award of attorneys' fees and expenses because the amount awarded by the Court will be paid by Toyota separate and apart from consideration paid to Class Members. *Id.*,

BLOOD HURST & O'REARDON, LLP

§VIII.A-B; Blood Prelim. Decl., ¶9.[4]

In short, the Settlement represents a tremendous victory for the Class, achieving the very purpose of filing this lawsuit: frame inspections for all Subject Vehicles and frame replacements for all that need it.

## IV.   THE   COURT   SHOULD   AWARD   THE   REQUESTED ATTORNEYS' FEES

### A.   Plaintiffs' Counsel Are Entitled to Fees

In diversity actions like this one, "the Ninth Circuit applies state law [to] determine[] the right to fees and the method for calculating fees." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011), *aff'd*, 473 Fed. Appx. 716 (9th Cir. 2012), (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)). Here, Plaintiffs' Counsel are entitled to an award of attorneys' fees and expenses under the fee-shifting provision of the CLRA, under the substantial benefit doctrine, and by agreement of the Parties.

Pursuant to the CLRA's mandatory fee-shifting provision, "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Cal. Civ. Code §1780(e); *see also Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 160 (2006). Such an award "'is mandatory, even where the litigation is resolved by a pre-trial settlement agreement.'" *In re Nucoa Real Margarine Litig.*, No. 10-cv-00927, 2012 U.S. Dist. LEXIS 189901, at *84 (C.D. Cal. June 12, 2012) (citation omitted). Since the CLRA does not define the term "prevailing plaintiff," "the court should adopt a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level," such as "the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise."

---

[4]   *See also* the concurrently filed Supplemental Declaration of Timothy G. Blood in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards ("Blood Suppl. Decl."), ¶2.

BLOOD HURST & O'REARDON, LLP

00117455

BLOOD HURST & O'REARDON, LLP

1  *Graciano*, 144 Cal. App. 4th at 150-51; *accord Nucoa*, 2012 U.S. Dist. LEXIS

2  189901, at *84-85. Here, Plaintiffs have fully realized their litigation objectives

3  by obtaining an excellent settlement, which includes free frame inspections and

4  frame replacements, free loaner vehicles and full reimbursements for out-of-

5  pocket frame replacement costs incurred by any Class Member.

6      Additionally, Plaintiffs' Counsel are entitled to fees and expenses because

7  "[u]nder California law, courts have the power to award reasonable attorneys'

8  fees and costs where, as here, a litigant proceeding in a representative capacity

9  secures a 'substantial benefit' for a class of persons." *Altamirano v. Shaw Indus.*,

10  No. 13-cv-00939, 2016 U.S. Dist. LEXIS 44056, at *16 (N.D. Cal. Mar. 31,

11  2016) (citing *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977)). *See also Johnston v.*

12  *Comerica Mortg. Corp.*, 83 F.3d 241, 244, 247 (8th Cir. 1996). The "substantial

13  benefit" may be pecuniary or nonpecuniary in nature. *Serrano*, 20 Cal. 3d at 38.

14      Finally, through the Settlement, the Parties entered into a contract where

15  Toyota agreed to pay Plaintiffs' Counsel's attorneys' fees and expenses in the

16  amounts awarded by the Court of up to $9.75 million for fees and up to $150,000

17  for costs and expenses. SA, §VIII.B.

18  ### B.    The Fee Amount Sought Is Reasonable

19      Plaintiffs seek an award of attorneys' fees of $9.75 million, representing a

20  multiplier of approximately 2.92 to Class Counsel's lodestar of $3,348,823.50

21  (with an even greater lodestar when the other Plaintiffs' Counsel's time is

22  included) and which is less than 0.3% of the estimated value of the benefits to

23  Class Members under the Settlement.[5] Blood Suppl. Decl., ¶¶3, 11.

24

25  [5]    The cost of the frame inspections is approximately $90 million ($60 per

26  inspection of each of the 1.5 million vehicles). SA, §III.A. The cost of the frame
   replacements is around $3.375 billion ($15,000 per replacement of 225,000

27  vehicles), assuming the same rate of replacement following inspection from
   limited service campaigns. Blood Prelim. Decl., ¶¶5, 8. The notice costs, which

28  will also be paid by Toyota, are estimated to be between $1.75 million to $2.5

8

BLOOD HURST & O'REARDON, LLP

The Ninth Circuit and California state "[c]ourts recognize two methods for calculating attorney fees in civil class actions: the lodestar/multiplier method and the percentage of recovery method." *Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 254 (2001) (citing *Zucker v. Occidental Petroleum Corp.*, 968 F. Supp. 1396, 1400 (C.D. Cal. 1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The choice of a fee calculation method, either the percentage or lodestar approach, is generally within the trial court's discretion, with the goal being "the award of a reasonable fee to compensate counsel for their efforts." *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 504 (2016). *See also Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 739 (9th Cir. 2016) (regardless of the method used, "'[r]easonableness is the goal'" for a fee award (quoting *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002))).

## 1.    The Requested Fee Is Reasonable Under the Percentage of Fund Approach

Federal courts, including the Ninth Circuit, have developed a strong preference for using a percentage-of-the-recovery method. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (1990). California state courts also recognize the advantages of the percentage method – relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation – and are convinced that "the percentage method is a valuable tool that should not be denied our trial courts." *Laffitte*, 1 Cal. 5th at 503.

---

million. *See* Declaration of Jeanne C. Finegan, ECF No. 88-3, ¶52. Therefore, the actual estimated value of the Settlement is approximately $3.4 billion. Blood Prelim. Decl., ¶¶5, 8.

1    The Ninth Circuit's "benchmark" for awarding fees is 25% of the total
2    recovery, but percentages in the range of 20% to 33-1/3% of the value of the
3    recovery are typical. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000);
4    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (affirming a
5    28% fee award); *Six Mexican Workers*, 904 F.2d at 1311 (affirming 25% fee
6    award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal.
7    2010) (approving 33 1/3% fee award as fair and reasonable). *See also Laffitte*, 1
8    Cal. 5th at 486, 506 (affirming fee award of one-third of the gross settlement
9    amount); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (noting
10   fee award of 25%); *Parker v. Los Angeles*, 44 Cal. App. 3d 556, 567-68 (1974)
11   (affirming award of one-third (33 1/3%) of the recovery).

12   In determining the amount of the benefit conferred, the appropriate
13   measure is the total recovery available for the class, not the amount actually
14   claimed. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-81 (1980); *accord*
15   *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).
16   This method recognizes that the efforts of Plaintiffs' Counsel established the
17   entire Settlement, including nonmonetary benefits, for the benefit of the entire
18   Class. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir.
19   2007) (citing *Williams*, 129 F.3d at 1027); *Vizcaino*, 290 F.3d at 1049.

20   In determining whether the percentage requested is fair and reasonable,
21   courts may consider a range of factors, including: (1) the results achieved; (2) the
22   risk of litigation; (3) the skill required; (4) the quality of work; and (5) the
23   contingent nature of the fee and the financial burden. *Vizcaino*, 290 F.3d at 1048-
24   50; *see also Laffitte*, 1 Cal. 5th at 504 (same).

25   ### 2. Plaintiffs' Counsel Achieved an Excellent Result for the Class
26

27   In determining the reasonableness of a fee request, the "most critical factor
28   is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436

BLOOD HURST & O'REARDON, LLP

1   (1983), *superseded on other grounds by statute*, Prison Litigation Reform Act,

2   42 U.S.C. §1997e, *as recognized in Whitehead v. Colvin*, No. 15-cv-05143, 2016

3   U.S. Dist. LEXIS 51085, at \*5 (W.D. Wash. Apr. 14, 2016). *See also Heritage*

4   *Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1005 (2013) (same); *Feminist*

5   *Women's Health Ctr. v. Blythe*, 32 Cal. App. 4th 1641, 1674 n.8 (1995) (same).

6        The results achieved through the Settlement are exceptional and they alone

7   justify the requested fee award. After contentious litigation involving three

8   rounds of motions to dismiss, a motion for summary judgment, a motion for

9   denial of class certification, multiple discovery requests and depositions, analysis

10  of over 2.5 million pages of documents, witness interviews, expert analysis, and

11  seven months of settlement negotiations, Plaintiffs' Counsel obtained an

12  incredible settlement: frame inspections for all Class Members; a second

13  inspection if the Class Member disagrees with the result; frame replacements for

14  those that need it; free loaner vehicles; CRC application to certain frames;

15  reimbursements of out-of-pocket expenses for frame replacements; and retention

16  of claims for personal injury, wrongful death, or actual physical property damage

17  arising from an accident involving a Subject Vehicle. *See* Blood Prelim. Decl.,

18  ¶¶3-56; SA, §§III., VII.B.

19       The Settlement provides Class Members with prompt, high-value benefits

20  and avoids the risks of the liability phase, which might have taken years to

21  determine. These are significant benefits for the Class. Accordingly, a percentage

22  of the overall recovery that falls well below the benchmark is justified.

23   ### 3.   Plaintiffs' Counsel Assumed Significant Risks in This Very Complex Litigation

24

25       The risk, expense, and complexity of the Litigation also demonstrate the

26  reasonableness of the fee award. At the same time that Plaintiffs' Counsel were

27  ready to proceed with trial, they knew the Class faced obstacles. Class

28  certification could have been a risky and complex undertaking. Expensive and

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

extensive expert analysis and testimony would be necessary to identify the defect, show that it is common to the class of Subject Vehicles that includes three models spanning over five years, and prove that it causes excessive rust corrosion and perforation, which is unrelated to and separate from normal surface rust. This factor alone would lead to *Daubert*[6] motions and motions *in limine*. Other arguments raised by Toyota in its motion to preemptively deny class certification could have impacted certification, including choice-of-law issues.

After certification, significant time and expense would continue to be incurred to conclude expert discovery, to move for or defend against summary judgment, to conduct trial and to handle appeals that are almost inevitable in a case of this size. Moreover, the risk of maintaining class action status through trial is not merely hypothetical, as evidenced by recent decisions denying class certification in automobile defect cases. *See*, *e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012); *Daigle v. Ford Motor Co.*, No. 09-cv-03214, 2012 U.S. Dist. LEXIS 106172 (D. Minn. July 31, 2012); *Corder v. Ford Motor Co.*, 283 F.R.D. 337 (W.D. Ky. 2012); *Edwards v. Ford Motor Co.*, No. 11-cv-01058, 2012 U.S. Dist. LEXIS 81330 (C.D. Cal. June 12, 2012), *rev'd on other grounds*, 603 Fed. Appx. 538 (9th Cir. 2015); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-cv-04558, 2012 U.S. Dist. LEXIS 13887 (D.N.J. Feb. 6, 2012); *Am. Honda Motor Co., Inc. v. Super. Ct.*, 199 Cal. App. 4th 1367 (2011).

Plaintiffs' Counsel incurred 100% of the risk in litigating this Action. Class Counsel in particular was forced to forego other employment in order to devote the time and resources necessary to pursue this litigation. Blood Suppl. Decl., ¶4. Throughout this time, there was no assurance of success or compensation. The requested fee award is entirely reasonable in light of the substantial risks incurred.

---

[6] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

**BLOOD HURST & O'REARDON, LLP**

### 4. Counsel Provided High-Quality Work

Class Counsel are experienced in complex class litigation and have substantial experience prosecuting consumer class actions involving automobiles in particular, or otherwise contributed with particularized knowledge needed for the case. Blood Prelim. Decl., ¶¶2, 58-59 and Exs. A and B.[7] Class Counsel have a thorough understanding of the issues presented by these types of cases and through their skill and reputation, were able to obtain a settlement that provides everything the Class could reasonably hope to obtain in this Litigation.

This Litigation was not easy. Toyota hired several highly capable and aggressive law firms to represent it, and it has resources to engage in the battle of the experts that would have surely ensued if not for reaching a settlement. Plaintiffs' Counsel successfully persevered through the multiple rounds of motions to dismiss, extensive discovery and depositions, and the motion to deny class certification, finally achieving the very purpose of filing this Action: free frame inspections and frame replacements for the Class Members.

The skill and tenacity of Plaintiffs' Counsel was put to the test throughout this Litigation, but it resulted in an exceptional settlement for the Class and justifies the requested attorneys' fee award.

### 5. Plaintiffs' Counsel Took the Case on a Contingency Basis

An attorney whose compensation is dependent on success – who takes a significant risk of no compensation – should expect a significantly higher fee than an attorney who is paid a market rate as the case goes along, win or lose. *Cotchett, Pitre & McCarthy v. Siller*, 520 B.R. 796, 812 (E.D. Cal. 2014); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001). Plaintiffs' Counsel undertook the Litigation solely on a contingent basis, with no guarantee of recovery. Blood Suppl. Decl., ¶4; Barnow Decl., ¶16. Despite such a challenge,

---

[7]   *See also* the concurrently filed Declaration of Ben Barnow ("Barnow Decl."), ¶2 and Ex. A.

Case No. 2:15-cv-02171 FMO (FFMx)

00117455   MEMO ISO PLTFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

1    Plaintiffs' Counsel were able to demonstrate to Toyota that it faced significant
2    exposure such that it entered into a superb settlement agreement.

3    **6.    No Class Members Have Objected to the Requested Fees**

4    Plaintiffs' intention to request attorneys' fees (and the amount) was
5    provided to each Class Member in the Court-approved Class Notice and in
6    information found on the Settlement website. *See* ECF No. 87-1, Ex. 4. As of the
7    filing of this brief, no one has objected to the amount of attorneys' fees sought.[8]
8    Blood Suppl. Decl., ¶5. The last day to object is March 27, 2017. ECF No. 98 at
9    29-30, ¶11. The lack of objection signifies the Class Members' approval of the
10   requested attorneys' fees. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT,
11   2005 U.S. Dist. LEXIS 13555, at *70 (C.D. Cal. June 10, 2005) ("The existence
12   or absence of objectors to the requested attorneys' fee is a factor in determining
13   the appropriate fee award.").

14   **C.    The Requested Fee Is Reasonable Under a Lodestar/Multiplier Crosscheck**

16   "[T]rial courts have discretion to conduct a lodestar cross-check on a
17   percentage fee" award. *Laffitte*, 1 Cal. 5th at 500, 506. Under the two-step
18   lodestar/multiplier method, trial courts first calculate the lodestar, consisting of
19   all the hours reasonably spent multiplied by reasonable hourly rates. *See Blum v.*
20   *Stenson*, 465 U.S. 886, 888 (1984); *Morales v. City of San Rafael*, 96 F.3d 359,
21   363 (9th Cir. 1996), *reh'g denied*, *amended on other grounds by* 108 F.3d 981
22   (9th Cir. 1997); *Ketchum*, 24 Cal. 4th at 1133. That figure may be enhanced or
23   multiplied to account for other factors which are not subsumed within it.[9]

---

25   [8]    One objector stated that "[t]he proposed settlement largely benefits the
26   attorneys pressing this case," but he did not specifically raise and issue regarding
     the amount of attorneys' fees. ECF No. 107.

27   [9]    The factors already taken into account by the lodestar calculation are:
28   "'(1) the novelty and complexity of the issues, (2) the special skill and
     experience of counsel, (3) the quality of representation, . . . (4) the results

BLOOD HURST & O'REARDON, LLP

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). This allows the court "'to fix a fee at the fair market value for the particular action.'" *Syers Props. III v. Rankin*, 226 Cal. App. 4th 691, 697-98 (2014) (quoting *Ketchum*, 24 Cal. 4th at 1132). The purpose of using the lodestar/multiplier method is to mirror the legal marketplace: the adjusted lodestar should not significantly differ from the percentage fee freely negotiated in comparable litigation. *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 50 (2000).

In this case, Class Counsel's lodestar alone is over $3,348,823. Blood Suppl. Decl., ¶¶3, 11; Barnow Decl., ¶¶3, 20. The requested $9.75 million fee award represents a modest multiplier of approximately 2.92 on this amount.

### 1.  The Hourly Rates Are Reasonable

Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. Typically, the forum where the district court sits is recognized as the "relevant community." *Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1087 (9th Cir. 2015) (citing *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)). Thus, Plaintiffs' Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Blum*, 465 U.S. at 895 n.11; *Ketchum*, 24 Cal. 4th at 1133. *See also Serrano v. Unruh*, 32 Cal. 3d 621, 640 n.31 (1982) ("The formula by which 'reasonable market value' is reached is variously phrased" as "comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation," and the "hourly amount

---

obtained,' and (5) the contingent nature of the fee agreement." *Morales*, 96 F.3d at 364 n.9 (citation omitted). Other factors include: (1) time and labor required; (2) preclusion of other employment by the attorney due to acceptance of the case; (3) customary fee; (4) time limitations imposed by the client or the circumstances; (5) undesirability of the case; (6) nature and length of the professional relationship with the client; and (7) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

00117455

BLOOD HURST & O'REARDON, LLP

1  to which attorneys of like skill in the area would typically be entitled.") (citations
2  omitted).

3      Plaintiffs' Counsel's background, experience, and hourly rates are set forth
4  in their concurrently filed declarations, and in the case of Blood Hurst &
5  O'Reardon, LLP ("BHO"), also in Mr. Blood's declaration in support of
6  preliminary approval.[10] BHO has an excellent reputation as class action litigators,
7  with specialized experience in consumer protection class action law, including
8  those cases involving automobiles. Blood Prelim. Decl., ¶¶2, 58 and Ex. A.
9  Barnow and Associates, P.C. ("Barnow") has decades of experience leading and
10  successfully resolving some of the nation's largest consumer class actions,
11  including automobile cases. Blood Prelim. Decl., ¶59 and Ex. B; Barnow Decl.,
12  ¶2 and Ex. A.

13      Declarations of the plaintiffs' attorneys regarding prevailing fees in the
14  community and rate determinations in other cases "are satisfactory evidence of
15  the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*,
16  896 F.2d 403, 407 (9th Cir. 1990). The hourly rates of Class Counsel (between
17  $560 and $850 for partners and between $320 and $650 for associates) are well
18  within the range of rates billed by comparable attorneys in this market and are
19  the standard rates they charge to all of their clients.[11] Blood Suppl. Decl., ¶¶9-12;
20  Barnow Decl., ¶¶20-21.

21
22

23  [10]    *See* Blood Prelim. Decl.; Blood Suppl. Decl.; Barnow Decl.; Declaration
24  of Michael L. Roberts of Roberts Law Firm, P.A. ("Roberts Decl."); Declaration
25  of Phillip J. Milligan of Milligan Law Offices ("Milligan Decl."); and
    Declaration of Jeffrey S. Hurst of Monteleone & McCrory, LLP ("Hurst Decl.").

26  [11]    An attorney's actual billing rate for similar work is presumptively
27  appropriate. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310
    (7th Cir. 1996); *accord In re Animation Workers Antitrust Litig.*, No. 14-cv-
28  04062, 2016 U.S. Dist. LEXIS 156720, at *20 (N.D. Cal. Nov. 11, 2016). *See
    also Wershba*, 91 Cal. App. 4th at 254-55.

BLOOD HURST & O'REARDON, LLP

00117455

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The hourly rates are reasonable and consistent with what attorneys of comparable skill charge for complex litigation in the Central District of California. *See Chambers v. Whirlpool Corp.*, No. 11-cv-01733, 2016 U.S. Dist. LEXIS 140839, at *52 (C.D. Cal. Oct. 11, 2016) (finding Los Angeles to be the legal market for the Central District and citing with approval the "National Law Journal survey of regional billing rates published in 2014, showing standard partner rates among top Los Angeles firms ranges from $490 to $975"). The rates charged by Plaintiffs' Counsels' firms fall well within that framework.

The reasonableness of Class Counsel's rates is further demonstrated by the fact that district courts within this Circuit have approved fee requests filed by BHO and Barnow. *See*, *e.g.*, *Hartless*, 273 F.R.D. at 644 (approving hourly rates of Blood Hurst & O'Reardon, LLP, stating that "based on the Court's familiarity with the rates charged by other firms in the San Diego area, the Court finds the rates charged by the attorneys and paralegals in this action reasonable"); *Makaeff v. Trump Univ., LLC*, No. 10-cv-00940, 2015 U.S. Dist. LEXIS 46749, at *12-14 (S.D. Cal. Apr. 9, 2015) (approving rates of $250-$440 for associates and $600-$825 for partners); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, MDL No. 11-2258, No. 11-cv-02119 at ECF No. 47 (S.D. Cal. May 4, 2015) (approving attorneys' fee request by BHO and Barnow,); *Johnson v. Gen. Mills, Inc.*, No. 10-cv-00061, 2013 U.S. Dist. LEXIS 90338, at *19-21 and n.3 (C.D. Cal. June 17, 2013) (approving hourly rates and time spent by BHO, stating "[t]he Court has considered class counsel's rates and finds they are reasonable because of the experience of the attorneys and prevailing market rates"); *Shames v. Hertz Corp.*, No. 07-cv-02174, 2012 U.S. Dist. LEXIS 158577, at *60 (S.D. Cal. Nov. 5, 2012) (approving hourly rates based on *Hartless*); *Dennis v. Kellogg Co.*, No. 09-cv-01786, 2013 U.S. Dist. LEXIS 163118, at *22-23 (S.D. Cal. Nov. 14, 2013) (approving hourly rates of BHO as "fall[ing] within typical rates for attorneys of comparable experience").

17

Case No. 2:15-cv-02171 FMO (FFMx)
MEMO ISO PLTFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

BLOOD HURST & O'REARDON, LLP

1   Another way to measure rates is by comparison to billing surveys. The
2   National Law Journal Billing Survey ("NLJ Survey") provides the following for
3   certain Southern California firms: Irell & Manella ($800-$975 partner rates,
4   $395-$750 associate rates); O'Melveny & Myers ($615-$950 partner rates); and
5   Sheppard, Mullin, Richter & Hampton ($490-$875 partner rates, $275-$535
6   associate rates). *See* Blood Suppl. Decl., ¶12 and Ex. 5 (2014 NLJ Survey).[12]
7   Thus, BHO's hourly rates of $320.00 to $810.00 and the hourly rates of $350.00
8   to $850.00 for the Barnow attorneys (together, Class Counsel) are reasonable.

9              **2.      The Hours Expended Are Reasonable**

10  As of February 24, 2017, Class Counsel and their firms alone had spent
11  7,021 hours litigating this Action. Blood Suppl. Decl., ¶11; Barnow Decl., ¶¶3,
12  20. Plaintiffs' Counsel's declarations outline the work they performed.[13] *Webb v.*
13  *Bd. of Educ.*, 471 U.S. 234, 243 (1985). As detailed above and in the
14  declarations, these hours include: drafting oppositions to three rounds of motions
15  to dismiss, a motion for summary judgment, and a motion for denial of class
16  certification; propounding and responding to discovery requests; reviewing and
17  analyzing over 2.5 million pages of documents from Toyota and third parties;
18  negotiating the Settlement; preparing the Settlement Agreement and its exhibits;
19  and speaking with and counseling over 500 Class Members. Blood Prelim. Decl.,
20  ¶¶3-4, 11-56; Blood Suppl. Decl., ¶¶6, 8, 10. The fee award should also include
21  time Plaintiffs' Counsel has spent and will spend to establish and defend the
22  attorneys' fee claim. *Serrano*, 32 Cal. 3d at 639.

---

23
24  [12]   Rates for Chicago, Illinois, where Class Counsel Barnow's office is
    located, are also in line with Southern California rates. *See* Blood Suppl. Decl.,
25  ¶12 and Ex. 5 (2014 NLJ Survey) (listing the following rates for certain Chicago,
    Illinois firms: Kirkland & Ellis ($590-$995 partner rates, $235-$715 associate
26  rates); Seyfarth Shaw ($375-$860 partner rates, $225-$505 associate rates); and
27  Winston & Strawn ($650-$995 partner rates, $425-$590 associate rates)).

28  [13]   *See generally* Blood Prelim. Decl.; Blood Suppl. Decl.; Barnow Decl.;
    Roberts Decl.; Milligan Decl.; Hurst Decl.

00117455

1  Moreover, additional work will be required. Class Counsel must still:
2  (1) prepare for and attend the final approval hearing, including the research and
3  drafting of the reply papers and responses to objections; (2) continue to respond
4  to the many inquiries from Class Members; (3) oversee the Settlement, which
5  will continue to be implemented through 2023; (4) oversee the claims
6  administration process, including addressing any claim review issues; and
7  (5) handle any appeals.[14] Blood Suppl. Decl., ¶¶7, 13. If there are appeals,
8  hundreds of thousands of dollars of additional attorney time may be incurred in
9  post-judgment motions (such as appeal bond requests) and in defending the
10 Settlement on appeal to the Ninth Circuit. None of this additional time will be
11 compensated.

### 3.  The Modest Multiplier Confirms the Reasonableness of the Requested Fee

14 Courts often enhance the lodestar with a multiplier. *Vizcaino*, 290 F.3d at
15 1051 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300
16 (9th Cir. 1994)). As stated above, the purpose of this practice is to mirror the
17 legal marketplace by rewarding attorneys for taking and winning contingency
18 cases. *Id.*; *see also Lealao*, 82 Cal. App. 4th at 50. Courts consider various
19 factors in determining a multiplier, including the novelty and complexity of the
20 litigation, counsel's skill and experience, the quality of representation, the results
21 obtained, and the contingent nature of the fee agreement. *See Morales*, 96 F.3d at
22 364; *Kerr*, 526 F.2d at 70. *See also Laffitte*, 1 Cal. 5th at 489 (same); *Lealao*, 82

---

14  Class Counsel have already spent significant time and effort working with
the over 500 Class Members who have contacted them with questions about the
Settlement, what their options are, when they can obtain an inspection, and how
they can get help with immediate frame rust issues. Blood Suppl. Decl., ¶8. Class
Counsel have in turn worked with Toyota's counsel so that frame issues
requiring immediate attention are dealt with. *Id.* Class Counsel's assistance to
Class Members will continue to throughout implementation of the Settlement
benefits. *Id.*, ¶¶7-8, 13.

BLOOD HURST & O'REARDON, LLP

1    Cal. App. 4th at 26 (same).

2        The requested fee award represents a modest multiplier of 2.92 based only

3    on the time spent by Class Counsel on the case to date – an amount well within

4    the accepted range for class action cases. "In the Ninth Circuit, multipliers

5    'ranging from one to four are frequently awarded . . . when the lodestar method is

6    applied.'" *Chambers*, 2016 U.S. Dist. LEXIS 140839, at \*57 (quoting *Vizcaino*,

7    290 F.3d at 1051 n.6). *See also Wershba*, 91 Cal. App. 4th at 255 ("Multipliers

8    can range from 2 to 4, or even higher."); 4 Alba Conte & Herbert B. Newberg,

9    *Newberg on Class Actions* §14:6 (4th ed. 2002) ("Multiples ranging from one to

10   four frequently are awarded in common fund when the lodestar method is

11   applied."); *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir.

12   2007) (holding that a multiplier of 6.85 "falls well within the range of multipliers

13   that courts have allowed"); *Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74, 76

14   (1986) (case remanded with directions "to enhance the lodestar award by such

15   factor (two, three, four or otherwise) that the court, in its discretion shall deem

16   proper"); *Vizcaino*, 290 F.3d at 1051 and n.6 (multiplier of 3.65); *Keith v. Volpe*,

17   501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *Buccellato v. AT&T*

18   *Operations, Inc.*, No. 10-cv-00463, 2011 U.S. Dist. LEXIS 85699, at \*4-5 (N.D.

19   Cal. June 30, 2011) (collecting cases and approving multiplier of 4.3).

20       As discussed above, the benefits for the Class, the complexity of this

21   Action, Plaintiffs' Counsel's skill displayed in effectively and efficiently

22   prosecuting this Action, the preclusion of accepting other work, and the

23   contingent nature of the fee award support the application of a modest 2.92

24   multiplier.

25   **V.    PLAINTIFFS'    COUNSEL    ARE    ENTITLED    TO**

26   **REIMBURSEMENT OF LITIGATION EXPENSES**

27       Plaintiffs' Counsel request reimbursement of the expenses they advanced

28   to prosecute the Litigation, and Toyota has agreed to pay these expenses up to

BLOOD HURST & O'REARDON, LLP

$150,000. SA, §VIII.B. California and the Ninth Circuit both allow recovery of litigation costs in the context of class action settlements. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *Serrano*, 20 Cal. 3d at 35. "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

In the aggregate, Class Counsel and other Plaintiffs' Counsel have incurred expenses in the amount of $114,348.22 for the Litigation, and will incur approximately $3,000 to travel to the final approval hearing. *See* Blood Suppl. Decl., ¶¶15-16; Barnow Decl., ¶¶3, 24-25. *See also generally* Roberts Decl. and Milligan Decl. All of these expenses are the types typically charged to paying clients in the marketplace and are also routinely reimbursed in class action settlements. For example, in *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007), the awarded expenses included: "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."

Indeed, other than office overhead, "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" are subject to reimbursement. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1368 (N.D. Cal. 1996); *see also Hartless*, 273 F.R.D. at 645-46 (a common fund class action settlement where the court awarded litigation costs for consultants, online legal research, copying, postage, fax and long distance charges, travel expenses, filing fees, mediation fees, and investigation fees).

Plaintiffs' Counsel's out-of-pocket expenses are all the types of expenses normally charged to paying clients, were all incurred in the course of the Litigation, were necessary to the Litigation and are not included in the overhead

1   of Plaintiffs' Counsel's hourly rates. *See* Blood Suppl. Decl., ¶¶14-16; Barnow

2   Decl., ¶¶17, 23. *See also* Roberts Decl. and Milligan Decl.

3       As detailed in Plaintiffs' Counsel's declarations, the expenses sought are

4   for travel costs, filing fees, service of process, electronic document management,

5   photocopies, overnight delivery, online legal research and conference calls. *See*

6   Blood Suppl. Decl., ¶¶15-16; Barnow Decl., ¶¶24-25. *See also* Roberts Decl. and

7   Milligan Decl. Though all Plaintiffs' Counsel's expenses currently total

8   approximately $114,350, that number will increase as Class Counsel seek final

9   approval of the Settlement and work to implement the Settlement benefits. Blood

10  Suppl. Decl., ¶¶7, 13, 16. Thus, Plaintiffs' Counsel's request for reimbursement

11  of $117,500 in out-of-pocket expenses should be granted.

12  **VI.   THE PLAINTIFF SERVICE AWARDS SHOULD BE APPROVED**

13      "Incentive awards are fairly typical in class action cases." *Rodriguez v. W.*

14  *Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 William B. Rubenstein

15  *et al.*, *Newberg on Class Actions* §11:38 (4th ed. 2008). *See also Cellphone*

16  *Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393 (2010) (same). The Ninth

17  Circuit recognizes that service awards "are intended to compensate class

18  representatives for work done on behalf of the class, to make up for financial or

19  reputational risk undertaken in bringing the action, and, sometimes, to recognize

20  their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at

21  958-59. Service awards are committed to the sound discretion of the trial court

22  and should be awarded based upon the court's consideration of criteria including

23  the amount of time and effort spent on the litigation, the duration of the

24  litigation, and the degree of personal gain obtained as a result of the litigation.

25  *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995);

26  *accord Wilson v. Airborne, Inc.*, No. 07-cv-00770, 2008 U.S. Dist. LEXIS

27  110411, at *36-37 (C.D. Cal. Aug. 13, 2008).

28

BLOOD HURST & O'REARDON, LLP

1      Here, Plaintiffs respectfully request that the Court approve a modest

2   service award of $2,500 for each of the Class Representatives in recognition of

3   their contributions toward the successful prosecution of this case. They all served

4   the Class well. They reviewed relevant pleadings and kept in constant

5   communication with their counsel throughout the Litigation. They provided

6   information for their disclosures and all documents in their possession (including

7   evidence of their rusted frames) and were willing to provide deposition testimony

8   and to testify at trial if needed. *See* Blood Prelim. Decl., ¶57. Toyota does not

9   oppose the payment of these service awards. SA, §VIII.C.

10      The requested service awards fall below amounts awarded in comparable

11   cases. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.

12   2000) (approving $5,000 incentive awards); *In re Toys "R" Us-Del., Inc. Fair &*

13   *Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470-72 (C.D. Cal.

14   2014) (approving $5,000 incentive awards); *Dennis*, 2013 U.S. Dist. LEXIS

15   163118, at *26-27 (citing cases and stating "the amount of the incentive

16   payments requested, $5,000, is well within if not below the range awarded in

17   similar cases"); *Williams v. Costco Wholesale Corp.*, No. 02-cv-02003, 2010

18   U.S. Dist. LEXIS 19674, at *10 (S.D. Cal. Mar. 4, 2010) (approving $5,000

19   service award); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-01365,

20   2010 U.S. Dist. LEXIS 49477, at *47 and n.8 (N.D. Cal. Apr. 22, 2010) (service

21   award of $20,000 was "well justified" given plaintiffs' efforts on behalf of the

22   class) (compiling cases); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322,

23   1330 (W.D. Wash. 2009) ("When compared to service awards in other cases, the

24   $7,500 payments requested here are justified.").

25   ///

26   ///

27   ///

28   ///

BLOOD HURST & O'REARDON, LLP

23
Case No. 2:15-cv-02171 FMO (FFMx)
MEMO ISO PLTFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award Plaintiffs' Counsel $9.75 million in attorneys' fees and $117,500 in expenses, and that the Court award the Class Representatives $2,500 each in service awards.

Respectfully submitted,

Dated: February 27, 2017

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON, II (247952)
PAULA R. BROWN (254142)

By:      s/ Timothy G. Blood
TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW  (pro hac vice)
ERICH P. SCHORK (pro hac vice)
1 North LaSalle Street, Suite 4600
Chicago, IL  60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

Class Counsel

MILLIGAN LAW OFFICES
PHILIP J. MILLIGAN (pro hac vice)
500 South 16th Street
Fort Smith, Arkansas  72901
Tel: 479/783-2213
milliganlaw@sbcglobal.net

ROBERTS LAW FIRM, P.A.
MICHAEL L. ROBERTS (pro hac vice)
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas  72223
Tel: 501/821-5575
501/821-4474 (fax)

BLOOD HURST & O'REARDON, LLP

1    mikeroberts@robertslawfirm.us

2    MONTELEONE & McCRORY, LLP
     Jeffrey S. Hurst (138664)
3    725 South Figueroa Street, Suite 3200
     Los Angeles, CA  90017
4    Tel: 213/784-3108
     213/612-9930 (fax)
5    Hurst@mmlawyers.com

6    *Additional Plaintiffs' Counsel*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

00117455

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 27, 2017.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

MEMO ISO PLTFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

00117455