BRADLEY D. SALTER - HI BAR # 5495, CA BAR # 78-007
24 Malialani Place
Lahaina, HI 96761
(808) 298-7873
Fax (808) 669-0800
Email: Brad@Salterlaw.com

*Counsel for Objector*
Cemil Hope

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WARNER, KENNETH MAC LEOD; MICHAEL MEADE, MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br>vs.<br><br>TOYOTA MOTO SALES, US.S.A., INC., a California corporation,<br><br>　　　　　　　Defendant. | Case No. 2:15-cv-02171-FMO-(FFMx)<br><br>**OBJECTION** |

OBJECTOR, Cemil Hope, hereby files this objection to the Class Action Settlement in this case as follows:

## THE CLASS DEFINITION VIOLATES THE RULE ENABLING ACT

The Court should deny the Settlement because the class definition is overbroad and violates the Rules Enabling Act. "[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" (quoting 28 U.S.C. § 2072(b))); Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co., 559 U.S. 393, 408 (2010). Overbroad class definitions violate the Rules Enabling Act because they require the application of a procedural

1

rule—here Rule 23—to include and provide benefits to individuals who are without standing to maintain the action on their own behalf. 28 U.S.C. § 2072(b). The direct consequence of Plaintiffs' proposed class is to enlarge the rights of people who would be unable to maintain a claim if they were to sue solely on their own behalf. Here, the proposed settlement class definition includes: "all persons, entities or organizations who, at any time as of the entry of the Preliminary Approval Order, own or owned, purchase(d) or lease(d) Subject Vehicles distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions." Settlement Agreement at 5. The proposed class definition violates the Rules Enabling Act because it includes individuals who have already obtained complete relief from Defendant and who are without standing to maintain the action on their own behalf.

The Parties are attempting to abridge, enlarge, and modify both Defendant and Class Member substantive rights. Defendant engaged in voluntary recalls and Limited Service Campaigns over the past two decades for the Subject Vehicles, which included all of the relief proposed in this settlement, including frame replacements, reimbursements for out-of-pocket costs, loaner vehicles, and CRC applications. See https://cars.usnews.com/cars-trucks/daily-news/100507-Some-Toyota-Tundra-Owners-May-be-Eligible-for-10-000-Frame-Replacement/. Plaintiffs' proposed class does not account for Defendants' prior activities. Plaintiffs' proposed class includes vehicles simply because they exist, irrespective of any actual connection to Defendants' activities. The Ninth Circuit recognized that, under the Rules Enabling Act, the parties must have the same rights in a class proceeding that they have in an individual suit. An overbroad class definition violates the Rules Enabling Act by giving plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action." Tyson Foods, Inc. v.

2

**OBJECTION Case No. 2:15-cv-02171-FMO-(FFMx)**

Bouaphakeo, 136 S. Ct. 1036, 1048 (2016). As a result, the class definition includes individuals who would otherwise be without standing to maintain their own action. Because determining who is actually entitled to relief would require individualized inquiries, the Settlement Class definition is overbroad and the Court should deny settlement approval.

## THE PROPOSED SETTLEMENT CLASS FAILS RULE 23's PREDOMINANCE REQUIREMENT

The Court should deny the Settlement because the proposed class does not meet Rule 23's demanding predominance requirements. A class may be certified only if "questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3). The Supreme Court has noted that, "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013). "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case, and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) (quoting Hanlon, 150 F.3d at 1022). The Ninth Circuit has interpreted Comcast to mean that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 987–88 (9th Cir. 2015) (quoting Leyva v. Medline Indus., Inc., 716 F.3d 510, 514 (9th Cir. 2013)), petition for cert. filed, 84 U.S.L.W. 3500 (U.S. Mar. 1, 2016) (No. 15-1101). If the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance. Id.

Here, Plaintiffs are unable to prove that all rust damage alleged in the

Complaint resulted from Defendant's conduct. The proposed Class includes "all persons, entities or organizations who, at any time as of the entry of the Preliminary Approval Order, own or owned, purchase(d) or lease(d) Subject Vehicles distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions." Settlement Agreement at 5. Based on this definition, the Settlement Class presumably includes salvaged vehicles, flood-damaged vehicles, and vehicles involved in wrecks where frame damage occurred. Though the class definition includes anyone and everyone that ever owned or purchased/leased a Subject Vehicle, the Settlement explicitly denies certain benefits to individuals with either Salvaged Vehicles or vehicles with titles marked flood-damaged. By virtue of excluding certain Class Members from obtaining relief, the Parties are clearly communicating that the Class is not sufficiently cohesive. Plaintiffs and Defendant are admitting that some damages resulted from conduct not attributed to Defendant's conduct. Because the class definition includes every subject vehicle on one hand, and then excludes certain class members from obtaining benefits with on the other hand, Plaintiffs have not demonstrated how common questions of law or fact predominate over individual issues.

Even if the Court finds that the inclusion of salvage and flood-damaged vehicles in the Class--and the denial of benefits to those same Class Members-- is appropriate, the inclusion of vehicles with frames damaged in car accidents is not appropriate. The Class definition should exclude individuals with salvage and flood titles, and frame damage caused by an accident. By excluding individuals with rusted frames, the cause of which cannot be directly attributed to Defendant, the Class is sufficiently defined and does not fail Rule 23's predominance requirement. The Court should deny the Settlement and require Plaintiffs to carve out those individuals from the class definition.

**OBJECTION Case No. 2:15-cv-02171-FMO-(FFMx)**

## PLAINTIFF'S CLAIMS ARE NOT TYPICAL OF MANY ABSENT CLASS MEMBER AND PLAINTIFFS ARE NOT ADEQUATE REPRESENTATIVES

Though Plaintiffs' claims speak to the basic facts of Defendant's wrongful conduct applicable to all Class Members, Plaintiffs' claims and defenses are in stark contrast from what counsel knows to be those of many absent class member claims and defenses. "The claims or defenses of the representative parties must be typical of the claims or defenses of the class." Rule 23(a)(3). Further, the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Here, Plaintiffs and Class Counsel know that Plaintiffs and many Class Members do not have the same legal claims. As previously mentioned, Plaintiffs' claims are not typical because none of the Plaintiffs participated in Defendant's prior frame replacement campaigns. Plaintiffs' claims and the claims of many absent class members are not interrelated; Plaintiffs' zealous fight for replacements or out-of-pocket reimbursements do not serve the interests of absent Class Members that have already received both, for example. Additionally, Plaintiffs cannot claim to adequately represent absent Class Members with salvage titles or flood-damaged vehicles, who are included in the Class Definition but do not receive the same benefits as the named Plaintiffs.  Thus Plaintiffs claims and defenses are not typical to those of all Class Members.

Further, conflicts that are fundamental to a lawsuit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement. In re DVD Online Rental Antitrust Litg., 779 F.3d 934, 941 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., Newberg on Class Actions § 3.58 (5th ed. 2011). "A conflict is fundamental when it goes to the specific issues in controversy." Id. Because there is a substantive difference between Plaintiffs' claims and the claims of individuals that have already obtained relief

5

from Defendant, Plaintiffs do not adequately represent the interests of all Class Members. Plaintiffs cannot claim that they are representing the interests of all class members equally and cannot claim that they have fairly and adequately protected their interests in their absence. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997). Because the conflicts between Plaintiffs and many Class Members speak to the specific issues in controversy, the Court should deny the Settlement and require Plaintiffs to either carve out specific class members or Plaintiffs should add a named representative that has previously participated in Defendant's voluntary recalls or Limited Service Campaigns.

## THE SETTLEMENT IS UNFAIR, UNREASONABLE, AND INADEQUATE

The proposed Settlement is unfair and unreasonable because many absent Class Members are barred from pursuing damages claims yet they receive nothing of value in return. Rule 23 requires a court to determine that a class action settlement is "fair, reasonable, and adequate" before final approval. Rule 23(e)(2). A class settlement negotiated prior to formal class certification presents an increased risk that the named plaintiffs and class counsel breached the fiduciary obligations they owe to the absent class members. As a result, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 946 (9th Cir. 2011). Here, neither the class definition nor the release exclude individuals that have already obtained the proposed relief from Defendant. As a result, those absent class members are forced to release all claims against defendant and receive nothing in return. There is no evidence in the record that the relief afforded by the settlement has any value to Class Members that already received a frame replacement, reimbursements for out-of-pocket costs, and/or CRC

6

applications, yet those class members must relinquish their rights to seek damages both individually and in any other class action against Defendant. Because the proposed Settlement gives many absent class members nothing of value, they cannot not fairly or reasonably be required to give up anything in return. See e.g. Michael P. Koby v. ARS Services Inc. et al., No. 13-56964 (9th Cir. Jan. 25, 2017). The Court should deny the settlement because it is neither fair nor reasonable.

The Settlement is inadequate because Plaintiffs have not explained how the amount offered in settlement adequately compensates Class Members for their release of claims. The district court must review and evaluate the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Plaintiffs have not explained to the Court how the Settlement meets each of the factors identified above. Plaintiffs claim that the Settlement provides an estimated $3.4 billion in benefits to the Class. Such a statement is a misrepresentation to the Class and the Court. Plaintiffs have not identified how many Class Members have already received frame replacements as a result of Defendant's pre-settlement actions; how much money has been reimbursed to Class Members prior to the settlement; and how many vehicles received CRC applications prior to the Settlement. Those totals necessarily reduce the potential settlement size. As a result, the touted $3.4 billion settlement value is inflated and illusory. Plaintiffs have not explained how the amount offered in settlement adequately compensates the Class. Because the record has not been developed, the Court

cannot comprehensively explore all factors to approve settlement adequacy.

## THE COURT SHOULD EITHER DENY OR REDUCE CLASS COUNSEL'S FEE REQUEST

The Settlement shows subtle signs that Class Counsel's interests superseded the interests of the Class. The following signs are indicia of collusion and self-interest: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a clear sailing arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant. See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011). All three warning signs are present here.

First, Class Counsel has not indicated how many claims have been submitted to date and the total value of those claims. Toyota previously disclosed in its 2011 SEC Form 20-F filing that it incurred minimal losses/expenditures for repair, replacement, and buybacks relating to rusted frames. Toyota's SEC filing provides:

> In fiscal 2009, Toyota accrued the cost of the customer satisfaction measures related to Tacoma pick-up trucks in North America in order to address the possibility of rust developing on the frame of a portion of older model Tacoma pick-up trucks manufactured in North America between 1995 and 2004, by rendering repair services for a portion of the vehicles and providing warranty extensions of up to 15 years to owners of approximately 820 thousand vehicles, a portion of which may include vehicle buyback. Accordingly, the cost of approximately ¥130.0 billion was recorded in operating costs and expenses in fiscal 2009. The repair ratio for these customer satisfaction measures to date has been relatively

> low due primarily to the low rate of incidence of rust on the frames of these vehicles which may occur when exposed to severe environmental conditions including accumulation of road salts. This low repair ratio was assumed in the calculation of the accrual. http://www.toyota-global.com/pages/contents/investors/ir_library/sec/pdf/20-F_201103_final.pdf

Based on a Yen to Dollar conversion, the amounts paid in North America in 2009, 2010, and 2011 were $643,215.65 (72.5m Yen), $251,963.10 (28.4m Yen), and $200,505.84 (22.6m Yen) respectively. These numbers are presumably higher than the proposed settlement because they spanned a larger timeframe (9 years) and included vehicle buybacks. Beyond Toyota's public disclosures, Toyota's litigation similarly demonstrates that the proposed settlement benefits do not come anywhere near the $3.4 billion represented to the Class and the Court. The original, insufficiently rustproofed frames were supplied by Dana Holding Corp. of Maumee, Ohio. Toyota filed suit and recovered $25 million as settlement in that case. If the value of the rusted frames was limited to $25 million for a couple hundred thousand frames, how does that settlement square with the settlement proposed here? The real value of this settlement is the Release Defendant receives in exchange for the payment of somewhere around a few million dollars to Class Members and $9.75 million payable to Class Counsel. As a result, Class Counsel's fee request is disproportionate to the benefits that will be distributed to the class through the proposed settlement. The Court should deny Class Counsel's fee award on that basis.

Second, the Parties negotiated a clear sailing agreement with respect to Class Counsel's fee request. Settlement Agreement at 28-29. "[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." In re Bluetooth, 654 F.3d at

9

947 (quoting Weinberger v. Great Nekoosa Corp., 925 F.2d 518, 525 (1st. Cir. 1991). Therefore, when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested. Id. at 948 (quoting v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003). Further, a clear sailing arrangement that provides for the payment of fees separate and apart from class funds, carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class. Class Counsel represented to the Court that its proposed fee is "very modest" relative to the Settlement, representing less than 0.3% of the value of the Settlement and a multiplier of 2.92 on Class Counsel's lodestar. Class Counsel's representation is misguided. Class Counsel's excessive fee request will most likely outstrip actual claims paid by defendant, which was secured by the clear sailing agreement. If Class Counsel truly believes that the actual value of the Settlement is 0.3% of the settlement value, then Class Counsel did not due its due diligence and did not engage in meaningful discovery. If it did, then it would have discovered that the actual value of the Settlement to the Class, as proven by Toyota itself, is minimal.

Third, though this is not a common fund settlement (no funds have been set aside/guaranteed for Class Member distribution), Class Counsel's representation that the settlement value is $3.4 billion begs the question, how much of that "value" will Defendant save considering the number of Class Members that are unable to claim any benefits through the settlement whatsoever? Additionally, it is unclear whether or not Defendant may benefit from the Settlement in any way. Has Defendant purchased class action settlement insurance, which would essentially shield it from any financial responsibility? Will any of Defendant's insurers similarly cover class member

**OBJECTION Case No. 2:15-cv-02171-FMO-(FFMx)**

claims? Though no amounts will "revert" back to Defendant in the literal sense, the Parties are providing an illusory value to Class Members and the total settlement value is no doubt inflated. The combination of these factors indicates that Defendant's focus was obtaining a release of claims from every single owner of a Subject Vehicle, whether or not they actually receive any benefits, and that Class Counsel's focus was a significant fee that is neither tied to the actual value of the settlement or Class Member interests. The Court should deny Class Counsel's fee request.

If the Court does not deny Class Counsel's fee request, then it should reduce any fee award to Class Counsel's reasonable hours expended multiplied by a reasonable hourly rate, without any multiplier (either for risk or for delay in payment). This is not a common fund case, so Plaintiff should not be representing that its fee request correlates to any percentage of the settlement. A "common fund" exists when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." Boeing Co., 444 U.S. at 479. Fees awarded out of the common fund are thus apportioned among the class. This is not a common fund case. As a result, the Court should limit any fee award to the lodestar method.

Class Counsel is not entitled to a risk multiplier. A risk multiplier is appropriate only when the following factors are present: (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky. See Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 741 (9th Cir. 2016). Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis. Neither Plaintiffs nor Class Counsel have demonstrated to the Court that its clients, or absent class clients,

might otherwise be denied access to counsel on a contingency basis. This is not a case of a consumer purchasing a low dollar product from a defendant, which would disincentivize an attorney from representing the consumer. Each Plaintiff alleges that their damages and losses total tens of thousands of dollars. This also is not a case where Counsel took the case with the expectation that they would receive a risk multiplier. Defendant all but admitted liability; it voluntarily engaged in recalls, service campaigns, litigation with its frame provider, and turned over documents to federal investigators. Class Counsel's hourly rate also assumes any inherent risk. In fact, there is no evidence that this case was risky. Class Counsel's fee motion limits its discussion of risk to future risks, i.e. class certification. Counsel in their declarations limit their discussion of risk to their litigation costs (Barnow Declaration at ¶16) or the fact that they are a small firm that doesn't handle class actions (Milligan Declaration at p. 6). The Court should not award any risk multiplier to Class Counsel's fee request and limit its fee award to $3,348,823.50.

The Court also should not award any lodestar multiplier under Kerr. A district court may adjust a lodestar upward or downward using a multiplier that reflects "'a host reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941-42 (9th Cir. 2011). The results achieved do not warrant any upward multiplier to Class Counsel's lodestar. Not all Class Members are entitled to benefits and many will be forced to release claims without receiving any value from the settlement. Further, the issues in this case were neither complex nor were they novel. This case is a simple product defect case, it is not a securities class action nor is it an antitrust case, both of which are significantly more complex. The claims also were not novel, Defendant's rusted frame issues were well documented, litigated, and investigated by others

prior to Plaintiffs filing their Complaints. As a result, Class Counsel's fee award should be limited to a reasonable hourly rate multiplied by Class Counsel's reasonable hours dedicated to prosecuting the action.

**Declaration of Cemil Hope:**

My contact information is 831 5th ST, Petaluma, CA 94952, 707-934-7204. I am a member of the Settlement Class because I own a 2009 Toyota Tacoma, VIN 3TMMU52N39M007921, which I have owned since 2014. I have not taken this vehicle to a Toyota dealership for frame rust repairs and believe I am entitled to a frame rust inspection and repair, if necessary. I do not intend on attending the Fairness hearing personally or with counsel. I also attest to this objection.

*Objector*
_____
Cemil Hope

Dated: 3-24-17   By: /s/ Bradley D. Salter
_____
BRADLEY D. SALTER
Attorney for Objector

13

**OBJECTION Case No. 2:15-cv-02171-FMO-(FFMx)**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on March 27, 2017 and served by the same means on all counsel of record.

/s/ Brad Salter

**OBJECTION Case No. 2:15-cv-02171-FMO-(FFMx)**