# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WARNER, KENNETH MAC LEOD; MICHAEL MEADE, MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,<br><br>Defendant. | Case No. 2:15-cv-02171-FMO-(FFMx)<br><br>**CLASS ACTION**<br><br>**NOTICE OF APPEAL** |

## NOTICE OF APPEAL

Class member, objector, and appellant Gay Hopkins hereby appeals the Order re: Final Approval of Class Action Settlement; Approval of Attorney's Fees, Costs & Service Awards DE 2821 entered on May 21, 2017 and Judgment DE 2849 entered on May 21, 2017 both attached. Also attached is FRAP12B.

Dated:  6-11-17                                    /s/Michael Creamer

                                                   Michael Creamer

                                                   CA Bar Number 204662

                                                   PO BOX 17743

                                                   Anaheim, CA 92817

                                                   714-623-2299


## CERTIFICATE OF SERVICE

I, Michael Creamer, hereby certify that a true copy of the above document was served upon the attorneys of record for each other party through the Court's electronic filing service ECM/ECF on 6-11-17.


                                           /s/Michael Creamer
                                           Michael Creamer

FRAP 12B

| | |
|---|---|
| BRIAN WARNER, KENNETH MAC LEOD; MICHAEL MEADE, MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET, individually and on behalf of all others similarly situated, | Case No. 2:15-cv-02171-FMO-(FFMx)<br><br>CLASS ACTION |
| Plaintiffs, | OBJECTION |
| v. | |
| TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, | |
| Defendant. | |

---

Brian Warner et al v. Toyota Motor Sales, U.S.A., Inc.
Assigned to: Judge Fernando M. Olguin
Referred to: Magistrate Judge Frederick F. Mumm
Demand: $5,000,000
Cause: 28:1332 Diversity-Fraud

Date Filed: 03/24/2015
Date Terminated: 05/21/2017
Jury Demand: Both
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

## Plaintiff

**Brian Warner**
*individually and on behalf of all others similarly situated*

represented by **Ben Barnow**
Barnow and Associates PC
One North LaSalle Street Suite 4600
Chicago, IL 60602
312-621-2000
Fax: 312-641-5504
Email: b.barnow@barnowlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erich P Schork**
Barnow and Associates PC
One North LaSalle Street Suite 4600
Chicago, IL 60602
312-621-2000
Fax: 312-641-5504
Email: e.schork@barnowlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey S Hurst**
Monteleone and McCrory LLP
725 South Figueroa Street Suite
3200
Los Angeles, CA 90017-5446
213-612-9900
Fax: 213-612-9930
Email: hurst@mmlawyers.com
*ATTORNEY TO BE NOTICED*

**Michael L Roberts**
Roberts Law Firm PA
20 Rahling Circle
Little Rock, AR 72223
501-821-5575
Fax: 501-821-4474
Email:
mikeroberts@robertslawfirm.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paula R Brown**
Blood Hurst and O'Reardon LLP
701 B Street Suite 1700
San Diego, CA 92101
619-338-1100
Fax: 619-338-1101
Email: pbrown@bholaw.com
*ATTORNEY TO BE NOTICED*

**Phillip J Milligan**
Milligan Law Offices
500 South 16th Street
Fort Smith, AR 72901
479-783-2213
Fax: 479-783-4329
Email: milliganlaw@sbcglobal.net
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy G Blood**
Blood Hurst and O Reardon LLP
701 B Street Suite 1700
San Diego, CA 92101
619-338-1100
Fax: 619-338-1101

Email: tblood@bholaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenneth MacLeod**
*individually and on behalf of all
others similarly situated*

represented by **Ben Barnow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erich P Schork**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey S Hurst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael L Roberts**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paula R Brown**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip J Milligan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Joseph O'Reardon , II**
Blood Hurst and O'Reardon LLP
701 B Street Suite 1700
San Diego, CA 92101
619-338-1100
Fax: 619-338-1101
Email: toreardon@bholaw.com
*ATTORNEY TO BE NOTICED*

**Timothy G Blood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Meade**
*individually and on behalf of all*
*others similarly situated*

represented by   **Ben Barnow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erich P Schork**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey S Hurst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael L Roberts**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paula R Brown**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip J Milligan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy G Blood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Watson**
*individually and on behalf of all*
*others similarly situated*

represented by   **Ben Barnow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erich P Schork**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey S Hurst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael L Roberts**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paula R Brown**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip J Milligan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy G Blood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Fuller**
*individually and on behalf of all
others similarly situated*

represented by **Ben Barnow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erich P Schork**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey S Hurst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael L Roberts**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paula R Brown**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip J Milligan**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Thomas Joseph O'Reardon , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy G Blood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Dale Franquet** | represented by | **Ben Barnow** |
| *individually and on behalf of all* | | (See above for address) |
| *others similarly situated* | | *PRO HAC VICE* |

**Dale Franquet**
*individually and on behalf of all others similarly situated*

represented by **Ben Barnow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erich P Schork**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey S Hurst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael L Roberts**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paula R Brown**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip J Milligan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Joseph O'Reardon , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy G Blood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ryan Burns**                          represented by   **Ben Barnow**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Timothy G Blood**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Good**                          represented by   **Ben Barnow**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Timothy G Blood**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

V.

                                                        Represented by Michael Creamer
                                                        PO Box 17743
**Objector and Appellant**                              Anaheim, CA 92817
                                                        714-623-2299
                                                        shoya@yahoo.com
                                                        *ATTORNEY TO BE NOTICED*

**Ms. Gay Hopkins**

V.

**Defendant**

**Toyota Motor Sales, U.S.A., Inc.**    represented by   **David L Schrader**
*a California corporation*                              Morgan Lewis and Bockius LLP
                                                        300 South Grand Avenue 22nd Floor
                                                        Los Angeles, CA 90071-3132
                                                        213-612-2500
                                                        Fax: 213-612-2501
                                                        Email:
                                                        david.schrader@morganlewis.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Eric F Gladbach**

Reed Smith LLP
599 Lexington Avenue 28th Floor
New York, NY 10022
212-205-6130
Fax: 212-521-5450
Email: egladbach@reedsmith.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Esther Kyungmin Ro**
Morgan Lewis and Bockius LLP
300 South Grand Avenue 22nd Floor
Los Angeles, CA 90071-3132
213-612-2500
Fax: 213-612-2501
Email: ero@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Galen Driscoll Bellamy**
Wheeler Trigg ODonnell LLP
370 Seventeenth Street Suite 4500
Denver, CO 80202
303-244-1844
Fax: 303-244-1879
Email: bellamy@wtotrial.com
*ATTORNEY TO BE NOTICED*

**John P Hooper**
Reed Smith LLP
599 Lexington Avenue 26th Floor
New York, NY 10022
212-521-5400
Fax: 212-521-5450
Email: jhooper@reedsmith.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter W Herzog , III**
Wheeler Trigg O'Donnell LLP
211 North Broadway Suite 2825
St Louis, MO 63102
314-326-4129
Fax: 303-244-1879
Email: pherzog@wtotrial.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raymond A Cardozo**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071
213-457-8000
Fax: 213-457-8300
Email: rcardozo@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Special Master**

**Patrick A Juneau**

V.

**Objector**

**Andrew Behlman**                     represented by  **Andrew Behlman**
                                                        11 Tallwood Court
                                                        Morris Plains, NJ 07950
                                                        908-235-1040
                                                        PRO SE

**Objector**

**Cemil Hope**

V.

**Intervenor**

**Devin Forbes**                       represented by  **Alfredo Torrijos**
*TERMINATED: 03/06/2017*                               Arias Sanguinetti Stahle and Torrijos
                                                        LLP
                                                        6701 Center Drive West 14th Floor
                                                        Los Angeles, CA 90045
                                                        310-844-9696
                                                        Fax: 310-861-0168
                                                        Email: alfredo@asstlawyers.com
                                                        *TERMINATED: 03/06/2017*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Mike M Arias**
                                                        Arias Sanguinetti Stahle and Torrijos
                                                        LLP
                                                        6701 Center Drive West 14th Floor

Los Angeles, CA 90045-1558
310-844-9696
Fax: 310-861-0168
Email: mike@asstlawyers.com
*TERMINATED: 03/06/2017*
*ATTORNEY TO BE NOTICED*

## CERTIFICATE OF SERVICE

I, Michael Creamer, hereby certify that a true copy of the above document was served upon the attorneys of record for each other party through the Court's electronic filing service ECM/ECF on 6-11-17.

/s/Michael Creamer
Michael Creamer

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN WARNER, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California Corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV 15-2171 FMO (FFMx)<br><br><br>**JUDGMENT** |

Pursuant to the Court's Order Re: Final Approval of Class Action Settlement; Approval of Attorney's Fees, Costs & Service Awards ("Order"), filed contemporaneously with the filing of this Judgment, IT IS ADJUDGED THAT:

1. Defendant shall pay each named plaintiff a service payment of $2,500.00 in accordance with the terms of the Settlement Agreement.

2. Defendant shall pay class counsel attorney's fees in the amount of $9.75 million, and costs in the amount of $124,091.91.

3. The Settlement Notice Administrator, Jeanne Finegan of Heffler Claims Group, shall be paid for her fees and expenses in connection with the administration of the Settlement Agreement, in accordance with the terms of the Settlement Agreement.

4. The Settlement Claims Administrators, Patrick A. Juneau and Michael Juneau, shall be

1 paid for their fees and expenses in connection with the administration of the Settlement

2 Agreement, in accordance with the terms of the Settlement Agreement.

3      5. Except as to any class members who have validly and timely requested exclusion, this

4 action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as

5 set forth herein and in the prior orders of the court.

6      6. All class members who did not validly and timely request exclusion from the settlement

7 have released their claims, as set forth in the Settlement Agreement, against any of the released

8 parties (as defined in the Settlement Agreement).  In addition, all class members who did not

9 validly and timely request exclusion from the settlement are barred and enjoined from instituting,

10 commencing, filing, maintaining, continuing or prosecuting against any of the released parties (as

11 defined in the Settlement Agreement) any action or proceeding in any court or tribunal asserting

12 any of the released claims. See 28 U.S.C. §§ 1651(a) & 2283.

13 Dated this 21st day of May, 2017.

14

15                                  /s/

16                             Fernando M. Olguin
                          United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 15 of 42   Page ID
#:2898
Case 2:15-cv-02171-FMO-FFM   Document 140   Filed 05/21/17   Page 1 of 28   Page ID #:2821

1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11   BRIAN WARNER, et al., individually and   )   Case No. CV 15-2171 FMO (FFMx)
     on behalf of all others similarly situated,   )
12                                            )
                     Plaintiffs,              )
13                                            )   ORDER RE: FINAL APPROVAL OF CLASS
                v.                            )   ACTION SETTLEMENT; APPROVAL OF
14                                            )   ATTORNEY'S FEES, COSTS & SERVICE
     TOYOTA MOTOR SALES, U.S.A., INC.,        )   AWARDS
15   a California Corporation,                 )
                                              )
16                   Defendant.               )
                                              )
17   _____ )

18          Having reviewed and considered the Joint Motion for Entry of an Order Granting Final

19   Approval of Class Action Settlement Agreement (Dkt. 134, "Motion") and Plaintiffs' Motion for

20   Attorneys' Fees, Expenses, and Service Awards (Dkt. 111, "Fees Motion"), and the oral argument

21   presented during the final fairness hearing held on April 27, 2017, the court concludes as follows.

22                                    **INTRODUCTION**

23          On October 3, 2014, Ryan Burns ("Burns") filed a class action complaint against Toyota

24   Motor Sales, U.S.A., Inc. ("Toyota" or "defendant") in Arkansas entitled, Burns v. Toyota Motor

25   Sales, U.S.A., Inc., Case No. CV 14-2208 (W.D. Ark.) ("Related Action"), alleging, among other

26   things, that Toyota designed, manufactured, distributed, advertised, and sold certain Tacoma

27   vehicles (model years 2005 to 2009) that lacked adequate rust protection on the vehicles' frames,

28   resulting in premature rust corrosion.   (See Dkt. 98, Court's Order of December 2, 2016

1  ("Preliminary Approval Order" or "PAO") at 1).  On March 24, 2015, Brian Warner ("Warner"),

2  Kenneth MacLeod ("MacLeod"), Michael Meade ("Meade"), Michael Watson ("Watson"), Dale

3  Franquet ("Franquet"), and James Fuller ("Fuller") filed a similar class action in this court ("the

4  Action").  (See id. at 2; Dkt. 1, Complaint at ¶¶ 1-2).

5        The Second Amended Complaint ("SAC"), the operative complaint in this matter, was filed

6  on November 8, 2016, and asserts 12 claims under various state consumer laws, based on the

7  same allegations with respect to Toyota Tacoma vehicles, model years 2005 to 2010; Toyota

8  Tundra vehicles, model years 2007 to 2008; and Toyota Sequoia vehicles, model years 2005 to

9  2008 ("Subject Vehicles").  (See Dkt. 86, SAC at ¶¶ 1 & 97-189).  The SAC also added Burns and

10  James Good ("Good") as named plaintiffs.  (See id. at ¶¶ 10 & 15).

11        On December 2, 2016, the court granted preliminary approval of the parties' settlement and

12  appointed Jeanne Finegan ("Finegan") of Heffler Claims Group ("Heffler") as the settlement notice

13  administrator, and directed Finegan to provide notice to the class members.  (See Dkt. 98, PAO

14  at 28-29).  Plaintiffs now seek:  (1) final approval of the settlement; (2) attorney's fees and costs;

15  and (3) service awards for the class representatives.  (See Dkt. 134, Motion at 1; Dkt. 111, Fees

16  Motion at 1).

## BACKGROUND

18  I.      PLAINTIFFS' ALLEGATIONS.

19        This case arises from allegations that the frames on the Subject Vehicles lack adequate

20  rust protection, resulting in premature rust corrosion that compromises the structural integrity,

21  safety, stability, and crash-worthiness of the vehicles.  (See Dkt. 98, PAO at 2).  Plaintiffs allege

22  that Toyota represented to plaintiffs and class members that the Subject Vehicles were

23  manufactured "us[ing] the most advanced technology available, [that] helps prevent corrosion[.]"[1]

24  (SAC at ¶ 27).  Despite Toyota's representations, plaintiffs allege that the Subject Vehicles "are

25  prone to excessive, premature rust corrosion because the frames were not properly prepared and

26

27  _____

[1]  Capitalization, emphasis, internal alteration marks, and internal quotation marks may be

28  altered or omitted without notation in record citations.

2

1  treated against rust corrosion when they were manufactured." (Id. at ¶ 1). "The function of frames

2  include handling static and dynamic loads with unintended deflection and distortion, preventing

3  undesirable forces and twisting from driving over uneven surfaces, engine torque, vehicle handling

4  and accelerating and decelerating. [They] also are the primary component that guard against

5  sudden impacts and collisions." (Id. at ¶ 17). According to plaintiffs, the premature and excessive

6  rust "affects the structural integrity of the vehicles, rendering them unsafe to drive and a hazard

7  on the roadways[,]" (id. at ¶ 18), because rust weakens the frames "by replacing the strong iron

8  or steel with flaky powder, ultimately leading to perforations." (Id. at ¶ 19).

9  II.    SETTLEMENT AGREEMENT.

10  During the litigation of this Action and the Related Action, which included motions to dismiss

11  and a motion for summary judgment, (see Dkt. 98, PAO at 3), the parties began to explore a

12  global settlement of both cases. (Id.). The parties reached a settlement following "a seven month

13  negotiation process" assisted by the Special Master, Patrick A. Juneau. (Id. at 2-3; Dkt. 88-2,

14  Declaration of Timothy G. Blood in Support of Joint Motion for Preliminary Approval of Class

15  Action Settlement, Certification of Settlement Class, and Approval of Class Notice ("Blood Decl.")

16  at ¶ 4).

17  The parties define the settlement class as

18  all persons, entities or organizations who, at any time as of the entry of the

19  Preliminary Approval Order, own or owned, purchase(d) or lease(d) Subject

20  Vehicles distributed for sale or lease in any of the fifty States, the District of

21  Columbia, Puerto Rico and all other United States territories and/or

22  possessions.

23  (Dkt. 91, Settlement Agreement at § II.A.8.). Excluded from the class are "(a) Toyota, its officers,

24  directors and employees; its affiliates and affiliates' officers, directors and employees; its

25  distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota

26  Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate

27  family members and associated court staff assigned to this case; and (d) persons or entities who

28  or which timely and properly exclude themselves from the Class[.]" (Id.).

3

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 18 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140-2   Filed 05/21/17   Page 4 of 28   Page ID #:2824
#:2699

Pursuant to the settlement, Toyota developed "Frame Inspection and Replacement

Program" whereby Toyota will inspect all Subject Vehicles for rust to determine whether the

Subject Vehicle's frame should be replaced. (See Dkt. 98, PAO at 4). Specifically,

> [t]he Frame Inspection and Replacement Program will provide prospective
> coverage for replacement of frames on Subject Vehicles in accordance with
> the Rust Perforation Standard and the Inspection Protocol. The duration of
> prospective coverage will begin following the date of Final Order and Final
> Judgment and will be calculated by the longer of 12 years from the date of
> First Use[2] of the Subject Vehicle or, if the Class Member has owned or
> leased the vehicle beyond 12 years from date of First Use, 1 year from the
> date of entry of the Final Order and Final Judgment.[3]

(Dkt. 91, Settlement Agreement at § III.A.1.). "Pursuant to the Frame Inspection and Replacement

Program and the Inspection Protocol, Toyota shall offer an initial inspection of the Subject Vehicles

and additional inspections, as necessary." (Id.). Class members "may have their Subject

Vehicles' frames inspected by authorized Toyota Dealers and, if the vehicle is located in a CRC

State,[4] for evaluation for application of the Corrosion Resistant Compounds ("CRC")."[5] (Id. at §

III.A.3.). For Subject Vehicles registered in CRC States, application of the CRC is available for

a two year period for: (a) the Tundra and Sequoia Subject Vehicles; and (b) the Tacoma Subject

Vehicles for which the CRC has not been previously applied and the frame was not previously

---

[2] "First Use" is defined as "the date that the Subject Vehicle is originally sold or leased." (Dkt. 91, Settlement Agreement at § II.A.19.).

[3] Salvaged vehicles or vehicles with titles marked flood-damaged are not eligible for this benefit. (See Dkt. 91, Settlement Agreement at § III.A.1; id. at § II.A.34.).

[4] CRC States, "which have high road salt use," include Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Maine, Michigan, Minnesota, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Virginia, Vermont, Wisconsin, and West Virginia. (See Dkt. 91, Settlement Agreement at § III.A.3. n. 1).

[5] If a class member disputes the findings of the Toyota Dealer that conducted the inspection, the class member may take the Subject Vehicle to a second Toyota Dealer for another frame inspection. (See Dkt. 91, Settlement Agreement at § III.A.4.).

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 19 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140-2   Filed 05/21/17   Page 5 of 28   Page ID #:2825
#:2900

1 | replaced.[6]  (See id.).

2 |      Inspections of the Subject Vehicles in CRC States that disclose a perforation less than ten

3 | millimeters ("mm") will result in the frame being "cleaned and if the vehicle has not previously

4 | received CRC or a new frame, pursuant to a prior [Limited Service Campaign], CRC will be

5 | applied[.]" (Dkt. 91-1, Exh. 11 (Frame Inspection and Replacement Protocol ("Protocol")) at § III.;

6 | see also Dkt. 91, Settlement Agreement at § II.A.33.).  With respect to all Subject Vehicles, "[i]f

7 | any perforation in the frame is found to be 10 mm or larger, then the frame will be replaced, as

8 | well as all applicable parts and service items incidental to frame replacement, such as cables,

9 | harnesses, pipes, clamps, tubes, hoses, spare tire carrier, spare tire carrier plate, bolts, brackets,

10 | and wires and all fluids will be replaced, as required." (Dkt. 91-1, Exh. 11, Protocol at § IV.).

11 |      "Toyota, at its sole discretion, may periodically mail reminder notices of this benefit to Class

12 | Members after the issuance of the Final Order and Judgment.  Toyota shall mail a reminder notice

13 | to Class Members in CRC States when there [are] only six (6) months remaining for the possible

14 | application of the CRC.  The reminder notices shall notify the Class Members of the timing of this

15 | Frame Inspection and Replacement Program and will encourage Class Members to bring in their

16 | Subject Vehicles for an inspection, pursuant to the terms of [the] Settlement Agreement." (Dkt.

17 | 91, Settlement Agreement at § III.A.3.).

18 |      In addition, "[w]ithout cost to Class Members and upon request from the Class Member,

19 | Toyota shall arrange a complimentary Loaner Vehicle (upon proof of adequate insurance) if the

20 | vehicle is required by the Toyota dealer to remain at the dealership at least overnight pursuant to

21 | the Frame Inspection and Replacement Program, for up to seven (7) days, absent exceptional

22 | circumstances, to eligible Class Members whose Subject Vehicles are undergoing frame

23 | replacement[.]" (Dkt. 91, Settlement Agreement at § III.A.2.; see also Dkt. 91-1, Exh. 11, Protocol

24 | at § VI.).  In appropriate circumstances, where a class member demonstrates a need for a vehicle

25 | similar to the Subject Vehicles, Toyota "shall use good faith efforts to satisfy that request." (Dkt.

26 |

27 | _____

28 |    [6]  The timing of the availability of the CRC will depend on Toyota's ability to obtain the
applicable environmental permits. (See Dkt. 91, Settlement Agreement at § III.A.3.).

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 20 of 42   Page ID
#:2901
Case 2:15-cv-02171-FMO-FFM   Document 140   Filed 05/21/17   Page 6 of 28   Page ID #:2826

1 | 91, Settlement Agreement at § III.A.2.; see also Dkt. 91-1, Exh. 11, Protocol at § VI.).

2 |      During the Claim Period,[7] class members may submit claims for "previously paid out-of-

3 | pocket expenses for frame replacement incurred to address a condition that satisfies the Rust

4 | Perforation Standard on the Subject Vehicles that were not otherwise reimbursed and that were

5 | incurred prior to the Initial Notice Date." (Dkt. 91, Settlement Agreement at § III.B.1.). Claim forms

6 | will be submitted to and processed by the Settlement Notice Administrator. (See id. at §§ III.B.2.-

7 | 3.). The Settlement Notice Administrator will then send timely claims to the Settlement Claims

8 | Administrator, who will process the claims. (See id. at §§ III.B.4.-5.).

9 |      All the "costs and expenses associated with providing the relief and otherwise implementing

10 | the relief specified in Section III of [the] Settlement Agreement shall be the sole obligation of and

11 | paid by Toyota." (Dkt. 91, Settlement Agreement at § III.). Toyota will bear the cost of

12 | disseminating and implementing the notice program, which is estimated to be between $1.75

13 | million and $2.5 million. (See id. at § IV.A.). Toyota has agreed not to oppose an application for

14 | an award of attorney's fees in the amount of $9.75 million and costs and expenses up to $150,000.

15 | (See id. at § VIII.B.). Finally, Toyota has agreed to pay for incentive awards of up to $2,500 per

16 | class representative. (See id. at § VIII.C.).

17 | III.    NOTICE TO CLASS.

18 |      Finegan, the court-appointed settlement notice administrator, has implemented the mutli-

19 | prong notice program previously approved by the court. (See Dkt. 136, Plaintiffs' Memorandum

20 | in Support of Joint Motion for Final Approval of Class Action Settlement Agreement ("Plfs. Br.")

21 | at 9-10; Dkt. 135, Toyota's Memorandum of Points and Authorities in Support of Plaintiffs' Motion

22 | for Entry of an Order Granting Final Approval of Class Action Settlement and Issuance of Related

23 | Orders ("Def. Br.") at 14-19; Dkt. 98, PAO at 25-28 (approving multi-pronged notice program)).

24 | Upon receiving Vehicle Identification Numbers ("VINs") for the Subject Vehicles from Toyota,

25 | Heffler sent the information to R.L. Polk & Company ("Polk"), which in turn produced a list of all

26 |

27 |    [7] The Claim Period will "run from the date of the Initial Notice Date up to and including sixty

28 | (60) days after the Court's issuance of the Final Order and Final Judgment." (Dkt. 91, Settlement
Agreement at § II.A.6.).

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 21 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140   Filed 05/21/17   Page 7 of 28   Page ID #:2827
#:2902

1   the current and former owners of the Subject Vehicles. (See Dkt. 133-1, Declaration of Jeanne

2   C. Finegan, APR, Concerning Implementation of Class Member Notification ("Finegan Decl.") at

3   ¶¶ 12-13). On January 3, 2017, Heffler began mailing direct notice to the class by First Class

4   mail.[8] (See id. at ¶ 14 & Exh. B). Heffler mailed a total of 2,618,667 direct mail notices, excluding

5   re-mailed and forwarded notices. (See id. at ¶ 15). Of the 2,618,667 direct mail notices, 197,456

6   were undeliverable as addressed. (See id. at ¶ 16). Of these, Heffler obtained updated addresses

7   for 28,701, and prior to March 1, 2017, 28,652 were re-mailed to the updated addresses. (See

8   id.). For the remaining 183,911 notices without forwarding addresses, Heffler conducted address

9   searches and was successful in locating new addresses for 133,566, and re-mailed the notice to

10   them. (Id. at ¶ 17). In total, Heffler mailed or re-mailed direct notice to approximately 98.7 percent

11   of the class members identified by Polk. (See id. at ¶ 18).

12        In addition, Heffler had the notice previously approved by the court published (see Dkt. 98,

13   PAO at 26), in People Magazine and Sports Illustrated (Superbowl Preview edition), (see Dkt. 133-

14   1, Finegan Decl. at ¶¶ 22-23 & Exh. D), and in several newspapers in the U.S. Territories, (see

15   id. at ¶ 25 & Exh. E), between January 3, 2017, and February 22, 2017. (See id. at ¶ 20). During

16   the same period, "over 69,800,000 online ads were served across 5,900 websites[.]" (Id. at ¶ 28).

17   "Banner ads were served across five Internet networks including Xaxis, Conversant, Yahoo!,

18   Pulpo, a Spanish Media Network, and to local television, newspaper and radio station websites

19   nationwide through Cross Devise Media Group." (Id.; see also id. at ¶ 32 & Exh. F). Banner ads

20   also appeared on Facebook, Instagram, and Twitter. (See id. at ¶¶ 35-37).

21        Heffler also issued a press release, (see Dkt. 133-1, Finegan Decl. at ¶ 39 & Exh. G), and

22   maintained a settlement website, www.toyotaframesettlement.com which, as of March 23, 2017,

23   had received 249,822 visits with 299,979 sessions. (See Dkt. 133-1, Finegan Decl. at ¶¶ 40-41).

24   Finally, Heffler established and continues to maintain an Interactive Voice Response ("IVR")

25   system via a toll-free telephone number, which received a total of 47,259 calls as of March 23,

26

27

---

28   [8] The last initial direct mail notice occurred on February 21, 2017. (See Dkt. 133-1, Finegan
Decl. at ¶ 15). The direct mail notice program concluded on March 1, 2017. (Id. at ¶ 18).

1 | 2017. (Id. at ¶ 42).

2   According to Finegan, "over 95 percent of targeted Class Members are estimated to have
3 | been reached by the media program, on average, more than 5 times. (Dkt. 133-1, Finegan Decl.
4 | at ¶ 44; see also id. at ¶ 4). As of March 27, 2017, Heffler received 59 requests for exclusion,
5 | (see Dkt. 133-1, Finegan Decl. at ¶ 43), and the court received 22 objections to the settlement.[9]
6 | (See Dkt. 104-110, 112, 116-119, 121-130).

7 | **LEGAL STANDARD**

8   Federal Rule of Civil Procedure 23 provides that "the claims, issues, or defenses of a
9 | certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The
10 | primary concern of [Rule[10] 23(e)] is the protection of th[e] class members, including the named
11 | plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers
12 | for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982), cert.
13 | denied, 459 U.S. 1217 (1983). Whether to approve a class action settlement is "committed to the
14 | sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th
15 | Cir.), cert. denied, 506 U.S. 953 (1992), who must examine the settlement for "overall fairness."
16 | Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Neither district courts nor
17 | appellate courts "have the ability to delete, modify or substitute certain provisions. The settlement
18 | must stand or fall in its entirety." Id. (internal quotation marks and citation omitted).

19   In order to approve a settlement in a class action, the court must conduct a three-step
20 | inquiry. First, it must assess whether defendants have met the notice requirements under the
21 | Class Action Fairness Act ("CAFA").  See 28 U.S.C. § 1715(d).  Second, it must determine
22 | whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Finally, it must conduct
23 | a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." See
24 | Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the

25

---

26   [9]  This does not include a Notice of Intent to Appear filed by one class member, Andrew
Behlmann, since no objection was actually filed. (See Dkt. 113). Moreover, as discussed below,
27 | some of the objections were filed by individuals who are not class members.

28   [10]  All "Rule" references are to the Federal Rules of Civil Procedure.

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 23 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140   Filed 05/21/17   Page 9 of 28   Page ID #:2829
#:2904

1   Rule 23(e)(2) standard); Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 972 (E.D. Cal.

2   2012) (conducting three-step inquiry).

3         In determining whether a settlement agreement is fair, adequate, and reasonable, the court

4   must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk,

5   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action

6   status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

7   completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

8   presence of a governmental participant; and (8) the reaction of the class members of the proposed

9   settlement." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting

10  Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

11        However, when "a settlement agreement is negotiated prior to formal class certification,

12  consideration of these eight . . . factors alone is not enough to survive appellate review."

13  Bluetooth, 654 F.3d at 946 (emphasis in original).  This is because, "[p]rior to formal class

14  certification, there is an even greater potential for a breach of fiduciary duty owed the class during

15  settlement."  Id.  District courts, therefore, also must determine "that the settlement is not the

16  product of collusion among the negotiating parties."  Id. at 947 (internal quotation and alteration

17  marks omitted).  In making that determination, courts should look for signs of collusion, including

18  "(1) when counsel receive a disproportionate distribution of the settlement, or when the class

19  receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties

20  negotiate a `clear sailing' arrangement providing for the payment of attorneys' fees separate and

21  apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to

22  defendants rather than be added to the class fund[.]"  Id. (internal quotation marks and citations

23  omitted).

24                          **DISCUSSION**

25  I.     FINAL APPROVAL OF CLASS SETTLEMENT.

26       A.    Class Action Fairness Act.

27        CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action

28  is filed in court, each defendant that is participating in the proposed settlement shall serve [notice

Case 2:15-cv-02171-FMO-FFM Document 143 Filed 06/20/17 Page 24 of 42 Page ID
Case 2:15-cv-02171-FMO-FFM Document 149 Filed 05/21/17 Page 10 of 28 Page ID
#:2830

of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice, which must include, among other things, "any proposed or final notification to class members[,]" and "any proposed or final class action settlement[.]" 28 U.S.C. §§ 1715(b)(3) & (4). The court may not grant final approval of a class action settlement until the CAFA notice requirement is met. See id. at § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]").

Here, the Settlement Agreement was filed on November 15, 2016. (See Dkt. 91, Settlement Agreement). Heffler provided the required CAFA notice on November 18, 2016. (See Dkt. 133-1, Finegan Decl. at ¶ 19 & Exh. C). As of April 10, 2017, there have been no objections to the settlement from the state and federal officials that received the CAFA notice.[11] (See Dkt. 135, Def. Br. at 13).

B. Class Certification.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 98, PAO at 11-18 & 28). Because circumstances have not changed, and for the reasons set forth in the Court's Preliminary Approval Order, the court affirms its order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").

C. Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

---

[11] The Attorney General of the State of California requested that certain language be added to the Long Form Notice, which was added following court approval. (See Dkt. 103, Court's Order of December 23, 2016; Dkt. 135, Def. Br. at 13).

Case 2:15-cv-02171-FMO-FFM  Document 143  Filed 06/20/17  Page 25 of 42  Page ID
Case 2:15-cv-02171-FMO-FFM  Document 140  Filed 05/21/17  Page 11 of 28  Page ID
#:2831

1   Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including

2   individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice

3   requirements for classes certified under Rule 23(b)(3)).

4        After undertaking the required examination, the court approved the form of the proposed

5   class notice. (See Dkt. 98, PAO at 25-28). As discussed above, the notice program previously

6   approved by the court has been fully implemented by Heffler. See supra at Background § III.

7   Accordingly, based on its prior findings and the record before it, the court finds that the class

8   notice and the notice process fairly and adequately informed the class members of the nature of

9   the action, the terms of the proposed settlement, the effect of the action and release of claims, the

10  class members' right to exclude themselves from the action, and their right to object to the

11  proposed settlement. (See Dkt. 98, PAO at 25-28).

12       D.    Whether the Class Settlement is Fair, Adequate and Reasonable.

13             1.    **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity,**

14                   **and Duration of Further Litigation.**

15       In evaluating the strength of the case, the court should assess "objectively the strengths

16  and weaknesses inherent in the litigation and the impact of those considerations on the parties'

17  decisions to reach [a settlement]." Adoma, 913 F.Supp.2d at 975. "In assessing the risk,

18  expense, complexity, and likely duration of further litigation, the court evaluates the time and cost

19  required." Id. at 976.

20       While plaintiffs believe their claims have merit, they also recognize the substantial risks

21  involved in continuing this litigation and are "mindful of the inherent problems of proof and possible

22  defenses to the claims asserted in the litigation and recognize the difficulties in establishing liability

23  on a class-wide basis through summary judgment and at trial." (Dkt. 136, Plfs. Br. at 15; see also

24  Dkt. 98, PAO at 21-22 (noting substantial litigation risks)). "Toyota has aggressively maintained

25  its position regarding class certification and liability." (Dkt. 136, Plfs. Br. at 15; see also Dkt. 88-2,

26  Blood Decl. at ¶ 3). Toyota twice moved to dismiss the action and in connection with the second

27  motion to dismiss, the court dismissed six claims with prejudice, (see Dkt. 61, Court's Order of

28  March 8, 2016, at 30), and struck allegations based upon defendant's alleged misrepresentations.

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 26 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140   Filed 05/21/17   Page 12 of 28   Page ID
#:2832

1 | (See id.).  With respect to the SAC, had the case not settled, Toyota intended to argue that

2 | plaintiffs' California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.,

3 | claim failed "because there are too many conflicts between the [CLRA] and the consumer

4 | protection laws of the states where the named Plaintiffs purchased subject vehicles." (Dkt. 135,

5 | Def. Br. at 22).  Moreover, in the Related Action, which is currently stayed, the court dismissed

6 | with prejudice Burns's claims for breach of express and implied warranty. (See id. at 21-22).

7 | In addition to the risks faced in continuing the litigation, the resolution of the action would

8 | be lengthy, complex, and impose significant costs on all parties. (See Dkt. 136, Plfs. Br. at 15;

9 | Dkt. 135, Def. Br. at 20-21).  Continued litigation would "likely include substantial motion practice,

10 | extensive discovery, class certification proceedings, dispositive motion practice and trial." (Dkt.

11 | 136, Plfs. Br. at 15; see also Dkt. 135, Def. Br. at 21).  As plaintiffs note, "[i]n high-value cases

12 | such as this one involving allegations of a product defect, a battle of experts is almost a certainty[,

13 | and a]s such, expensive expert reports and testimony would be necessary to prove the existence

14 | of a defect, show that it is common to Subject Vehicles, and prove that it caused excessive rust

15 | corrosion and perforation unrelated to normal surface rust." (Dkt. 136, Plfs. Br. at 15).  Given that

16 | this case has been ongoing for more than two years, and that any decision on the merits would

17 | likely be appealed, (see id. at 15-16), the court finds it significant that the class members will

18 | receive "immediate recovery by way of the compromise to the mere possibility of relief in the

19 | future, after protracted and expensive litigation." Nat'l Rural Telecommc'ns. Coop. v. DIRECTV,

20 | Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004).  In short, the court finds that this factor supports a

21 | finding that the settlement is fair, adequate, and reasonable.

22 | **2.   The Risk of Maintaining Class Action Status Through Trial.**

23 | Because the parties reached settlement prior to the filing of a motion for class certification,

24 | plaintiffs faced a risk that the class would not be certified.  Accordingly, this factor weighs in favor

25 | of approving the settlement. See Chambers v. Whirlpool Corp., 2016 WL 5922456, *6 (C.D. Cal.

26 | 2016) ("Because plaintiffs had not yet filed a motion for class certification, there was a risk that the

27 | class would not be certified.").

28 |

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 27 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140   Filed 05/21/17   Page 13 of 28   Page ID
#:2833

3.     **The Amount Offered in Settlement**.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court concluded that the settlement benefits were fair, adequate and reasonable, in light of the litigation risks in the case. (See Dkt. 98, PAO at 20-22). Accordingly, this factor also weighs in favor of final approval.

4.     **The Extent of Discovery Completed and the Stage of Proceedings**.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecommc'ns. Coop., 221 F.R.D. at 528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Id. at 527. The court previously examined these factors at length, noting that the parties had conducted extensive discovery, (see Dkt. 98, PAO at 19), and "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id. at 20), which enabled them to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id.). The parties therefore entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions. See Nat'l Rural Telecommc'ns, 221 F.R.D. at 527-28 (noting that parties' examination of the factual and legal bases of the disputed claims through completion of discovery "strongly militates in favor of the Court's approval of the settlement"); Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted). This factor also supports approval of the settlement.

5.     **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects

Case 2:15-cv-02171-FMO-FFM  Document 143  Filed 06/20/17  Page 28 of 42  Page ID
Case 2:15-cv-02171-FMO-FFM  Document 140  Filed 05/21/17  Page 14 of 28  Page ID
#:2834

1 | each party's expected outcome in the litigation." <u>Nat'l Rural Telecommc'ns</u>, 221 F.R.D. at 528

2 | (internal quotation marks and citation omitted). The court has previously noted the diligence,

3 | experience, and competency of class counsel. (<u>See</u> Dkt. 98, PAO at 14-15). Moreover, according

4 | to plaintiffs, the "Settlement is a tremendous result for the Class[.]" (Dkt. 136, Plfs. Br. at 20).

5 | Thus, this factor also supports approval of the settlement.

6 |       6.   **The Presence of a Governmental Participant.**

7 |      There is no government participant in this matter. Accordingly, this factor is inapplicable.

8 | <u>See</u> <u>Wren v. RGIS Inventory Specialists</u>, 2011 WL 1230826, *10, <u>supplemented by</u> 2011 WL

9 | 1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this

10 | factor inapplicable to the analysis).

11 |       7.   **The Reaction of Class Members to the Proposed Settlement.**

12 |      "It is established that the absence of a large number of objections to a proposed class

13 | action settlement raises a strong presumption that the terms of a proposed class settlement action

14 | are favorable to the class members." <u>Nat'l Rural Telecommc'ns</u>, 221 F.R.D. at 529. Here, the

15 | reaction of the class has been "very positive." (<u>See</u> Dkt. 136, Plfs. Br. at 21; <u>see also</u> Dkt. 135

16 | Def. Br. at 29 (characterizing the reaction of the class as "overwhelmingly favorable")). While

17 | approximately 2.6 million class members received notice of the settlement, including direct mail

18 | notice, (<u>see</u> Dkt. 133-1, Finegan Decl. at ¶¶ 12-17; Dkt. 136, Plfs. Br. at 21; Dkt. 135, Def. Br. at

19 | 29-30), only 59 individuals timely requested exclusion, (<u>see</u> Dkt. 133-1, Finegan Decl. at ¶ 43),

20 | which is 0.00225% of those who received notice, (<u>see</u> Dkt. 135, Def. Br. at 30), and only 22 class

21 | members filed objections to the settlement, (<u>see id.</u>; Dkt. 136, Plfs. Br. at 21), which represents

22 | 0.0008% of those who received notice of the settlement. Not only is the percentage of objections

23 | extremely low but, as discussed below, the objections are without merit and do not undermine the

24 | settlement. <u>See</u> <u>Asghari v. Volkswagen Group of Am., Inc.</u>, 2015 WL 12732462, *22 (C.D. Cal.

25 | 2015) (noting that out of 224,853 class members who received mailed notice, 395 opted-out and

26 | 15 filed objections and finding that "[t]he comparatively low number of opt-outs and objectors

27 | indicates that generally, class members favor the proposed settlement and find it fair"). Finally,

28 | it should be noted that no objectors appeared at the final approval hearing.

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 29 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140   Filed 05/21/17   Page 15 of 28   Page ID
#:2835

1                          a.     *Objections from Non-Class Members.*

2         The court received objections from individuals: (1) whose vehicles are not included in the

3 class definition; (2) who are not the owners/lessees of a Subject Vehicle; or (3) who excluded

4 themselves from the settlement.  (See Dkt. 104, Objection of John David Judge; Dkt. 107,

5 Objection of Christopher Michael Mewes (excluded himself from settlement); Dkt. 133-1, Finegan

6 Decl. at ¶ 43 & Exh. H; Dkt. 110, Objection of Wade King (objected on behalf of adult son); Dkt.

7 127, Objection of Michael J. Szewc (purchased vehicle after entry of the Court's Preliminary

8 Approval Order).  These individuals do not qualify as class members and thus lack standing to

9 object to the settlement.  See In re Hydroxycut Marketing and Sales Practices Litig., 2013 WL

10 5275618, *2 (S.D. Cal. 2013) ("[N]on-class members have no standing to object.") (internal

11 quotation marks omitted).

12                          b.     *Objections by Pro Se Class Members.*

13         Several objectors contend that the settlement is inadequate or unfair because it does not

14 provide compensation for the diminished value of the Subject Vehicles.  (See Dkt. 105, Objection

15 of James Jacobsen ("Jacobsen Obj."); Dkt. 116, Objection of George William Kimball ("Kimball

16 Obj."); Dkt. 121, Objection of Paul A. Haynes ("Haynes Obj."); Dkt. 125, Objection of Aaron Lee

17 Moyer ("Moyer Obj."); Dkt. 126, Objection of James O. Stine ("Stine Obj.") at ¶ 18); (see also Dkt.

18 122, Objection of Erik Viscarra ("Viscarra Obj.") (referring to "resale value of the vehicle")).  For

19 instance, Jacobsen objects because "the settlement does not cover loss in value for frame

20 corrosion when selling a class member vehicle." (Dkt. 105, Jacobsen Obj.); (see also Dkt. 116,

21 Kimball Obj. at 1 (stating settlement does not cover owners who sold their vehicles and "received

22 lesser value than they would have without the frame defects"); Dkt. 121, Haynes Obj. at 1 (stating

23 settlement does not cover those who have "realized and suffered value diminution")).  These

24 objections, however, fail to take "into account the difficulties of establishing classwide diminution

25 in value damages . . . with owners buying and selling . . . at different times and in different

26 circumstances." Eisen v. Porsche Cars North America, Inc., 2014 WL 439006, *8 (N.D. Cal.

27 2014). "[D]iminution in value damages pose great difficulties in a class action context, particularly

28 when considering the challenge of proving such damages on a classwide basis." Asghari, 2015

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 30 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140-1   Filed 05/21/17   Page 16 of 28   Page ID
#:2836

1   WL 12732462, at *26 ("Plaintiffs assert that, although they sought such damages in the complaint,

2   they abandoned their effort to obtain them during protracted negotiations with defendants,

3   particularly given the difficulties that a prayer for such damages posed at the class certification and

4   trial stages.  Considering the attendant difficulty of proving and recovering such damages on a

5   classwide basis, the court believes plaintiffs' decision not to pursue such damages as part of the

6   settlement was neither unfair nor unreasonable.") (footnote omitted).  As one court has noted,

7   "courts have rejected the notion that class action settlements must provide for diminished value."

8   Id. (citing cases).

9        Some class members object on the ground that CRC is only available for vehicles in certain

10  states. (See Dkt. 106, Objection of Donald J. McCrank ("McCrank Obj.") (objects because CRC

11  relief is not available in Florida); Dkt. 108, Objection of Lewis C. Ross ("Ross Obj.") (objects

12  because CRC not available in Montana); Dkt. 125, Moyer Obj. (objects because CRC not available

13  in Iowa)); (see also Dkt. 91, Settlement Agreement at § III.A.3. & id. at n. 1).   Under the

14  circumstances, the court is persuaded that the parties had a sound basis for limiting the availability

15  of CRC to the states set forth in the Settlement Agreement. (See Dkt. 91, Settlement Agreement

16  at § III.A.3. & id. at n. 1). The parties' determination of which states should be designated as CRC

17  States was based on reasonable and appropriate criteria such as:  (1) road salt usage; (2)

18  estimated frame replacement trend rates; and (3) actual frame replacements in the states. (See

19  Dkt. 135, Def. Br. at 34-35; Dkt. 135-1, Declaration of Howard Abrahams in Support of Final

20  Approval of Class Action Settlement Pursuant to 28 U.S.C. § 1746 at ¶¶ 4-7). Further, as plaintiffs

21  note, the fact that CRC treatment is not available in all 50 states "does not take away from the

22  excellent benefits made available under the Settlement."  (See Dkt. 136, Plfs. Br. at 25).

23        Other class members object to the rust perforation standard of 10mm for frame

24  replacements, (see Dkt. 91-1, Exh. 11 (Protocol)), claiming it is arbitrary, too strict, or unfair. (See

25  Dkt. 109, Objection of Clarence Cox, Jr. ("Cox Obj."); Dkt. 117, Objection of Martin Lyons ("Lyons

26  Obj."); Dkt. 119, Objection of Dean M. Schantzen ("Schantzen Obj."); Dkt. 122, Viscarra Obj.; Dkt.

27  126, Stine Obj.; Dkt. 128, Objection of Francis S. Capsan ("Capsan Obj.")). For example, Lyons

28  characterizes the standard as "entirely arbitrary[,]" (Dkt. 117, Lyons Obj. at ¶ 1), and Stine

Case 2:15-cv-02171-FMO-FFM  Document 143  Filed 06/20/17  Page 31 of 42  Page ID
Case 2:15-cv-02171-FMO-FFM  Document 140  Filed 05/21/17  Page 17 of 28  Page ID
#:2837

1  contends that it is "arbitrarily established and is inadequate . . . unfair, [and] unreasonable[.]" (See

2  Dkt. 126, Stine Obj. at ¶¶ 5-6).  However, the rust perforation standard was the product of

3  substantial negotiations and consultation with metallurgy and vehicle structural integrity and frame

4  engineering experts. (See Dkt. 136, Plfs. Br. at 27; see also Dkt. 88-2, Blood Decl. at ¶¶ 42-45).

5  Also, the 10mm perforation standard is based on a prior LSC. (See Dkt. 135, Def. Br. at 33). As

6  the parties note, the rust perforation standard is "designed to address the complained-of

7  conduct[.]" (Dkt. 136, Plfs. Br. at 27); (see Dkt. 135, Def. Br. at 32-33 (responding that the

8  standard "was established to address the frame issue as alleged in the [SAC]")).

9        Some objectors argue that the Frame Inspection and Replacement Program is too short.

10  (See Dkt. 117, Lyons Obj. at ¶ 4; Dkt. 119, Schantzen Obj. at ¶ 2; Dkt. 125, Moyer Obj. at 1; Dkt.

11  130, Objection of Dominick DiMassino Jr. at 1)). The Settlement Agreement provides prospective

12  relief for 12 years from the date a Subject Vehicle was originally sold or leased, (see Dkt. 91,

13  Settlement Agreement at §§ III.A.1. & II.A.19.), or if a class member owns or leases a vehicle that

14  was first sold or leased over 12 years ago, for one year from the date of the final order and

15  judgment. (See id. at § III.A.1.). Under the circumstances, the court is persuaded that the length

16  of the prospective relief is reasonable and appropriate. See, e.g., Eisen, 2014 WL 439006, at *7

17  (finding limitation on recovery to damage occurring within 10 years and 130,000 miles to be fair

18  and reasonable).

19        Other objectors oppose the implementation of the Frame Inspection and Replacement

20  Program by Toyota Dealers. (See Dkt. 106, McCrank Obj. at 1; Dkt. 117, Lyons Obj. at ¶ 3; Dkt.

21  126, Stine Obj. at ¶ 7). For instance, McCrank states that he does "not trust Toyota dealers to do

22  the inspections" (Dkt. 106, McCrank Obj. at 1); Lyons believes "dealerships lack the competency

23  to perform a task much less involved than a complete frame replacement[,]" (Dkt. 117, Lyons Obj.

24  at ¶ 3); and Stine claims that Toyota Dealers are "interested parties" who will "mask[] and prevent[]

25  actual remedies and violate[] class members' rights to due process."[12] (Dkt. 126, Stine Obj. at ¶

26  _____

27     [12]  Stine also contends that there is no right of appeal from a determination by a Toyota dealer.
   (See Dkt. 126, Stine Obj. at ¶ 7). However, pursuant to the Settlement Agreement, a class
28  member who disagrees with the assessment of a Toyota Dealer, is entitled to a second inspection

Case 2:15-cv-02171-FMO-FFM  Document 143  Filed 06/20/17  Page 32 of 42  Page ID
Case 2:15-cv-02171-FMO-FFM  Document 140-1  Filed 05/21/17  Page 18 of 28  Page ID
#:2838
#:2813

1    7). Such objections do not undermine the fairness of the settlement. As plaintiffs note, Toyota

2    Dealers, who have the support of Toyota, have the expertise and experience to inspect, replace,

3    and apply CRC to the frames of the Subject Vehicles. (See Dkt. 136, Plfs. Br. at 25). Moreover,

4    Toyota Dealers have financial incentives to encourage inspection and replacement of frames.

5    (See id. at 25-26). And if a class member disagrees with the result of an inspection, he or she

6    may obtain a second inspection from another Toyota Dealer. (See Dkt. 91, Settlement Agreement

7    at § III.A.4.); see, e.g., Eisen, 2014 WL 439006, at *6 ("Authorized dealerships with the full support

8    of [defendant]'s sophisticated technical guidance and equipment can most effectively perform

9    Porsche engine repairs, and [defendant] has an unquestionable interest in seeing that these

10    repairs are conducted correctly.  Far from class members being unfairly prejudiced by this

11    requirement, this provision ensures that repairs will be made in the proper manner, with proper

12    parts by knowledgeable and properly trained technicians.").

13         Some class members object, claiming that they should be given monetary (or greater)

14    compensation, (see Dkt. Dkt. 106, McCrank Obj. at 2 ("I think that Toyota should . . . compensate

15    us[.]"); Dkt. 117, Lyons Obj. at ¶ 5 ("The settlement should include some compensatory

16    provisions[.]"); Dkt. 122, Viscarra Obj. at 1 ("I should be given money from someone responsible

17    in the settlement [] to cover the cost of the car rental fees and parts and labor to replace the

18    frame.");[13] Dkt. 126, Stine Obj. at ¶ 8 (stating settlement "only provides de minimis discretionary

19    compensation for documented, out-of-pocket, past repairs of frame corrosion, and only if the

20    repairs retroactively meet the unreasonable Rust Perforation Standard") & ¶ 13 (contending the

21    monetary compensation is insufficient given Toyota's actions); Dkt 129, Burger Obj. at ¶ 1 ("I

22    request that the frame of my truck be completely replaced by Toyota or my vehicle purchased for

23    150% of the 'Good' Kelly Bluebook Value without further inspections and conditions.")), or

24

25    _____

26    by another dealer. (See Dkt. 91, Settlement Agreement at § III.A.4.).

27       [13] It appears that the Settlement Agreement provides the type of compensation Viscarra seeks.
(See Dkt. 91-1, Exh. 11, Protocol at § IV.; see also id. at §§ I & VI..; Dkt. 91, Settlement

28    Agreement at § III.A.2.).

Case 2:15-cv-02171-FMO-FFM Document 143 Filed 06/20/17 Page 33 of 42 Page ID
Case 2:15-cv-02171-FMO-FFM Document 140 Filed 05/21/17 Page 19 of 28 Page ID
#:2839

replacement frames irrespective of the Rust Perforation Protocol.[14] (See Dkt. 109, Cox Obj. at 2 ("I see only one acceptable corrective action. The frame should be replaced."); Dkt. 119, Schantzen Obj. at ¶ 6 ("[T]he frames of all Toyota pickups in the applicable states should be replaced . . . if there is any significant appearance of smaller perforations[.]"); Dkt. 125, Moyer Obj. at 1 ("I don't think the settlement is fair . . . if we don't get a new frame to prevent a frame failure."); Dkt. 128, Capsan Obj. at 2 (arguing Toyota should "replace all of the defective frames . . . not just those frames with perforations"); Dkt 129, Burger Obj. at ¶ 1). Additionally, one objector suggests that class members be provided detailed inspection reports of their vehicles. (See Dkt. 119, Schantzen Obj. at ¶ 7).

Having carefully reviewed and considered the foregoing objections, the court finds that they are without merit because they are "tantamount to complaining that the settlement should be 'better,' which is not a valid objection."[15] Browning v. Yahoo! Inc., 2007 WL 4105971, *5 (N.D. Cal. 2007); see Hanlon, 150 F.3d at 1027 ("Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate."); Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012), cert. denied, 134 S.Ct. 8 (2013) ("As our precedents have made clear, the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court."). Moreover, to the extent class members object that the benefits provided by the settlement are insufficient or inadequate, they could have opted-out. See Eisen, 2014 WL 439006, at *7 ("Federal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms."); Aarons v. BMW of North Am., LLC, 2014 WL 4090564, *13 (C.D. Cal. 2014) ("To the extent [objectors] believe the

---

[14] Isaac K. Perez and Dalila Perez describe the rust issues with their vehicle, but do not provide a specific objection to the settlement. (See Dkt. 112, Objection of Isaac K. Perez/Dalila Perez).

[15] This includes the remaining objections made by pro se objectors, none of which undermine the fairness, adequacy, and reasonableness of the settlement.

Case 2:15-cv-02171-FMO-FFM Document 143 Filed 06/20/17 Page 34 of 42 Page ID
Case 2:15-cv-02171-FMO-FFM Document 140-15 Filed 05/21/17 Page 20 of 28 Page ID
#:2840

1    settlement is unfair, they could have opted out of the Class.").

2        Finally, one objector challenges the requested attorney's fees. (See Dkt. 126, Stine Obj.

3    at ¶ 9). However, he does not elaborate on the objection other than to say that the requested

4    attorney's fees are excessive and unreasonable given the lack of adequate relief. (See id.). The

5    court has an independent duty to "carefully assess the reasonableness of a fee amount spelled

6    out in a class action settlement agreement[,]" Staton, 327 F.3d at 963, and has done so in

7    connection with the Fees Motion. See infra at § II.A.

8              c.    *Objections by Represented Class Members.*

9        The court has received objections by class members Cemil Hope ("Hope") and Gay

10    Hopkins ("Hopkins") who are represented by counsel. (See Dkt. 123, Objection of Cemil Hope

11    ("Hope Obj."); Dkt. 124, Objection of Proposed Class Action Settlement ("Hopkins Obj.")).

12        Hope's objection, filed by attorney Bradley Salter ("Salter"), challenges the certification of

13    the settlement class. (See Dkt. 123, Hope Obj. at 1-6). In granting preliminary approval, the court

14    carefully assessed the Rule 23 requirements and found them satisfied, (see Dkt. 98, PAO at 11-

15    18), and the Hope Objection does not compel a different outcome. Next, Hope challenges the

16    adequacy of the settlement. (See Dkt. 123, Hope Obj. at 6-8). However, the court has determined

17    that the settlement is fair, adequate, and reasonable, and since it is based on prospective relief

18    in the form of free frame inspections and replacements (if warranted), the actual monetary value

19    of the settlement does not undermine that determination. With respect to the Hanlon factors,

20    Hope considered only the preliminary approval motion, rather than the instant Motion where

21    plaintiffs and defendant addressed the Hanlon factors. See supra at § I.D. Moreover, with respect

22    to attorney's fees, (see Dkt. 123, Hope Obj. at 8-13), the court has, as noted above, an

23    independent duty to "carefully assess the reasonableness of a fee amount spelled out in a class

24    action settlement agreement[,]" Staton, 327 F.3d at 963, and has done so in connection with the

25    Fees Motion. See infra at § II.A.

26        The objection filed by Hopkins through her counsel, Michael Creamer ("Creamer"), also

27    contends that the settlement class may not be certified. (See Dkt. 124, Hopkins Obj. at 2-4). For

28    the same reasons as above, this contention also lacks merit. Hopkins next contends that the

Case 2:15-cv-02171-FMO-FFM Document 143 Filed 06/20/17 Page 35 of 42 Page ID
Case 2:15-cv-02171-FMO-FFM Document 140 Filed 05/21/17 Page 21 of 28 Page ID
#:2841

1    settlement is unclear about certain terms. For instance, she notes that the Settlement Agreement

2    does not define what the term "as necessary" means in connection additional inspections following

3    the initial one. (See id. at 4-5). The court has carefully reviewed the Settlement Agreement and

4    finds that all important terms are clearly defined. With respect to diminished value, as noted

5    above, the fact that the settlement does not provide compensation for diminished value damages

6    does not undermine the fairness of the settlement. See, e.g., Asghari, 2015 WL 12732462, at *26

7    ("[D]iminution in value damages pose great difficulties in a class action context, particularly when

8    considering the challenge of proving such damages on a classwide basis. Plaintiffs assert that,

9    although they sought such damages in the complaint, they abandoned their effort to obtain them

10   during protracted negotiations with defendants, particularly given the difficulties that a prayer for

11   such damages posed at the class certification and trial stages. Considering the attendant difficulty

12   of proving and recovering such damages on a classwide basis, the court believes plaintiffs'

13   decision not to pursue such damages as part of the settlement was neither unfair nor

14   unreasonable."). With respect to attorney's fees, and the Bluetooth factors, the court has an

15   independent obligation to address those issues, and does so below.

16        In short, having considered all the arguments set forth by the pro se and represented

17   objectors, the court finds the objections are without merit. Further, the limited requests for

18   exclusion and the small number of objections support approval of the settlement. See Nat'l Rural

19   Telecommc'ns, 221 F.R.D. at 529; Churchill Vill., L.L.C., 361 F.3d at 577 (upholding final approval

20   of a class settlement where "only 45 of the approximately 90,000 notified class members objected

21   to the settlement" and 500 class members opted out); Chambers, 2016 WL 5922456, at *6

22   (granting final approval of settlement where out of class of approximately 3.6 million, fewer than

23   500 requested exclusion and only 15 filed objections, representing "a 0.0139% exclusion rate and

24   a 0.0004% objection rate"); Bostick v. Herbalife Int'l of Am., Inc., 2015 WL 12731932, *26 (C.D.

25   Cal. 2015) (granting final approval where 18 of approximately 1.5 million class members filed

26   objections and 687 opted out).

27        E.    Whether the Settlement is the Product of Collusion.

28        Because the parties negotiated and reached a settlement prior to formal class certification,

Case 2:15-cv-02171-FMO-FFM  Document 143  Filed 06/20/17  Page 36 of 42  Page ID
Case 2:15-cv-02171-FMO-FFM  Document 140-1  Filed 05/21/17  Page 22 of 28  Page ID
#:2842

1    the court must ensure that the settlement was not the product of collusion. See Bluetooth, 654

2    F.3d at 947-48. In granting preliminary approval of the settlement, the court carefully scrutinized

3    the settlement and concluded that "there is no evidence of collusion or fraud leading to, or taking

4    part in, the settlement negotiations between the parties." (Dkt. 98, PAO at 19). Moreover, the

5    court determined that "[t]he parties clearly had a sound basis for measuring the terms of the

6    settlement against the risks of continued litigation, and there is no evidence that the settlement

7    is 'the product of fraud or overreaching by, or collusion between, the negotiating parties[.]'" (Id.

8    at 20). The circumstances have not changed, and while the settlement contains a clear-sailing

9    provision,[16] the court has not seen any signs of collusion in the negotiation of the settlement or

10   other conflicts of interest to undermine the court's approval of the settlement. Under the

11   circumstances here, the court finds that the settlement is fair, reasonable, and adequate, and not

12   the product of collusion among the parties.

13   II.    ATTORNEY'S FEES, COSTS AND SERVICE AWARDS.

14          A.    Attorney's Fee Award.

15          The Settlement Agreement provides that class counsel will apply for an attorney's fees

16   award of $9.75 million. (See Dkt. 91, Settlement Agreement at § VIII.B.). Class counsel now seek

17   such attorney's fees. (See Dkt. 111-1, Memorandum in Support of Plaintiffs' Motion for Attorneys'

18   Fees, Expenses and Service Awards ("Fees Br.") at 1 & 24).

19          Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

20   attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

21   Fed. R. Civ. P. 23(h). In diversity actions such as this one, the Ninth Circuit applies state law to

22   determine the right to fees and the method for calculating fees. See Mangold v. Cal. Public Util.

23   Commc'n, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state

24   law in determining not only the right to fees, but also in the method of calculating the fees.");

25   

26          [16] "In general, a clear sailing agreement is one where the party paying the fee agrees not to
     contest the amount to be awarded by the fee-setting court so long as the award falls beneath a
27   negotiated ceiling." In re Toys R Us, 295 F.R.D. at 458; see also Allen v. Bedolla, 787 F.3d 1218,
     1224 (9th Cir. 2015) (noting that a clear sailing agreement is "an arrangement where defendant
28   will not object to a certain fee request by class counsel").

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 37 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140-1   Filed 05/21/17   Page 23 of 28   Page ID
#:2843

Rodriguez v. Disner, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees.").

The California Supreme Court recently held that courts have discretion to choose among two different methods for calculating a reasonable attorney's fees award. See Laffitte v. Robert Half Int'l Inc., 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."); see also Bluetooth, 654 F.3d at 942 ("courts have discretion to employ either the lodestar method or the percentage-of-recovery method"). "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." Laffitte, 1 Cal.5th at 489 (internal quotation marks omitted). "The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." Id. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; see Laffitte, 1 Cal.5th at 489; Glass v. UBS Fin. Servs., Inc., 2007 WL 221862, *14 (N.D. Cal. 2007), aff'd, 331 F.App'x 452 (9th Cir. 2009) ("As always, when determining attorneys' fees, the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances."). Since the Settlement Agreement did not set up a common fund, (see Dkt. 136, Plfs. Br. at 20 ("there is no common fund created by the Settlement"); Dkt. 135, Def. Br. at 45), and the fee award will be paid separately by defendant without reducing the relief available to the class, the court will exercise its discretion to calculate the attorney's fees based on the lodestar method.

Here, having reviewed class counsel's submissions in connection with their Fees Motion, the court finds that their lodestar in the amount of $3,348,823 is reasonable given the work

Case 2:15-cv-02171-FMO-FFM Document 143 Filed 06/20/17 Page 38 of 42 Page ID
Case 2:15-cv-02171-FMO-FFM Document 140-1 Filed 05/21/17 Page 24 of 28 Page ID
#:2844

1  performed in this Action and the Related Action and the prevailing rates in the community for

2  lawyers of comparable skill, experience, and reputation. (See Dkt. 111-1, Fees Br. at 15-19); (Dkt.

3  111-2, Supplemental Declaration of Timothy G. Blood in Support of Plaintiffs' Motion for Attorneys'

4  Fees, Expenses and Services Awards ("Blood Fees Decl.") at ¶¶ 3, 6-13 & Exhs. 1-5); (Dkt. 88-2,

5  Blood Decl. at Exh. A (Blood Hurst & O'Reardon LLP Firm Resume)); (Dkt. 111-3, Declaration of

6  Ben Barnow in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards

7  ("Barnow Decl.") at ¶¶ 2-3, 5-22 & Exhs. A (Barnow and Associates Firm Resume) & B (Project

8  Attorneys' Resumes));[17] (see also Dkt. 111-4, Declaration of Mike Roberts in Support of Request

9  for Attorney Fees and Expenses ("Roberts Decl.") at 1-2 & Exhs. 1 & 3); (Dkt. 111-5, Declaration

10  of Phillip Milligan in Support of An Award for Attorney's Fees and Expenses ("Milligan Decl.") at

11  1898-1903[18] & Exh. 1); (Dkt. 111-6, Declaration of Jeffrey S. Hurst in Support of Motion for Final

12  Approval of Class Action Settlement and Request for Attorneys' Fees and Expenses ("Hurst

13  Decl.") at ¶¶ 2-18). Counsel's lodestar is based only on the hours and rates of Blood Hurst &

14  O'Reardon, LLP ("BHO") and Barnow and Associates, P.C. ("B&A"). (See Dkt. 111-1, Fees Br.

15  at 15 (stating "lodestar alone is over $3,348,823); Dkt. 111-2, Blood Fees Decl. at ¶ 11 (stating

16  BHO's lodestar is $1,639,807.50; Dkt. 111-3, Barnow Decl. at ¶ 20 (stating that B&A's lodestar

17  is $1,709,016)).

18  As noted above, "[o]nce the court has fixed the lodestar, it may increase or decrease that

19  amount by applying a positive or negative multiplier to take into account a variety of other factors,

20  including the quality of the representation, the novelty and complexity of the issues, the results

21  obtained, and the contingent risk presented." Laffitte, 1 Cal.5th at 489 (internal quotation marks

22  omitted). The contingency risk multiplier is one of the most commonly used to adjust the lodestar.

23  It is based on the notion that a "contingent fee compensates the lawyer not only for the legal

24

25  [17] "California case law permits fee awards in the absence of detailed time sheets." Wershba
26  v. Apple Computer, Inc., 91 Cal.App.4th 224, 255 (2001) (citations omitted) ("An experienced trial
   judge is in a position to assess the value of the professional services rendered in his or her
27  court.").

28  [18] Citations to the Milligan Declaration are to the ECF-generated page numbers.

Case 2:15-cv-02171-FMO-FFM   Document 143   Filed 06/20/17   Page 39 of 42   Page ID
Case 2:15-cv-02171-FMO-FFM   Document 140   Filed 05/21/17   Page 25 of 28   Page ID
#:2845
#:2620

1 │ services he renders but for the loan of those services. The implicit interest rate on such a loan is

2 │ higher because the risk of default (the loss of the case, which cancels the debt of the client to the

3 │ lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not

4 │ being paid and provides legal services is not receiving the fair market value of his work if he is paid

5 │ only for the second of these functions. If he is paid no more, competent counsel will be reluctant

6 │ to accept fee award cases." Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 579-80 (2004)

7 │ (internal quotation marks and citations omitted).

8 │      Here, class counsel prosecuted this Action and the Related Action on a contingent-fee

9 │ basis, incurred 100% of the risk in litigating the two actions, and were "forced to forego other

10 │ employment in order to devote the time necessary to pursue this litigation." (Dkt. 112-2, Blood

11 │ Fees Decl. at ¶ 4; see also Dkt. 111-3, Barnow Decl. at ¶ 16). Under the circumstances, counsel's

12 │ request for a 2.92 multiplier is reasonable, (see Dkt. 111-1, Fees Br. at 20), especially given the

13 │ quality of class counsel's representation and the results achieved in this complex litigation. The

14 │ requested multiplier is well within the range of multipliers applied by both state and federal courts.

15 │ See, e.g., Wershba, 91 Cal.App.4th at 255 ("Multipliers can range from 2 to 4 or even higher.");

16 │ Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1052 (9th Cir.), cert. denied, 537 U.S. 1018 (2002)

17 │ (surveying multipliers in 23 class action suits and recognizing that courts applied multipliers of 1.0

18 │ to 4.0 in 83% of surveyed cases); Parkinson v. Hyundai Motor Am., 796 F.Supp.2d 1160, 1170

19 │ (C.D. Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher"); Hopkins

20 │ v. Stryker Sales Corp., 2013 WL 496358, *4 (N.D. Cal. 2013) ("Multipliers of 1 to 4 are commonly

21 │ found to be appropriate in complex class action cases."). In short, the requested attorney's fee

22 │ award is fair and reasonable.[19]

23 │

24 │

25 │     [19] The court is satisfied that a "cross-check" using the percentage-of-recovery method is not

26 │ required. "[W]here, as here, classwide benefits are not easily monetized, a cross-check is entirely
    discretionary." Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 547 (9th Cir. 2016). A

27 │ percentage-of-recovery cross-check is unlikely to be helpful in this case because, as noted above,
    there is no common fund against which to apply a benchmark percentage. Moreover, the precise

28 │ value of the settlement cannot be determined given the length of prospective relief.

Case 2:15-cv-02171-FMO-FFM Document 143 Filed 06/20/17 Page 40 of 42 Page ID
Case 2:15-cv-02171-FMO-FFM Document 140 Filed 05/21/17 Page 26 of 28 Page ID
#:2846

B.    Costs.

The Settlement Agreement provides that class counsel may seek reimbursement of up to $150,000 in costs and expenses. (See Dkt. 91, Settlement Agreement at § VIII.B.). Class counsel seek $124,091.91 in costs. (See Dkt. 137, Second Supplemental Declaration of Timothy G. Blood in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards ("Blood Supp. Fees Decl.") at ¶ 9; Dkt. 111-2, Blood Fees Decl. at ¶¶ 14-16; Dkt. 111-3, Barnow Decl. at ¶¶ 23-25; Dkt. 111-4, Roberts Decl. at 3; Dkt. 111-5, Milligan Decl. at 1903; Dkt. 111-6, Hurst Decl. at ¶ 19). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $124,091.91 in costs.

C.    Class Representative Incentive Awards.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977; see Wren, 2011 WL 1230826, at *31 ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, plaintiffs request that the court grant service awards in the amount of $2,500.00 to each named plaintiff. (See Dkt. 111-1, Fees Br. at 22-23; Dkt. 91, Settlement Agreement at § VIII.C.).

In its order granting preliminary approval of the settlement, the court undertook a thorough examination of the fairness and adequacy of the incentive payments at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 98, PAO, at 23-25); see also Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (reversing the district court's class action settlement approval and instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that the awards were appropriate and did not create a conflict of interest between the named plaintiffs and absent class members. (See Dkt. 98, PAO, at 25). The court therefore concludes that the requested incentive payment is fair and reasonable, and is hereby approved.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1      1.  The Joint Motion for Entry of an Order Granting Final Approval of Class Action

2  Settlement Agreement **(Document No. 134)** is **granted** as set forth herein.

3      2.  The court hereby **grants final approval** to the parties' Settlement Agreement

4  ("Settlement Agreement") **(Document No. 91)**. The court finds that the Settlement Agreement is

5  fair, adequate and reasonable, appears to be the product of arm's-length and informed

6  negotiations, and treats all members of the class fairly. The parties are ordered to perform their

7  obligations pursuant to the terms of the Settlement Agreement and this Order.

8      3. Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards **(Document No.**

9  **111)** is **granted** as set forth herein.

10      4.  The settlement class is certified under Federal Rule of Civil Procedure 23(c): All

11  members of the class preliminarily approved on December 2, 2016, who did not properly and

12  timely request exclusion pursuant to the procedures specified in the Settlement Agreement.

13      5. The form, manner, and content of the Class Notice meet the requirements of Federal

14  Rules of Civil Procedure 23(c)(2).

15      6. The court affirms the appointment of plaintiffs Brian Warner, Kenneth MacLeod, Michael

16  Meade, Michael Watson, Dale Franquet, James Fuller, Ryan Burns, and James Good as class

17  representatives.

18      7.  The court affirms the appointment of the Timothy G. Blood of Blood Hurst and

19  O'Reardon LLP and Ben Barnow of Barnow and Associates P.C. as class counsel.

20      8.  Plaintiffs Brian Warner, Kenneth MacLeod, Michael Meade, Michael Watson, Dale

21  Franquet, James Fuller, Ryan Burns, and James Good shall each be paid a service payment of

22  $2,500 in accordance with the terms of the Settlement Agreement.

23      9. Class counsel shall be paid $9.75 million in attorney's fees and $124,091.91 in costs in

24  accordance with the terms of the Settlement Agreement.

25      10. The Settlement Notice Administrator, Jeanne Finegan of Heffler Claims Group, shall

26  be paid for her fees and expenses in connection with the administration of the Settlement

27  Agreement, in accordance with the terms of the Settlement Agreement.

28      11. The Settlement Claims Administrators, Patrick A. Juneau and Michael Juneau, shall

be paid for their fees and expenses in connection with the administration of the Settlement Agreement, in accordance with the terms of the Settlement Agreement.

12. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement). In addition, all class members who did not validly and timely request exclusion from the settlement are barred and enjoined from instituting, commencing, filing, maintaining, continuing or prosecuting against any of the released parties (as defined in the Settlement Agreement) any action or proceeding in any court or tribunal asserting any of the released claims. See 28 U.S.C. §§ 1651(a) & 2283.

13. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

14. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

15. Judgment shall be entered accordingly.

Dated this 21st day of May, 2017.

/s/
Fernando M. Olguin
United States District Judge

28